**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| ROBYN WILSON, TAMERA STREETER, DANA OLIVER, KRISTEN JONES, NATALIA LOGINOVA, JOSH BERGER, and NICK LAURITZEN, on behalf of themselves and all others similarly situated, <br><br> Plaintiff, <br> v. <br><br> BOOZ ALLEN HAMILTON, INC. and DOES 1-20, <br><br> Defendants. | Case No: <br><br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      This case is about holding Booz Allen[1]—a multibillion dollar for profit federal contractor—responsible for forcing American consumers to pay Ticketmaster-style Junk Fees[2] to access National Parks and other federal recreational lands.

2.      Specifically, Plaintiffs,[3] on behalf of themselves and all others similarly situated, seek to recover hundreds of millions of dollars in illegal Junk Fees that have been charged by Booz

---

[1] Booz Allen Hamilton, Inc. ("Booz Allen") and Does 1-20 (collectively, "Defendants").

[2] "Junk Fees," as used in this Complaint, refer to fees that are charged through recreation.gov and the recreation.gov App and paid to Booz Allen, including, but not limited to, "park access reservation fees," "processing fees," "reservation fees," "permit fees," "lottery fees," and "cancellation fees." "Junk Fees" does not include any amounts that are ultimately retained by the Federal Agencies instead of Booz Allen, which are generally referred to as "use fees" in this Complaint.

[3] Robyn Wilson, Tamera Streeter, Dana Oliver, Kirsten Jones, Natalia Loginova, Josh Berger, and Nick Lauritzen (collectively, "Plaintiffs"). At certain times relevant to this action, Dana Oliver was also known by her maiden name, Dana Walden.

Allen on recreation.gov since 2018 and to prevent Booz Allen from charging these Junk Fees in the future.

3.      From 2002 until 2018, recreation.gov was run by the United States government, and efficiently facilitated millions of reservations to National Parks and other federal lands.

4.      Despite this success, under the pretext of "improving" recreation.gov, Booz Allen was awarded an exclusive government contract to "reinvent" the website.

5.      Beginning in October 2018, Booz Allen took over the operation of recreation.gov, and immediately began running the website for its own benefit, charging consumers Junk Fees in the form of "processing fees," "reservation fees," "lottery fees," "cancellation fees," and other bogus fees designed to line its own pockets.

6.      While recreation.gov has a "dot gov" domain, public records make clear that the Federal Agencies[4] have "no involvement in deciding the amount of processing fee charged per reservation" and "[n]o part of the processing fee is remitted to [the Federal Agencies]." *Kotab v. Bureau of Land Mgmt.,* 595 F. Supp. 3d 947, 951 (D. Nev. Mar. 31, 2022), attached as Exhibit A.

7.      In other words, Booz Allen gets to decide the amount that it charges in Junk Fees, and Booz Allen also gets to keep all of the associated Junk Fee revenue for itself.

8.      Unsurprisingly, Booz Allen has elected to abuse that discretion and charge excessively high Junk Fees, generally in the $2 to $10 range per transaction, that are in no way

---

[4] "Federal Agencies" refers to the 13 federal agencies that use recreation.gov for reservation services for consumer access to their lands, namely: the Bureau of Land Management, Bureau of Reclamation, Bureau of Engraving and Printing, Federal Highway Administration, National Archives & Records Administration, National Oceanic & Atmospheric Administration, National Park Service, Presidio Trust, Smithsonian Institution, Tennessee Valley Authority, Fish and Wildlife Service, US Army Corps of Engineers and US Forest Service. *See* Ex. E (https://www.recreation.gov/about-us).

proportional to the costs of operating recreation.gov or to the value of the services provided.[5]

9.      Given that recreation.gov handles millions of transactions per year—including approximately 9 million transactions in 2021 alone—these Junk Fees generate tens, if not hundreds, of millions of dollars of revenue every year for Booz Allen, constituting a complete windfall.

10.      The Junk Fees are charged at over 4,200 locations across the country, including at the "crown jewels" of the National Park system, such as Yosemite, Yellowstone, and the Grand Canyon.

11.      To illustrate how quickly these Junk Fees can add up, consider the following example from a recent article discussing Booz Allen's problematic practices:

> [I]n just one lottery to hike Mount Whitney, more than 16,000 people applied, and only a third got in.
>
> Yet everyone paid the $6 registration fee, which means the gross income for that single location [and single lottery] is over $100,000.
>
> [Recreation.gov has given] a Ticketmaster-like firm control of our national parks.

*See* Ex. B ("Why Is Booz Allen Renting Us Back Our Own National Parks?") (paragraph breaks added), available online at https://mattstoller.substack.com/p/why-is-booz-allen-renting-us-back.

12.      Further, the Junk Fees take money away from the National Park system and other protected federal lands, which are generally in need of additional funding and revenue.

---

[5] In some instances, a "use fee" is also charged, but on information and belief, those use fees are generally paid to the Federal Agencies charged with administering federal lands (e.g., the National Park Service).  This lawsuit does not challenge the ability of the Federal Agencies to charge and keep lawful use fees.  It only challenges the Junk Fees paid to Booz Allen.

13.     The payment of Junk Fees to Booz Allen is not disclosed to consumers at the time of account creation, is not disclosed during the reservation "purchase" process, and is not disclosed anywhere on recreation.gov.

14.     In fact, when "Booz Allen" is searched on recreation.gov, the website simply confirms that no matching results are found:



15.     This is because Booz Allen intentionally operates recreation.gov to create the false impression that it is run by the Federal Agencies, and not Booz Allen.

16.     As a result, the interface falsely leads consumers to believe that they are paying the Junk Fees to the Federal Agencies that administer those lands, and not Booz Allen.

17.     Critically, in March of 2022, the District of Nevada found that park access reservation fees—a type of Junk Fee—paid to Booz Allen through recreation.gov violate federal law.  *See Kotab,* 595 F. Supp. 3d 947.  A copy of that decision is attached as Exhibit A.

18.     The reasoning of the *Kotab* decision applies broadly to all Junk Fees that Booz Allen charges on recreation.gov for thousands of other locations and to millions of unsuspecting consumers and confirms that Booz Allen charges these Junk Fees in violation of federal law.

19.     Further, the park access Junk Fees charged by Booz Allen also deprive active-duty military and their dependents, veterans, Gold Star Families, and the disabled of free National Park access, which they are entitled to under federal law.

20.     Specifically, these groups are entitled to receive the America the Beautiful National Parks and Federal Recreational Lands Pass "***without charge***" and at "***no cost,***" and the pass "cover[s] the entrance fee and standard amenity recreation fee for all Federal recreational lands and waters . . . ."  16 U.S.C. § 6804(a), (b)(2)-(3) (emphasis added).[6]

21.     Despite this, Booz Allen still charges Junk Fees for reservations that would have otherwise been free with the National Parks and Federal Recreational Lands Pass, claiming that the "[p]ass discounts only apply to the recreation use fee [and that] reservation[s] or other fees are not eligible for a discount."  Ex. G (https://www.recreation.gov/rules-reservation-policies).

22.     As further detailed below, Booz Allen needs to be held accountable for its actions. The Junk Fees paid to Booz Allen should be refunded.  And the unlawful Junk Fee practices stopped.

## JURISDICTION

23.     This Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there exists minimal diversity between class members and Defendants and because the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

## VENUE

24.     This Court is the proper venue for this matter pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this

---

[6] The current statutory language was passed in December 2021 to add veterans and active duty military and their dependents.  Pub. L. 117-81, Div. A, Title VI, § 641, Dec. 27, 2021, 135 Stat. 1776.  Gold Star Families and the disabled were already eligible to receive these benefits under the prior version of the statute.

District, and Booz Allen has substantial and systematic contacts in the District as alleged within this Complaint, including because its principal place of business and headquarters are located within the District.

25.   The case has been properly assigned to the Alexandria Division of this District under Local Rule 3(B)(1) because a substantial part of the events or omissions that gave rise to Plaintiffs' claims occurred in Fairfax County, as alleged within this Complaint, including because Booz Allen's principal place of business and headquarters are located within the Division.

## PARTIES

### A.   Plaintiffs.

### 1.   Robyn Wilson.

26.   Plaintiff Robyn Wilson has been charged Junk Fees on recreation.gov by Defendants, and at all times relevant to this action has been a citizen of the State of Washington.

### 2.   Tamera Streeter.

27.   Plaintiff Tamera Streeter has been charged Junk Fees on recreation.gov by Defendants, and at all times relevant to this action has been a citizen of California.  Mrs. Streeter served in the United States Coast Guard from 1980 to 2006, achieved the rank of Chief Warrant Officer (CWO-3), and was honorably discharged in 2006.  Mrs. Streeter is also 70% disabled.

### 3.   Dana Oliver.

28.   Plaintiff Dana Oliver has been charged Junk Fees on recreation.gov by Defendants, and at all times relevant to this action has been a citizen of California.  At certain times relevant to this action, Dana Oliver was also known by her maiden name, Dana Walden.

### 4.   Kristen Jones.

29.   Plaintiff Kristen Jones has been charged Junk Fees on recreation.gov by Defendants, and at all times relevant to this action has been a citizen of California.

### 5. Natalia Loginova.

30.     Plaintiff Natalia Loginova has been charged Junk Fees on recreation.gov by Defendants, and at all times relevant to this action has been a citizen of Florida.

### 6. Josh Berger.

31.     Plaintiff Josh Berger has been charged Junk Fees on recreation.gov by Defendants, and at all times relevant to this action has been a citizen of New York.

### 7. Nick Lauritzen.

32.     Plaintiff Nick Lauritzen has been charged Junk Fees on recreation.gov by Defendants, and at all times relevant to this action has been a citizen of Utah.

### B. Defendants.

33.     Defendant Booz Allen is a Delaware corporation in the business of, among other things, operating recreation.gov.  Booz Allen's headquarters and principal place of business are located in McLean, Virginia, and Booz Allen conducts business throughout the United States.[7]

34.     On information and belief, Does 1-20 are individuals and/or entities who operate recreation.gov and/or the recreation.gov App with Booz Allen whose identities are not presently known to Plaintiffs.

35.     Plaintiffs expressly reserve their right to amend this complaint to add the Doe defendants, once their identities are known.

---

[7] For example, according to its corporate website, Booz Allen has offices in Alabama, California, Colorado, D.C., Florida, Georgia, Hawaii, Illinois, Kansas, Maryland, Massachusetts, Michigan, Missouri, Nebraska, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Texas, Utah, Virginia, Washington, and West Virginia.  https://www.boozallen.com/menu/office-locations.html.

## FACTUAL BACKGROUND

**A.**   **Recreation.gov Was Created by the Federal Government to Make It Easier for Americans to Access Federal Lands, Such as National Parks.**

36.   Since the mid-nineteenth century, Americans have enjoyed access to National Parks and other federal lands for hiking, camping, and other outdoor activities.

37.   As demand for access to these lands increased in the past several decades, in order to preserve the outdoor experience and protect sensitive habitats from overuse, many popular federal lands, such as Yosemite and Mt. Whitney, introduced permits, reservations, lotteries, and other similar systems to assist in managing the federal lands (collectively, "Reservations").

38.   Traditionally those Reservations were made directly with the department or agency charged with administering a specific park or other protected federal land by phone, fax, mail, or in person.

39.   As internet use became more widespread, in 2002, recreation.gov was created by the United States government to help centralize and streamline the Reservations process across the Federal Agencies.

40.    The rollout of recreation.gov was generally viewed as a success, with millions of users and significant year over year growth.

41.   As the Department of the Interior explained in a prepared statement to the House of Representatives in 2016:

> [M]illions of visitors use Recreation.gov to plan, reserve, and share their federal land recreational experiences in national parks, national forests, national wildlife refuges, and national waterways.
>
> In 2015, there were more than 22.3 million sessions, 12 million visitors, and 220 million page views to Recreation.gov, which represents a 31 percent increase in visitation over 2014.

> [As of 2016], Recreation.gov hosts more than 3,200 individual facilities, with more than 90,000 campsites, 12 ticketed tours or events, and 26 high-demand locations accessed by permit or lottery.

Ex. C (https://www.doi.gov/ocl/recreationgov#:~:text=R1S%20was%20created%20as%20one, and%20the%20National%20Park%20Service).

42.     Those same Reservations on recreation.gov also had the benefit of driving revenue to the Federal Agencies to assist in administering federal lands, with an average of approximately "$90.5 million annual return for these agencies in recreation fees collected through Recreation.gov . . . . *These fees [were] used to provide visitor services and improve the visitor experience at recreation sites*." *Id.* (emphasis added).

43.     In other words, like the "park use fees" or "camp ground use fees" that many consumers are accustomed to paying when they visit a National Park, the fees paid on recreation.gov originally went to support the Federal Agencies administering those lands.

44.     Further, in many circumstances, Reservations made through recreation.gov simply were free.

**B.      In October 2018, Booz Allen Took Over Recreation.gov, and Started Pocketing the Fees Generated through the Website.**

**1.      In 2018, Booz Allen "Reinvented" Recreation.gov.**

45.     According to Booz Allen's corporate website, Booz Allen took over operation of recreation.gov in October 2018.    Ex. D (https://www.boozallen.com/s/insight/thought-leadership/reinventing-the-recreation-gov-customer-experience.html).

46.     Booz Allen proceeded to "reinvent Recreation.gov, building it from the ground up with modern e-commerce solutions for a transformed digital customer experience (CX). . . The result is a one-stop shop for trip information, planning, and reservations from coast to coast—and

demonstrates the potential of a new acquisition model that is revolutionizing the way the federal government partners with industry to serve the public." *Id.*

47.     On information and belief, in "reinventing" recreation.gov, Booz Allen operated with broad discretion and autonomy independent from the Federal Agencies to make decisions about what content, information, and disclosures to include (or not include) on recreation.gov.

48.     Booz Allen also had exclusive authority to determine the amount of fees to charge recreation.gov users, with the Federal Agencies having "no involvement in deciding the amount of processing fee charged per reservation." *Kotab,* 595 F. Supp. 3d 947, 951.

>    **2.     The Updated Interface Created by Booz Allen Falsely Leads Consumers to Believe that the Junk Fees Are Paid to Federal Agencies When the Junk Fees Are Instead Pocketed by Booz Allen.**

49.     While Booz Allen predominantly features its "reinvention" and operation of recreation.gov on its own corporate website, recreation.gov itself is operated by Booz Allen to deceptively create the appearance that it is run by the Federal Agencies, and not Booz Allen.

50.     For example, the "About Us" page on recreation.gov describes the website as a "one-stop shop - a place with all the tools, services and information you'll need to dream up your next adventure, plan the details, experience it all first-hand and then share those stories. With roughly 4,200 facilities and activities and over 113,000 individual reservable sites across the country, we're confident that you'll not only find what you need, but more importantly create lasting memories and bring home a story." Ex. E (https://www.recreation.gov/about-us).

51.     In fact, the "About Us" page, even explicitly states that: "***Reservations,*** venue details and descriptions ***on Recreation.gov are brought to you by our 13 Federal Participating Partners*** . . . ." *Id.* (emphasis added).  The "About Us" page goes on to identify the 13 specific Federal Agencies, and includes the official insignias of each of those federal agencies.  *Id.*

52.     Here are several examples of how those insignias are displayed:



**US Forest Service**

The U.S. Forest Service manages forests and grasslands across the country that offer vast, scenic beauty waiting for you to discover. Visitors who choose to recreate on these public lands can find more than 158,000 miles of trails, 10,000 developed recreation sites, 57,000 miles of streams, 122 alpine ski areas, 338,000 heritage sites, and specially designated sites that include 9,100 miles of byways, 22 recreation areas, 11 scenic areas, 439 wilderness areas, 122 wild and scenic rivers, nine monuments, and one preserve. And remember, "It's All Yours."



**National Park Service**

The National Park System covers more than 84 million acres and is comprised of 417 sites with at least 19 different designations. These include 129 historical parks or sites, 87 national monuments, 59 national parks, 25 battlefields or military parks, 19 preserves, 18 recreation areas, 10 seashores, four parkways, four lakeshores, and two reserves. The NPS also helps administer dozens of affiliated sites, the National Register of Historic Places, National Heritage Areas, National Wild and Scenic Rivers, National Historic Landmarks, and National Trails.



**Bureau of Land Management**

The BLM manages more than 245 million acres located primarily in 12 Western states, including Alaska. The public lands we manage offer more recreational opportunities than lands managed by any other federal agency, with more than 99 percent available for no fee. The BLM works closely with partners so visitors of all ages can enjoy countless types of outdoor activities as widely varied as camping and hiking to hunting, fishing, whitewater rafting and off - highway vehicle driving. With more than 55 million people living within 25 miles of these lands, BLM managed lands are recognized as America's Great Outdoors, a "Backyard to Backcountry" treasure.

53.     Despite the prominent featuring on these (and other) Federal Agency insignias and descriptions, Booz Allen is not mentioned once on the "About Us" page, and consumers are falsely led to believe that the "us" in "About Us," is the Federal Agencies.

54.     Booz Allen is not mentioned on the recreation.gov home page, but the Federal Agencies are specifically identified by their official government insignias. Ex. F (https://www.recreation.gov/).

55.     Booz Allen is not mentioned under the recreation.gov terms of service, but the Federal Agencies are specifically identified by their official government insignias.  Ex. G (https://www.recreation.gov/rules-reservation-policies).

56.     Booz Allen is not mentioned on the recreation.gov Privacy Policy, but the Privacy Policy falsely claims that recreation.gov "is operated by the U.S. Department of Agriculture, Forest Service, and other R1S participating agencies from the United States." Ex. H (https://www.recreation.gov/privacy-policy).     Further, the Federal Agencies are specifically identified by their official government insignias.  *Id.*

57.     Booz Allen is not mentioned during the process of making a Reservation, but the Federal Agencies are specifically identified by their official government insignias.

58.     Booz Allen is also not mentioned during the lottery application process, but the Federal Agencies are specifically identified by their official government insignias.  *See, e.g.,* Ex. I (https://www.recreation.gov/lottery/how-they-work).

59.     In fact, when "Booz Allen" or "Booz Allen Hamilton" is typed in to the recreation.gov search menu, it reflects "[n]o matching results found":



60.     Put simply, when Booz Allen "reinvented" recreation.gov, it made sure to create the appearance that the website continued to be run by the Federal Agencies, and not by a for profit government contractor.[8]

### 3.     Booz Allen Generally Charges Consumers Junk Fees of Between $2 and $10 to Make Reservations on Recreation.gov.

61.     As part of the website "reinvention," in or about October 2018, Booz Allen implemented a "transaction-based fee model"—in other words, a Junk Fees model—to profit from its operation of recreation.gov, and continues to charge those Junk Fees to this day. Ex. D (https://www.boozallen.com/s/insight/thought-leadership/reinventing-the-recreation-gov-customer-experience.html).

62.     Specifically, Booz Allen charges consumers Junk Fees on recreation.gov that generally range between $2 and $10 per transaction, for items such as National Park access reservations, wilderness permits, permit lotteries, campground reservations, and cancellations.

63.     As the Interagency Program Manager for the National Park Service recently testified, "[t]he processing fees charged by [Booz Allen] for each transaction are . . . remitted to the contractor.  No part of the processing fee charged by Recreation.gov for the platform provided is remitted to the [Federal Agencies]."  Ex. J (Declaration of Richard B. Delappe) at ¶ 6.

---

[8] While it does not return in the search results, after a careful and detailed review of recreation.gov, which consists of over 100,000 unique website URLs, Plaintiffs' counsel did identify a single reference to Booz Allen on the website, which states "This website and the information it contains are provided as a public service by Booz Allen Hamilton under contract to the U.S. Department of Agriculture, Forest Service, and Recreation One Stop participating agencies."  That disclosure, which is not readily accessible to consumers who setup accounts or make transactions on recreation.gov, itself is deceptive.  Booz Allen does not operate recreation.gov as a "public service," rather it operates the website for its own financial gain.

64.     These "reservation fees" or "processing fees" are separate and apart from the "use fees" that are paid to the Federal Agencies that actually go to maintaining the National Parks and other federal lands.

65.     Booz Allen does not disclose anywhere on recreation.gov that the Junk Fees are paid to it.

66.     Here is an example of a $6 Junk Fee being charged on a wilderness permit:

| ⌃ Olympic National Park Wilderness Permit | | $22.00 | Reservation |
|---|---|---|---|
| Shi Shi Beach | | 1 Permit | 0187794694-1 |
| Use Fee | x 1 | $16.00 | |
| Reservation Fee | x 1 | $6.00 | |
| Inventory Type **PERMIT** | Entry Date **May 4, 2019** | Exit Date **May 5, 2019** | |
| Permit Holder **Robyn Wilson** | Group Size **2** | | |

67.     Specifically, this receipt reflects a "Reservation Fee" of $6, which is the Junk Fee that is paid to Booz Allen.  On information and belief, the $16 "use fee" reflected on this receipt is not paid to Booz Allen, and is instead paid to the relevant Federal Agency.  This lawsuit does not challenge lawful "use fees" paid to the Federal Agencies.

68.     The interface displaying the "Junk Fees" on a particular transaction often does not appear to consumers until the end of the transaction process, after consumers have already invested substantial time and effort identifying the desired locations and reservations, selecting specific dates, and otherwise completing their recreation.gov transactions.

69.     Consumers in many instances are also pressured to quickly finish making their transactions, with a bright red "countdown timer" appearing in the upper right corner during the reservation process:



70.     Among other things, the countdown timer creates a sense of urgency and gives consumers inadequate time to evaluate or investigate the addition of Junk Fees to the transactions for fear of losing their reservation.

71.     Further, in some instances a popup window also appears warning consumers that their "cart is about expire" and that "[o]nce time is up, all items will be removed from your cart," compounding the sense of urgency:



**C.      The Federal Lands Recreation Enhancement Act Authorizes Federal Agencies to Charge Recreation Fees in Certain Circumstances, But Booz Allen's Junk Fees Are Not Authorized.**

72.     Recreation fees on federal land are governed by the Federal Lands Recreation Enhancement Act, 16 U.S.C. §§ 6801, *et seq.* ("FLREA"), which was passed by Congress to dramatically reduce the circumstances in which recreation fees could be charged.

73.     Specifically:

> The FLREA was enacted in response to public backlash against its predecessor, the Recreational Fee Demonstration Program, which allowed the [Federal Agencies] to charge and collect admission fees "for the use of outdoor recreation sites, facilities, visitor centers, equipment, and services."

> The public opposed those fees as overly broad, complaining that the [Federal Agencies] could collect them from people who wanted access to "undeveloped land, not services and amenities." So "Congress drafted the [FLREA], an 'overly prescriptive' regime designed 'to alleviate concerns of those who no longer trust certain federal land management agencies with the recreation[-]fee authority.'"

> [T]he FLREA is certainly overly prescriptive—it outlines in detail the specific instances in which each type of recreation fee can or cannot be charged.

*Kotab,* 595 F. Supp. 3d at 953-954, attached as Exhibit A.

74.     Consistent with its "overly proscriptive" mandate, the FLREA only allows four types of recreation fees to be charged on federal land:

> a.   Entrance fees, such as the fees charged to enter National Parks, 16 U.S.C. § 6802(e), but not all agencies are authorized to charge this fee category;

> b.   Standard amenity recreation fees, such as those charged at day use picnic areas or developed trailheads, 16 U.S.C. § 6802(f);

c.  Expanded amenity recreation fees, such as at campgrounds or boat launches, 16 U.S.C. § 6802(g); and

d.  Special recreation permit recreation fees, such as at all-terrain vehicle ("ATV") parks, 16 U.S.C. § 6802(h).

75.  Before any of these recreation fees can be charged, the FLREA also imposes an arduous and robust set of "checks and balances" to ensure that recreation fees are only charged in appropriate circumstances.

76.  Specifically, before a recreation fee can be charged, the FLREA requires:

a.  "[P]rovid[ing] the public with opportunities to participate in the development of or changing of a recreation fee," 16 U.S.C. § 6803(a).

b.  For a new fee area, publication in the Federal Register and local newspapers, 16 U.S.C. § 6803(b).

c.  For a new fee area, establishing guidelines for public input on recreation fees, publishing those guidelines, and providing annual notice to the public about how recreation fee revenue is used, 16 U.S.C. § 6803(c).

d.  Establishing a "Recreation Resource Advisory Committee in each State or region" that has "[b]road and balanced representation" to review proposed fees and any proposed changes to those fees, 16 U.S.C. § 6803(d).

e.  For entrance and amenity fees, posting of the fee amounts at entrance stations and providing notice publication in the region where the fee will be charged, 16 U.S.C. § 6803(e).

77.     The FLREA further mandates that in setting recreation fees that the Federal Agencies "shall establish the minimum number of recreation fees and shall avoid the collection of multiple or layered recreation fees for similar uses, activities, or programs."  16 U.S.C. § 6801(c).

78.     On information and belief, none of the Junk "recreation fees" charged by Booz Allen on recreation.gov have complied with the requirements of the FLREA because, among other reason:  (1) in many instances, the Federal Agencies have failed to comply with the procedural requirements of 16 U.S.C. § 6803 and cannot authorize a contractor to collect a fee that they themselves could not collect; (2) regardless of procedural compliance, the Junk Fees constitute avoidable duplicative fees in violation of 16 U.S.C. § 6801(c); and/or (3) paying the full amount of the Junk Fees to a third-party is not a "reasonable commission" within the meaning of 16 U.S.C. § 6805(a).

79.     Accordingly, the Junk Fees violate federal law.

**D.      In March 2022, the District of Nevada Found that Park Access Junk Fees Charged on Recreation.gov Violated the FLREA.**

80.     Despite Booz Allen's practices impacting access to thousands of locations throughout the United States, only a single case has addressed whether Booz Allen's charging of Junk Fees on recreation.gov complies with the FLREA, *Kotab,* 595 F. Supp. 3d 947.  Ex. A.

81.     The *Kotab* case involved park access reservation fees—a type of Junk Fee— charged through recreation.gov for access to the Red Rock Canyon National Conservation Area.

82.     In a carefully reasoned, published opinion, the District of Nevada explicitly found on a full evidentiary record that the Junk Fees charged by Booz Allen through recreation.gov at Red Rock violated the FLREA.   *Id.*

83.     The District of Nevada found that the Red Rock Junk Fees violated the FLREA for at least five reasons.

84.     *First,* the FLREA only authorizes the Federal Agencies to charge "recreation fees." *Kotab,* 595 F. Supp. 3d at 952.

85.     *Second,* "a fee that falls outside of th[e] detailed and proscriptive list of recreation fees" authorized by the FLREA cannot be charged by the Federal Agencies.  *Id.*

86.     *Third,* "fees charged for visitor reservations—even if paid to third parties under a fee-management agreement—must be incorporated into statutorily authorized recreation fees; they cannot be assessed as some other category of fee." *Id.* at 953.  Said differently, the FLREA "does not authorize an agency to pass off [processing fees to the] public as a separate, non-recreation fee." *Id.*

87.     *Fourth,* while a processing commission may be charged in certain specific circumstances, "any commissions charged for visitor-reservation services [must] be paid from the revenue collected by those [authorized recreation] fees" and not as a separate fee.  *Id.* at 953-954. Among other reasons, this is because the FLREA mandates that the Federal Agencies "establish the minimum number of recreation fees and avoid the collection of multiple or layered recreation fees for similar uses, activities, or programs." *Id.* at 952.

88.     *Finally,* the FLREA only permits the charging of recreation fees after certain specific administrative steps are taken, including requirements related to public notice and review of the proposed fee by the independent Recreation Resource Advisory Committee. *Id.* at 956.

89.     As a result, the District of Nevada entered judgement in "favor of the plaintiff, declaring under the Administrative Procedure Act that the $2 [reservation] processing fee for the

Red Rock reservation system is a 'recreation fee' . . . [and] was not adopted in compliance with th[e] [FLREA's] procedures for adopting new recreation fees." *Id.* at 956-957.

90.     While the decision was initially appealed, the appeal was voluntarily dismissed on August 3, 2022, leaving the District Court opinion in full force and effect.

**E.      Despite Knowing that Its Practices Are Unlawful, Booz Allen Continues to Charge Junk Fees on Recreation.gov.**

91.     The final order and judgment was entered in *Kotab* in March 2022 and the dismissal of the appeal occurred in August 2022.  Despite this, Booz Allen has not taken any steps to refund the Junk Fees charged to consumers associated with reservations at Red Rock Canyon.  *See* Ex. B.

92.     Indeed, not only has Booz Allen failed to refund consumers, Booz Allen has resumed charging Junk Fees through recreation.gov for access to Red Rock Canyon.

93.     Here is an example from December 2022 of the $2 Junk Fee continuing to be charged at Red Rock Canyon:



94.     Moreover, Booz Allen continues to charge millions of dollars in Junk Fees at other federal lands throughout the country even though those Junk Fees also violate the FLREA.

95.     For example, here is a recent transaction from Mrs. Wilson's account, which reflects a $2 reservation Junk Fee in September 2022 for a service that was otherwise free:




96.     And here is a December 2022 transaction from Mrs. Oliver's account, reflecting not only an $8 reservation Junk Fee, but also a $10 cancellation Junk Fee:



97.     In light of the *Kotab* decision, there can be no reasonable question that Booz Allen knowingly and intentionally violates the FLREA each time it charges a Junk Fee through recreation.gov where the Junk Fee was not adopted in strict compliance the FLREA's explicit requirements and where the fee appears as a separate item from the Federal Agency use fees. *See*

*Kotab,* 595 F. Supp. 3d at 953 (The FLREA "does not authorize an agency to pass off that commission to the public as a separate, non-recreation fee.").

> **F.   Booz Allen Charges at Least Six Types of Unlawful Junk Fees on Recreation.gov.**

98.   Booz Allen charges at least six types of unlawful Junk Fees that violate the FLREA:

a.   First, Booz Allen charges unlawful "park access" reservation fees, like those that were specifically challenged in the *Kotab* case.

b.   Second, Booz Allen charges unlawful "park access" reservation fees to active-duty military, veterans, Gold Star Families, and the disabled, who are entitled to free National Park access under federal law.

c.   Third, Booz Allen charges unlawful "permit" reservation fees on recreation.gov, for items such as wilderness access.

d.   Fourth, Booz Allen runs an illegal "lottery" system on recreation.gov for high demand locations, which violates 18 U.S.C. §§ 1301, *et seq.* and numerous states' anti-gambling laws.

e.   Fifth, Booz Allen charges unlawful "booking" fees on items such as campgrounds and other lodging.

f.   Finally, for many "cancellations" on recreation.gov, Booz Allen charges "fees on fees" by charging Junk Fees for the "privilege" of cancelling.

99.   Each of these types of unlawful Junk Fees are further detailed below.

> **1.   Booz Allen Charges Unlawful Junk Fees for Park Access.**

100.   One type of Junk Fee that has been implemented by Booz Allen is a "park access" reservation, like the one at issue in *Kotab.*

101.    A park access reservation allows a visitor to enter a particular park at a particular time of day or on a particular date, and is separate and distinct from the "entrance fees" or "gate fees" that many individuals are accustomed to paying at National Parks.

102.    On information and belief, such "park access" Junk Fees have been charged at hundreds of locations throughout the United States to millions of effected consumers, and park access reservations made through recreation.gov will continue to be required at many locations in 2023.

103.    No portion of these park access reservation Junk Fees are paid to the Federal Agencies and are instead kept in full by Booz Allen.

104.    No disclosures regarding the allocation of fees are made to consumers on recreation.gov or otherwise by Booz Allen.

> **2.      Park Access Reservation Fees Violate the Federal Rights of Active Military, Veterans, and the Disabled, Who Are Supposed to Enjoy Free Access to National Parks.**

105.    These park entrance reservation fees are particularly problematic because active duty military and their dependents, veterans, Gold Star Families, and the permanently disabled (collectively "Military, Veterans, and the Disabled") are supposed to enjoy free access to National Parks and other federal lands.

106.    Specifically, these groups are entitled to receive the National Parks and Federal Recreational Lands Pass "***without charge***" and at "***no cost,***" and the pass "cover[s] the entrance fee and standard amenity recreation fee for all Federal recreational lands and waters . . . ."  16 U.S.C. § 6804 (b)(2)-(3) (emphasis added).[9]

---

[9] The current statutory language was passed in December 2021 to add veterans and active-duty military and their dependents.  Pub.L. 117-81, Div. A, Title VI, § 641, Dec. 27, 2021, 135 Stat. 1776.  Gold Star Families and the disabled were already eligible to receive these benefits under the prior version of the statute.

107.    However, despite this, when the Military, Veterans, and the Disabled make park access reservations through recreation.gov, they can only do so by paying a Junk Fee to Booz Allen.

108.    Specifically, on recreation.gov, Booz Allen claims that the National Parks and Federal Recreational Lands Pass "discounts only apply to the recreation use fee . . . . [R]eservation or other fees are not eligible for a discount."  Ex. G (https://www.recreation.gov/rules-reservation-policies).

109.    Here is an example of a park access reservation Junk Fee charged to Mrs. Streeter, who is both a veteran and disabled:



110.    For many parks, access reservations are required, meaning there is no way for Military, Veterans, and the Disabled to enjoy the free access that they are entitled to under federal law without paying a Junk Fee to Booz Allen.

111.    On information and belief, "park entrance" Junk Fees have been charged throughout the United States to tens of thousands of effected Military, Veterans, and Disabled consumers.

112.    No portions of these park access reservation fees are paid to the government and are instead kept in full by Booz Allen.

113.    No disclosures regarding the allocation of fees are made to consumers on recreation.gov or otherwise by Booz Allen.

### 3.    Booz Allen Charges Unlawful Junk Fees on Permits.

114.    Similarly, Booz Allen charges unlawful Junk Fees on permits, such as backpacking wilderness permits.

115.    Here is an example of a permit reservation Junk Fee being charged to Mrs. Wilson:



| ∧ Olympic National Park Wilderness Permit | | $38.00 | Reservation |
| Bogachiel | | 1 Permit | 0105041122-1 |
| Use Fee | x 1 | $32.00 | |
| Reservation Fee | x 1 | $6.00 | |

| Inventory Type | Entry Date | Exit Date |
| PERMIT | May 25, 2019 | May 27, 2019 |
| Permit Holder | Group Size | |
| Robyn Wilson | 2 | |

116.    On information and belief, "permit" Junk Fees have been charged at hundreds of locations throughout the United States to tens of thousands, if not millions, of effected consumers.

117.    No portions of these permit Junk Fees are paid to the government and are instead kept in full by Booz Allen.

118.    No disclosures regarding the allocation of fees are made to consumers on recreation.gov or otherwise by Booz Allen.

### 4.    Booz Allen Also Collects Junk Fees on Illegal Lotteries for Certain Types of Reservations, in Violation of Federal Law.

119.    For certain Reservations that are in high demand, Booz Allen also conducts "lotteries" to determine which consumers will receive the high demand reservations.

120.    As explained on recreation.gov, permit and reservation "lotteries have an application fee to register for the lottery. The fee is charged to each applicant . . . regardless of if they are selected for that lottery." Ex. I (https://www.recreation.gov/lottery/how-they-work).

121.    The nature of those lottery Junk Fees, however, is misrepresented to consumers. For example, in a January 11, 2023 promotion related to river rafting lottery applications, Booz Allen falsely represented to consumers that the "application fee for these lotteries . . . helps the government cover the cost of building and managing Recreation.gov," when in fact, on information and belief, the Junk Fees for these lotteries are actually fully paid to Booz Allen.

122.    The Junk Fees associated with lotteries are often $6 to $9 per entry.

123.    On information and belief, "lottery" Junk Fees have been charged at hundreds of locations throughout the United States to tens of thousands, if not millions, of effected consumers.

124.    The lottery Junk Fees are non-refundable, even when consumers do not receive a Reservation in exchange for their entry, and Booz Allen profits from the lottery regardless of which consumers ultimately "win" the lottery.

125.    Consumers can often spend hundreds of dollars on lotteries over the course of a year attempting to secure high demand Reservations, often without any success.

126.    Here's a recent description of how such lottery Junk Fees impact consumers:

> Every day, visitors to Vermilion Cliffs National Monument in Northern Arizona hike into an area named Coyote Buttes North to see one of the "most visually striking geologic sandstone formations in the world," which is known as The Wave. On an ancient layer of sandstone, millions of years of water and wind erosion crafted 3,000-foot cliffs, weird red canyons that look like you are on the planet Mars, and giant formations that look like crashing waves made of rock. There are old carvings known as 'petroglyphs' on cliff walls, and even "dinosaur tracks embedded in the sediment."
>
> The Wave is unlike anywhere else on Earth. It is also part of a U.S. national park, and thus technically, it's open to anyone. Yet, to

26

preserve its natural beauty, the Bureau of Land Management lets just 64 people daily visit the area. Snagging one of these slots is an accomplishment, a ticket into The Wave is known as "The Hardest Permit to Get in the USA" by Outside and Backpacker Magazines.

To apply requires going to Recreation.gov, the site set up to manage national parks, public cultural landmarks, and public lands, and paying $9 for a "Lottery Application Fee." If you win, you get a permit, and pay a recreation fee of $7. The success rate for the lottery is between 4-10%, and some people spend upwards of $500 before securing an actual permit.

But while the recreation fee of $7 goes to maintaining the park . . . the money for the "Lottery Application Fee" . . .  goes to the giant D.C. consulting firm, Booz Allen and Company.

Ex. B.

127.    Here is an example of an unsuccessful "the Wave" lottery application from Mrs. Jones' recreation.gov account:



128.    On information and belief, 100% of the "lottery" Junk Fees are paid to Booz Allen, and create millions of dollars in unlawful revenue each year for Booz Allen.

129.    In addition to violating the FLREA by charging these lottery Junk Fees, the operation of the lotteries by Booz Allen also violates federal criminal law.

130.     Specifically, 18 U.S.C. §§ 1301, *et seq.*, prohibits the promotion of lotteries in interstate commerce.

131.     While an exception exists for government run lotteries, in a 2008 U.S. Department of Justice Office of Legal Counsel Memorandum, the Department found that "statutory exemption for lotteries 'conducted by a State' requires that the State exercise actual control over all significant business decisions made by the lottery enterprise and retain all but a de minimis share of the equity interest in the profits and losses of the business, as well as the rights to the trademarks and other unique intellectual property or essential assets of the State's lottery." *Scope of Exemption Under Federal Lottery Statutes for Lotteries Conducted by a State, Opinions of the Office of Legal Counsel of the Department of Justice,* October 16, 2008.

132.     The lottery system run by Booz Allen on recreation.gov does not meet this high standard because, despite "partnering" with the Federal Agencies, Booz Allen exercises significant discretion in running the recreation.gov lotteries and, on information and belief, keeps all of the profits from those lotteries for itself.

133.     Booz Allen's recreation.gov lotteries therefore violate 18 U.S.C. §§ 1301, *et seq.,* and, separate and apart from FLREA, cannot continue.

134.     Further, the operation of the lotteries by Booz Allen violates numerous states' anti-gambling laws, for example, California Penal Code §§ 319 *et seq.*, which bans the operations of lotteries.

135.     To be a lottery under California law, there are three elements: "(1) a prize; (2) distribution by chance; and (3) consideration." *Western Telcon, Inc. v. Cal. State Lottery*, 13 Cal.4th 475, 484 (1996); *Bell Gardens Bicycle Club v. Dep't of Justice*, 36 Cal. App. 4th 717, 744 (1995) ("As a matter of law there is not 'any particular method of operation [which is]

indispensable to the existence of a lottery. Rather, as the decisions of the California courts have made clear, the particular aspects of any lottery scheme are irrelevant, as long as the elements of a lottery, i.e., prize, distributed primarily for chance, and consideration are present.").

136.    Here, Booz Allen's operation of the permit and reservation lotteries on recreation.gov meet each of these requirements.  As reflected on the recreation.gov "how does the lottery work" webpage, Booz Allen: (1) offers a prize—the high demand reservation or permit; (2) the lottery is conducted by random chance; and (3) fees are charged with each lottery entry.  Ex. I (https://www.recreation.gov/lottery/how-they-work).

137.    Similar violations exist for other states' anti-gambling and anti-lottery laws.  *See, e.g.,* Va. Code §§ 18.2-325, *et seq.*; Fla. Stat. § 849.09; N.Y. Penal Law §§ 225.00, *et seq.*; Utah Code §§ 76-10-1101, *et seq.;* Wash. Rev. Code §§ 9.46.010, *et seq.*

### 5.    Booz Allen Also Charges Unlawful Junk Fees on Campgrounds and Lodging.

138.    Similarly, Booz Allen charges unlawful Junk Fees on campground and lodging reservations.

139.    Here is an example on a $8 reservation Junk Fee for a campsite being charged on Mrs. Oliver's recreation.gov account:



140.    On information and belief, these campground and lodging Junk Fees have been charged at thousands of locations throughout the United States to millions of consumers.

141.    No portions of these campground and lodging Junk Fees are paid to the government and are instead kept in full by Booz Allen.

142.    No disclosures regarding the allocation of these fees are made to consumers on recreation.gov or otherwise by Booz Allen.

### 6.    Booz Allen Charges Consumers "Cancellation" Junk Fees that Directly Take Money Away from the Federal Agencies.

143.    Finally, despite already charging numerous Junk Fees up front, when consumers need to cancel plans on recreation.gov, they are charged additional "cancellation" Junk Fees.

144.    Here is an example of a $10 cancellation Junk Fee from Mrs. Oliver's recreation.gov account:



145.    On information and belief, those cancellation Junk Fees are often taken directly from the "use fee" revenue that would have otherwise been paid to the Federal Agencies.

146.    The cancellation Junk Fees do not serve any valid purpose, except to line Booz Allen's pockets, because, on information and belief, the amount of the cancellation Junk Fees are not in any way proportional to the costs that Booz Allen incurs to process a cancellation through recreation.gov or to the value of those services.

147.    No portions of these cancellation Junk Fees are paid to the government and are instead kept in full by Booz Allen.

148.    No disclosures regarding the allocation of fees are made to consumers on recreation.gov or otherwise by Booz Allen.

**G.    Booz Allen Deceptively Markets Outdoor "Opportunities" to Consumers in Order to Drive Additional Junk Fee Revenue.**

149.    In order to make reservations through recreation.gov, consumers are required to create recreation.gov accounts, regardless of whether they ever intend to use recreation.gov again.

150.    Using the contact information provided by consumers during account creation, Booz Allen engages in deceptive marketing to extract additional Junk Fees from consumers.

151.    For example, Booz Allen, via recreation.gov, sends consumers emails promoting various outdoor "opportunities," which do not disclose that reservation and/or permit Junk Fees are required to be paid, and certainly do not disclose that the Junk Fees are paid to Booz Allen.

152.    One recent example involves promotional emails to "cut your own Christmas tree" that were sent by Booz Allen via recreation.gov in December 2022.

153.    While the marketing emails indicate that Christmas tree permits can be issued for a certain specific dollar amount, once a consumer navigates to recreation.gov to purchase the permit, the consumer is forced to pay additional "processing fees"—i.e., Junk Fees—to Booz Allen that are not disclosed until the very end of the transaction.

154.    Here's an example of one such marketing email, which reflects that a Christmas tree permit in Arapaho and Roosevelt National Forests is $20 per tree:



155.    Yet, here is how the receipt appears at the time of check-out, which reflects the addition of a $2.50 reservation Junk Fee:



156.    On information and belief, Booz Allen has sent similar marketing emails to millions of consumers since October 2018.

**H.      Recreation.gov's Privacy Policy Fails to Disclose Booz Allen's Use of Consumer Data, and Fails to Provide Consumers the Opportunity to Opt-Out of Data Collection.**

157.    Like most modern websites, recreation.gov has a Privacy Policy.   Ex. H (https://www.recreation.gov/privacy-policy).

158.    While the recreation.gov Privacy Policy is quite lengthy, nowhere in the Privacy Policy is Booz Allen's identity disclosed.   Indeed, just the opposite. The Privacy Policy affirmatively claims that recreation.gov is "operated by the U.S. Department of Agriculture, Forest Service, and other R1S participating agencies from the United States."  *Id.*

159.    Consistent with Booz Allen's operations of recreation.gov generally, the Privacy Policy and related website interface are designed to create the impression that the Privacy Policy is between consumers and the Federal Agencies, and not Booz Allen.

160.    Critically, and among other things, the Privacy Policy uses the term "we" to describe the website operator, but nowhere in the Privacy Policy or otherwise on recreation.gov is it disclosed that "we" refers to Booz Allen—a for profit federal contactor—as opposed to the Federal Agencies that administer the federal lands and whose names and insignias appear throughout recreation.gov, including on the Privacy Policy webpage.

161.    As a result, consumers have no way of knowing that their data is being mined and used by Booz Allen, instead of the Federal Agencies.

162.    While the Privacy Policy claims that "we do not share or release personal information, credit card or financial information for use by other organizations," on information and belief, Booz Allen itself uses this information, although a reasonable consumer would believe that Booz Allen is an "other organization."

163.    Booz Allen does not provide consumers any option to opt-out of data collection on recreation.gov, and instead directs them to potential options provided by third parties.  *See id.*

I.      **The Recreation.gov App Presents the Same Problems as the Website.**

164.    Booz Allen also operates a "recreation.gov App" for mobile devices (the "App").

165.    Like the recreation.gov website, the App is operated by Booz Allen to create the misrepresentation that it is run and operated by the Federal Agencies, and not Booz Allen.

166.    While the current version of the App does state at the time of download that the App was "developed" by Booz Allen, the statement says nothing about who operates the App (Booz Allen), who Junk Fees incurred through the App are paid to (Booz Allen), and that no portion of those Junk Fees are paid to the Federal Agencies that actually administer the federal lands.

167.    The recreation.gov App presents all of the same issues as the recreation.gov website, as alleged in this complaint, and those website allegations are expressly incorporated here by reference.

168.    In short, there are no material differences between the recreation.gov website and the App.[10]

J.      **Plaintiff Specific Facts.**

1.      **Robyn Wilson.**

169.    Plaintiff Robyn Wilson is an avid camper, backpacker, and amateur landscape photographer.  She has long enjoyed the outdoors, but became especially interested in enjoying federally administered lands upon moving to Washington State in 2002. She intends to continue to make similar visits to National Parks and other federal lands in the future.

---

[10] On information and belief, Booz Allen also provides phone-based reservation services as part of its operation of the recreation.gov website.  Plaintiffs anticipate that discovery will reveal similar problematic practices with regard to Booz Allen's operation of those phone systems, but those details are not presently known to Plaintiffs.  Plaintiffs expressly reserve their right to add claims based on Booz Allen's phone operations should discovery reveal similar problematic practices.

170. At all relevant times to this litigation, Mrs. Wilson has been a resident of Washington State.

171. Mrs. Wilson created a recreation.gov account on or about February 23, 2015. Mrs. Wilson was never notified that recreation.gov was operated by Booz Allen and that a portion of any fees that she may pay on the website would go to Booz Allen instead of the Federal Agencies.

172. As relevant to this case, after creating her account, Mrs. Wilson made the following transactions and incurred the following Junk Fees on recreation.gov:

    a. April 1, 2019, Enchantment Permit Area Snow Zone in Okanogan-Wenatchee National Forest; Mrs. Wilson paid a $100 use fee and a $6 reservation Junk Fee.

    b. May 4, 2019, Olympic National Park Wilderness Permit at Shi Shi Beach; Mrs. Wilson paid a $16 use fee and a $6 reservation Junk Fee.

    c. May 25, 2019, Olympic National Park Wilderness Permit at Bogachiel; Mrs. Wilson paid a $32 use fee and a $6 reservation Junk Fee.

    d. February 15, 2021, Enchantment Permit Area Lottery in Okanogan-Wenatchee National Forest; Mrs. Wilson paid a $6 lottery Junk Fee; Mrs. Wilson was unsuccessful in the lottery and received nothing in exchange for her $6 lottery Junk Fee.

    e. December 5, 2021, Coyote Buttes North (The Wave) Lottery in the Paria Canyon-Vermilion Cliffs Wilderness; Mrs. Wilson paid a $9 lottery Junk Fee; Mrs. Wilson was unsuccessful in the lottery and received nothing in exchange for her $9 lottery Junk Fee.

    f. September 2, 2022, Rocky Mountain National Park Timed Entry Permit; Mrs. Wilson paid a $2 reservation Junk Fee.

173.   Despite being physically present at an Olympic National Park ranger station, the May 4 and May 25, 2019 reservations still required Mrs. Wilson (with the help of National Park staff) to use recreation.gov and required her to pay the associated Junk Fees.

174.   Here are several examples of receipts from Mrs. Wilson's account:



175.   On information and belief, each of the Junk Fees incurred by Mrs. Wilson on recreation.gov was paid to Booz Allen.

176.    At the time each of these transactions occurred, Mrs. Wilson was led to believe by the recreation.gov website's interface that the Junk Fees were being paid to the Federal Agencies, not Booz Allen.

177.    Each of the Junk Fees paid by Mrs. Wilson is a "recreation fee" within the meaning of the FLREA and the *Kotab* decision, but was not adopted in compliance with that FLREA.

178.    Accordingly, each of the Junk Fees paid by Mrs. Wilson to Booz Allen violate the FLREA.

179.    Further, because the payments to Booz Allen were not disclosed to Mrs. Wilson, the Junk Fees are unlawful and deceptive in violation of Washington's consumer protection laws.

180.    Finally, the "lottery" Junk Fees paid by Mrs. Wilson also violate applicable federal and state lottery and anti-gambling laws.

181.    Had Mrs. Wilson known the true nature of Booz Allen's operation of recreation.gov and that the Junk Fees were paid to Booz Allen and not the Federal Agencies, Mrs. Wilson would have instead contacted the relevant Federal Agencies directly to make her reservations to avoid paying the Junk Fees to Booz Allen.

### 2.    Tamera Streeter.

182.    Plaintiff Tamera Streeter served in the United States Coast Guard from 1980 to 2006, achieved the rank of Chief Warrant Officer (CWO-3), and was honorably discharged in 2006.  Mrs. Streeter is also 70% disabled.

183.    Mrs. Streeter was issued a National Parks and Federal Recreational Lands Access Pass based on her disabled status.

184.    The "Access Pass" is the version of the National Parks and Federal Recreational Lands Pass that is issued to individuals who are disabled pursuant to 16 U.S.C. § 6804(b)(2).  The pass is issued for the lifetime of the pass holder.

185.    Since 2020, Mrs. Streeter has resided just outside of Yosemite National Park, where she frequently spends time.

186.    In or about 2021, Yosemite National Park implemented a park reservation access program that required Mrs. Streeter to make reservations through recreation.gov in order to access the park during certain periods.

187.    To continue her practice of spending time in Yosemite, Mrs. Streeter created a recreation.gov account on or about May 2021.  During the account creation process, Mrs. Streeter was never notified that recreation.gov was operated by Booz Allen and that a portion of any fees that she may pay on the website would go to Booz Allen instead of the Federal Agencies.

188.    After creating her recreation.gov account, Mrs. Streeter made the following park access reservations and incurred the following Junk Fees for those reservations:

      a.   May 17, 2021, Yosemite National Park Ticketed Entry; Mrs. Streeter paid a $2 reservation Junk Fee.

      b.   June 7, 2021, two Yosemite National Park Ticketed Entries; Mrs. Streeter paid a $2 reservation Junk Fee.

      c.   September 23, 2022, Yosemite National Park Ticketed Entry; Mrs. Streeter paid a $2 reservation Junk Fee.

189.    In each instance, even though Mrs. Streeter was entitled by federal law to enjoy free access to Yosemite through her Access Pass, she was charged a $2 Junk Fee by Booz Allen to make the park access reservation.

190.    Because of the mandatory reservation system in place at Yosemite, Mrs. Streeter had no way to access Yosemite on these same dates and times without incurring these fees, in violation of 16 U.S.C. § 6804(b)(2).

191.    Here is an example of a park access reservation receipt on Mrs. Streeter's recreation.gov account:

| ∧ Day Use Entry  | | $2.00 | Reservation |
| Yosemite National Park Ticketed Entry | | 1 Ticket(s) | 0377370286-2 |
| Reservation Fee | x 1 | $2.00 | |
| Day Use Entry Vehicle 3-Day Entry Ticket Fee | x 1 | $33.00 | |
| Day Use Entry Vehicle 3-Day Entry Ticket Fee discount | x 1 | ($33.00) | |

| Tour Date | Tour Start | Tour End |
| Jul 14, 2021 | 5:00 AM | 11:00 PM |

192.    Importantly, the reservation reflects that while the Yosemite use fee was not charged to Mrs. Streeter, the $2 reservation Junk Fee was still charged by Booz Allen.

193.    Each of the Junk Fees paid by Mrs. Streeter is a "recreation fee" within the meaning of the FLREA and the *Kotab* decision, but was not adopted in compliance with that FLREA.

194.    Accordingly, each of the Junk Fees paid by Mrs. Streeter to Booz Allen violate the FLREA.

195.    Further, because the payments to Booz Allen were not disclosed to Mrs. Streeter, the Junk Fees are unlawful and deceptive in violation of California's consumer protection laws.

196.    But for the limited reservations for Yosemite access on recreation.gov, Mrs. Streeter would have visited Yosemite more frequently.

197.    Mrs. Streeter intends to continue to visit Yosemite and other federal lands in the future.

198.    Had Mrs. Streeter known the true nature of Booz Allen's operation of recreation.gov and that the Junk Fees were paid to Booz Allen and not the Federal Agencies, Mrs.

Streeter would have instead contacted the relevant Federal Agencies directly to make her reservations to avoid paying the Junk Fees to Booz Allen. However, on information and belief, during the periods at issue, such efforts would have been futile, because park access reservations for Yosemite were exclusively available through recreation.gov.

### 3. Dana Oliver.

199. Plaintiff Dana Oliver[11] is an avid camper and hiker. She enjoys exploring natural areas with her partner. She intends to continue to make similar visits to National Parks and other federal lands in the future.

200. At all relevant times to this litigation, Mrs. Oliver has been a resident of California.

201. Mrs. Oliver created her recreation.gov account in 2016. When Booz Allen took over recreation.gov in October 2018, Mrs. Oliver was never notified that recreation.gov would be operated by Booz Allen and that a portion of any of the fees that she may pay on the website going forward would go to Booz Allen instead of to the Federal Agencies.

202. Mrs. Oliver made the following reservations before Booz Allen took over operation of recreation.gov:

    a. October 25, 2016, Zion National Park Watchman Campground; a $20 use fee was charged, but no separate reservation Junk Fee was charged.

    b. October 27, 2016, Zion National Park Watchman Campground; a $40 use fee was charged, but no separate reservation Junk Fee was charged.

    c. December 21, 2017, Joshua Tree National Park Indian Cove Campground; a $40 use fee was charged, but no separate reservation Junk Fee was charged.

---

[11] Certain of Mrs. Oliver's transactions reflect her maiden name, Dana Walden.

d.  May 17, 2018, Joshua Tree National Park Indian Cove Campground; a $60 use fee was charged, but no separate reservation Junk Fee was charged.

203.  However, after Booz Allen took over operation of recreation.gov in October 2018, among other transactions, Mrs. Oliver's account reflects frequent reservation and cancellation Junk Fees:

a.  November 8, 2018, Cleveland National Forest Laguna Campground; Mrs. Oliver was charged a $50 use fee and a $8 reservation Junk Fee.

b.  December 21, 2018, Cleveland National Forest Laguna Campground; Mrs. Oliver was charged a $52 use fee and a $8 reservation Junk Fee.

c.  December 19, 2018, Joshua Tree National Park Indian Cove Campground Cancellation; Mrs. Oliver was charged a $10 cancellation Junk Fee.

d.  March 13, 2020, Sequoia National Park and Inyo National Forest Mount Whitney Trail; Mrs. Oliver paid a $6 lottery Junk Fee; Mrs. Oliver was unsuccessful in the lottery and received nothing in exchange for her $6 lottery Junk Fee.

e.  October 7, 2021, Cleveland National Forest Laguna Campground; Mrs. Oliver was charged a $84 use fee and a $8 reservation Junk Fee.

f.  March 2, 2022, Joshua Tree National Park Indian Cove Campground Cancellation; Mrs. Oliver was charged a $10 cancellation Junk Fee.

g.  April 2, 2022, Joshua Tree National Park Cottonwood Group Campground Cancellation; Mrs. Oliver was charged a $10 cancellation Junk Fee.

h.  April 2, 2022, Joshua Tree National Park Indian Cove Group Campground Cancellation; Mrs. Oliver was charged a $10 cancellation Junk Fee and not refunded a $40 use fee.

i.   March 2, 2022, Cleveland National Forest Laguna Campground Change and Cancellation; Mrs. Oliver was charged a $10 change Junk Fee and a $10 cancellation Junk Fee.

j.   September 29, 2022, Cleveland National Forest Laguna Campground; Mrs. Oliver was charged a $87 use fee and a $8 reservation Junk Fee.

k.   September 30, 2022, Cleveland National Forest Laguna Campground; Mrs. Oliver was charged a $58 use fee and a $8 reservation Junk Fee.

l.   October 2, 2022, Cleveland National Forest Laguna Campground Cancellation; Mrs. Oliver was charged a $8 reservation Junk Fee and a $10 cancellation Junk Fee.

m.   October 4, 2022, Cleveland National Forest Laguna Campground; Mrs. Oliver was charged a $58 use fee and a $8 reservation Junk Fee.

n.   October 23, 2022, Cleveland National Forest Laguna Campground Cancellation; Mrs. Oliver was charged a $8 reservation Junk Fee and a $10 cancellation Junk Fee.

o.   October 24, 2022, Cleveland National Forest Laguna Campground Cancellation; Mrs. Oliver was charged a $10 cancellation Junk Fee.

p.   December 24, 2022, Cleveland National Forest Laguna Campground; Mrs. Oliver was charged a $96 use fee and a $8 reservation Junk Fee.[12]

---

[12] Mrs. Oliver also has additional reservations on her recreation.gov account.

204.    Here is an example of a recreation.gov receipt from Mrs. Oliver's account from before Booz Allen took over operation of the website, which reflects no reservation Junk Fee:



205.    And here is a similar campground reservation receipt from Mrs. Oliver's account from after Booz Allen took over recreation.gov, which reflects an $8 reservation Junk Fee:



206.    Here is an example of a $10 cancellation Junk Fee receipt from Mrs. Oliver's account incurred after Booz Allen took over operation of recreation.gov:



207.    On information and belief, each of the Junk Fees incurred by Mrs. Oliver on recreation.gov was paid to Booz Allen.

208.    At the time each of these transactions occurred, Mrs. Oliver was led to believe by the recreation.gov website's interface that the Junk Fees were being paid to the Federal Agencies, not Booz Allen.

209.    Each of the Junk Fees paid by Mrs. Oliver is a "recreation fee" within the meaning of the FLREA and the *Kotab* decision, but was not adopted in compliance with that FLREA.

210.    Accordingly, each of the Junk Fees paid by Mrs. Oliver to Booz Allen violate the FLREA.

211.    Further, because the payments to Booz Allen were not disclosed to Mrs. Oliver, the Junk Fees are unlawful and deceptive in violation of California's consumer protection laws.

212.    Finally, the "lottery" Junk Fee paid by Mrs. Oliver also violates applicable federal and state lottery and anti-gambling laws.

213.    Had Mrs. Oliver known the true nature of Booz Allen's operation of recreation.gov and that the Junk Fees were paid to Booz Allen and not the Federal Agencies, Mrs. Oliver would have instead contacted the relevant Federal Agencies directly to make her reservations to avoid paying the Junk Fees to Booz Allen.  However, on information and belief, during the periods at issue, such efforts would have been futile, at least as to the Mt. Whitney lottery entry, because the Mt. Whitney lottery was exclusively available through recreation.gov.

### 4.    Kristen Jones.

214.    Plaintiff Kristen Jones is an enthusiast of National Parks and enjoys spending time outdoors to recreate and relax.  She intends to make similar visits to National Parks and other federal lands in the future.

215.    At all relevant times to this litigation, Mrs. Jones has been a resident of California.

216.    Mrs. Jones created a recreation.gov account in or about November 2021.  During the account creation process, Mrs. Jones was never notified that recreation.gov was operated by Booz Allen and that a portion of any of fees that she may pay on the website would go to Booz Allen instead of the Federal Agencies.

217.    After creating her account, Mrs. Jones incurred the following Junk Fees entering lotteries on recreation.gov:

    a.  November 22, 2021, Coyote Buttes North (The Wave) Lottery in the Paria Canyon-Vermilion Cliffs Wilderness; Mrs. Jones was unsuccessful in the lottery and received nothing in exchange for her $9 lottery Junk Fee.

    b.  August 24, 2022, Coyote Buttes North (The Wave) Lottery in the Paria Canyon-Vermilion Cliffs Wilderness; Mrs. Jones was unsuccessful in the lottery and received nothing in exchange for her $9 lottery Junk Fee.

218.    Here an example for how those lottery Junk Fees appear on Mrs. Jones'
recreation.gov account:



219.    On information and belief, each of the Junk Fees incurred by Mrs. Jones on
recreation.gov was paid to Booz Allen.

220.    At the time each of these transactions occurred, Mrs. Jones was led to believe by
the recreation.gov website's interface that the Junk Fees were being paid to the Federal Agencies,
not Booz Allen.

221.    Each of the Junk Fees paid by Mrs. Jones is a "recreation fee" within the meaning
of the FLREA and the *Kotab* decision, but was not adopted in compliance with that FLREA.

222.    Accordingly, each of the Junk Fees paid by Mrs. Jones to Booz Allen violate the
FLREA.

223.    Further, because the payments to Booz Allen were not disclosed to Mrs. Jones, the
Junk Fees are unlawful and deceptive in violation of California's consumer protection laws.

224.    Finally, the "lottery" Junk Fees paid by Mrs. Jones also violate applicable federal
and state lottery and anti-gambling laws.

225.    Had Mrs. Jones known the true nature of Booz Allen's operation of recreation.gov and that the Junk Fees were paid to Booz Allen and not the Federal Agencies, Mrs. Jones would have instead contacted the relevant Federal Agencies directly to make her reservations to avoid paying the Junk Fees to Booz Allen.  However, on information and belief, during the periods at issue, such efforts would have been futile, because "the Wave" lottery entries were exclusively available through recreation.gov.

### 5.    Natalia Loginova.

226.    Plaintiff Natalia Loginova enjoys the outdoors and has a special interest in visiting National Parks.  Mrs. Loginova took a cross-country road trip with her mother to visit federal lands in September 2022. She intends to make similar visits to National Parks and other federal lands in the future.

227.    At all relevant times to this litigation, Mrs. Loginova has been a resident of Florida.

228.    Mrs. Loginova created a recreation.gov account in or about July 2022.  During the account creation process, Mrs. Loginova was never notified that recreation.gov was operated by Booz Allen and that a portion of any of the fees that she may pay on the website would go to Booz Allen instead of the Federal Agencies.

229.    After creating her account, Mrs. Loginova made the following reservations and incurred the following Junk Fees:

      a.   August 1, 2022, Rocky Mountain National Park access reservation, which included a $2 reservation Junk Fee.

      b.   August 6, 2022, Mount Evans Wilderness reservation, which included a $2 reservation Junk Fee.

230.    Here are Mrs. Loginova's receipts from those transactions, which both reflect a $2 reservation Junk Fee on transactions that otherwise would have been free:



231.    On information and belief, each of the Junk Fees incurred by Mrs. Loginova on recreation.gov was paid to Booz Allen.

232.    At the time each of these transactions occurred, Mrs. Loginova was led to believe by the recreation.gov website's interface that the Junk Fees were being paid to the Federal Agencies, not Booz Allen.

233.    Each of the Junk Fees paid by Mrs. Loginova is a "recreation fee" within the meaning of the FLREA and the *Kotab* decision, but was not adopted in compliance with that FLREA.

234.    Accordingly, each of the Junk Fees paid by Mrs. Loginova to Booz Allen violate the FLREA.

235.    Further, because the payments to Booz Allen were not disclosed to Mrs. Loginova, the Junk Fees are unlawful and deceptive in violation of Florida's consumer protection laws.

236.    Had Mrs. Loginova known the true nature of Booz Allen's operation of recreation.gov and that the Junk Fees were paid to Booz Allen and not the Federal Agencies, Mrs. Loginova would have instead contacted the relevant Federal Agencies directly to make her reservations to avoid paying the Junk Fees to Booz Allen.

### 6.    Josh Berger.

237.    Plaintiff Josh Berger is an avid outdoorsman and spends much of his free time walking, running, and hiking on federal lands with his family. He intends to make similar visits to National Parks and other federal lands in the future.

238.    At all relevant times to this litigation, Mr. Berger has been a resident of New York.

239.    Mr. Berger created a recreation.gov account in or about the Spring of 2022.  During the account creation process, Mr. Berger was never notified that recreation.gov was operated by

Booz Allen and that a portion of any of fees that he may pay on the website would go to Booz Allen instead of the Federal Agencies.

240.    After creating his account, on May 10, 2022, Mr. Berger made an Arches National Park Timed Entry Reservation and paid a $2 reservation Junk Fee.

241.    Here is the receipt for that transaction from Mr. Berger's recreation.gov account:



242.    On information and belief, the Junk Fee incurred by Mr. Berger on recreation.gov was paid to Booz Allen.

243.    At the time this transaction occurred, Mr. Berger was led to believe by the recreation.gov website's interface that the Junk Fee was being paid to the Federal Agencies, not Booz Allen.

244.    The Junk Fee paid by Mr. Berger is a "recreation fee" within the meaning of the FLREA and the *Kotab* decision, but was not adopted in compliance with that FLREA.

245.    Accordingly, the Junk Fee paid by Mr. Berger to Booz Allen violates the FLREA.

246.    Further, because the payment to Booz Allen was not disclosed to Mr. Berger, the Junk Fee is unlawful and deceptive in violation of New York's consumer protection laws.

247.     Had Mr. Berger known the true nature of Booz Allen's operation of recreation.gov and that the Junk Fee was paid to Booz Allen and not the Federal Agencies, Mr. Berger would have instead contacted the relevant Federal Agency directly to make his reservation to avoid paying the Junk Fee to Booz Allen.

248.     In the summer of 2022, Mr. Berger planned a cross-country trip to visit multiple federal lands, but was unable to enter many of those federal lands due to limiting features of the recreation.gov website.

### 7.     Nick Lauritzen.

249.     Plaintiff Nick Lauritzen frequently spends time in the outdoors and views federal lands as an invaluable resource. He intends to visit National Parks and other federal lands in the future.

250.     At all relevant times to this litigation, Mr. Lauritzen has been a resident of Utah.

251.     Mr. Lauritzen created a recreation.gov account in or about 2018.  Mr. Lauritzen was never notified that recreation.gov was operated by Booz Allen and that a portion of any of fees that he may pay on the website would go to Booz Allen instead of the Federal Agencies.

252.     After creating his account, among other transactions, Mr. Lauritzen made a reservation on July 4, 2021, at the Tony Grove Campground in Uinta-Wasatch-Cache National Forest.  Mr. Lauritzen paid a $22 camping use fee, a $8 reservation Junk Fee, and $2.55 in taxes.

253.    Here is the receipt for the transaction from Mr. Lauritzen's recreation.gov account:



254.    On information and belief, the Junk Fee incurred by Mr. Lauritzen on recreation.gov was paid to Booz Allen.

255.    At the time the transaction occurred, Mr. Lauritzen was led to believe by the recreation.gov website's interface that the Junk Fee was being paid to the Federal Agencies, not Booz Allen.

256.    The Junk Fee paid by Mr. Lauritzen is a "recreation fee" within the meaning of the FLREA and the *Kotab* decision, but was not adopted in compliance with that FLREA.

257.    Accordingly, the Junk Fee paid by Mr. Lauritzen to Booz Allen violates the FLREA.

258.    Further, because the payment to Booz Allen was not disclosed to Mr. Lauritzen, the Junk Fee is unlawful and deceptive in violation of Utah's consumer protection laws.

259.    Had Mr. Lauritzen known the true nature of Booz Allen's operation of recreation.gov and that the Junk Fee was paid to Booz Allen and not the Federal Agencies, Mr. Lauritzen would have instead contacted the relevant Federal Agencies directly to make his reservation to avoid paying the Junk Fee to Booz Allen.

## CLASS ALLEGATIONS

260.    This action is brought and may properly proceed as a class action pursuant to Federal Rule of Civil Procedure 23, including Sections (b)(1), (b)(2) and (b)(3) of Rule 23.

261.    Plaintiffs seek certification of the following national class (the "National Class"), consisting of the following individuals:

> All individuals in the United States who were charged a Junk Fee on the recreation.gov website and/or App.

262.    The National Class is represented by all Plaintiffs.

263.    Plaintiffs also seek certification of the following national class of the Military, Veterans, and the Disabled (the "Military, Veterans, and Disabled Class"), consisting of the following individuals:

> All members of the Armed Forces and their dependents, veterans, Gold Star Families, and disabled individuals, as defined by 16 U.S.C. § 6804(b)(2)-(3), who were charged a Junk Fee for making a park access reservation through the recreation.gov website and/or App.

264.    The Military, Veterans, and Disabled Class is represented by Plaintiff Streeter.

265.    Additionally, Plaintiffs seek certification of the following state-specific classes (collectively, the "State Classes"):

> a.    The California Class:  All residents of California who were charged a Junk Fee on the recreation.gov website and/or App.  The California Class is represented by Plaintiffs Streeter, Oliver, and Jones.

b.  <u>The Florida Class:</u>  All residents of Florida who were charged a Junk Fee on the recreation.gov website and/or App.  The Florida Class is represented by Plaintiff Loginova.

c.  <u>The New York Class:</u>  All residents of New York who were charged a Junk Fee on the recreation.gov website and/or App.  The New York Class is represented by Plaintiff Berger.

d.  <u>The Utah Class:</u>  All residents of Utah who were charged a Junk Fee on the recreation.gov website and/or App.  The Utah Class is represented by Plaintiff Lauritzen.

e.  <u>The Washington Class:</u>  All residents of Washington who were charged a Junk Fee on the recreation.gov website and/or App.  The Washington Class is represented by Plaintiff Wilson.

266.  The National Class, the Military, Veterans, and Disabled Class, and the State Classes are collectively referred to as the "Classes."

267.  Plaintiffs explicitly reserve their right to amend, add to, modify, and/or otherwise change the proposed class definitions as discovery in this action progresses.

268.  The following people are excluded from any of the Classes: (1) any Judge or Magistrate presiding over this action, members of their staffs (including judicial clerks), and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest, and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and

Defendants' counsel, and non-attorney employees of their firms; and (6) the legal representatives, successors, and assigns of any such excluded persons.

269.    **Ascertainability.** Plaintiffs are informed and believe that the identities of members of the Classes are ascertainable through Defendants' records, because, among other reasons, each of the recreation.gov accounts reviewed by Plaintiffs' Counsel have contained detailed records for each transaction initiated through recreation.gov.

270.    **Numerosity.** Plaintiffs are informed and believe that there are tens of thousands or potentially millions of members of the Classes. For example, on its corporate website, Booz Allen contends that it processed approximately 9 million transactions on recreation.gov in 2021 alone. The Classes are so large that the joinder of all of their members is impracticable. The exact number of members of each of the Classes can be determined from information in the possession and control of Defendants.

271.    **Commonality.** Defendants have acted or refused to act on grounds that apply generally to the Classes, by charging Junk Fees in a standardized and uniform manner to members of the Classes based on transaction type. Absent certification of the Classes, the relief sought herein creates the possibility of inconsistent judgments and/or obligations imposed on Defendants. Numerous common issues of fact and law exist, including, without limitation:

      a.   Whether the Junk Fees were adopted in compliance with the FLREA;

      b.   Whether the Junk Fees violate the FLREA;

      c.   Whether the Junk Fees charged to the Military, Veterans, and the Disabled violate the FLREA;

d.  The nature and extent of any misrepresentations and/or lack of disclosures made to consumers regarding Booz Allen's operation of recreation.gov and the recreation.gov App;

e.  The nature, extent, policies, and practices for charging consumers Junk Fees;

f.  Whether the lotteries conducted on recreation.gov and the App, including the associated lottery Junk Fees, violate federal and state anti-lottery and anti-gambling laws;

g.  Whether Defendants should have to repay the monies lost by Plaintiffs and the Classes;

h.  Whether Defendants should be required to make restitution to Plaintiffs and the Classes;

i.  Whether Defendants should be disgorged of monies that they received as ill-gotten gains;

j.  Whether Defendants should be required to pay damages to Plaintiffs and members of the Classes, including, statutory, punitive, and treble damages, where available by law;

k.  Whether Defendants should be enjoined from continuing to charge Junk Fees on recreation.gov and the App

l.  Whether Defendants should be enjoined from charging Junk Fees on recreation.gov and the App to the Military, Veterans, and the Disabled; and

m.  Whether Defendants should be required to disclose Booz Allen's operation of recreation.gov and the App.

272.   **Predominance.** These common issues predominate over individualized inquiries in this action because Defendants' liability can be established as to all members of the Classes as discussed herein.

273.   **Typicality.** Plaintiffs' claims are typical, if not identical, to the claims that could be asserted by all members of the Classes. Plaintiffs' claims arise from Defendants' practices applicable to all such class members. Further, with regard to the Military, Veterans, and Disabled Class and the State Classes:

    a.   Plaintiff Streeter's claims are typical, if not identical, to the claims that could be asserted by all members of the Military, Veterans, and Disabled Class.

    b.   Plaintiffs Streeter's, Oliver's, and Jones' claims are typical, if not identical, to the claims that could be asserted by all members of the California Class.

    c.   Plaintiff Loginova's claims are typical, if not identical, to the claims that could be asserted by all members of the Florida Class.

    d.   Plaintiff Berger's claims are typical, if not identical, to the claims that could be asserted by all members of the New York Class.

    e.   Plaintiff Lauritzen's claims are typical, if not identical, to the claims that could be asserted by all members of the Utah Class.

    f.   Plaintiff Wilson's claims are typical, if not identical, to the claims that could be asserted by all members of the Washington Class.

274.   **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs' claims are representative of the claims of the other members of the Classes, as Plaintiffs and each member of the Classes lost money by paying Junk Fees to Booz

Allen. Plaintiffs also have no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Classes.

275.   **Superiority.** There are substantial benefits to proceeding as a class action that render proceeding a class action superior to any alternatives, including that it will provide a realistic means for members of the Classes to recover damages; the damages suffered by members of the Classes may be relatively small; it would be substantially less burdensome on the courts and the parties than numerous individual proceedings; many members of the Classes may be unaware that they have legal recourse for the conduct alleged herein; and because issues common to members of the Classes can be effectively managed in a single proceeding. Plaintiffs know of no difficulty that could be encountered in the management of this litigation that would preclude its maintenance as a class action.

276.   Plaintiffs reserve the right to revise each of the foregoing allegations based on facts learned through additional investigation and in discovery.

## CAUSES OF ACTION

**I.   First Cause of Action: Declaratory Judgment, 28 U.S.C. § 2201, on Behalf of the National Class, the Military, Veterans, and Disabled Class, and the State Classes.**

277.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 276, inclusive, of this Complaint.

278.   The Declaratory Judgement Act, 28 U.S.C. § 2201, provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

279.     As alleged above, Plaintiffs and the Classes seek a declaration that the Junk Fees violate the FLREA.

280.     An actual, present, and justiciable controversy has arisen between Plaintiffs, the Classes, and Defendants concerning Defendants' ability to charge these Junk Fees under the FLREA.

281.     Plaintiffs and the Classes seek declaratory judgment from this Court that Defendants' charging of the Junk Fees violates the FLREA.

## II.   Second Cause of Action: Declaratory Judgment, 28 U.S.C. § 2201, on Behalf of the Military, Veterans, and Disabled Class.

282.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 276, inclusive, of this Complaint.

283.     The Declaratory Judgement Act, 28 U.S.C. § 2201, provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

284.     As alleged above, Plaintiff Streeter and the Military, Veterans, and Disabled Class seek a declaration that the park access reservation Junk Fees violate the FLREA when charged to members of the Armed Forces and their dependents, veterans, Gold Star Families, and the disabled because these individuals are entitled to access National Parks and other federal recreational lands "without charge" and/or at "no cost."  16 U.S.C. § 6804(b)(2)-(3).

285.     An actual, present and justiciable controversy has arisen between Plaintiff Streeter and the Military, Veterans, and Disabled Class, and Defendants concerning Defendants' ability to charge these park access Junk Fees to Plaintiff Streeter and members of the Military, Veterans, and Disabled Class.

286.     Plaintiff Streeter and the Military, Veterans, and Disabled Class seek declaratory judgment from this Court that charging these park access Junk Fees to members of the Armed Forces and their dependents, veterans, Gold Star Families, and the disabled violates 16 U.S.C. § 6804(b)(2)-(3).

### III.   Third Cause of Action:   Unjust Enrichment, on Behalf of the National Class, Military, Veterans, and Disabled, and the State Classes.

287.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 276, inclusive, of this Complaint.

288.     Defendants knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Classes by charging them unlawful Junk Fees.

289.     In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and members of the Classes.

290.     As a result of Defendants' wrongful conduct, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Classes. Defendants' retention of such funds constitutes unjust enrichment.

291.     Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, specifically, and including the charging of Junk Fees to consumers.

292.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to retain the benefits they received from charging Junk Fees, and are still receiving, without justification, from the imposition of the Junk Fees on Plaintiffs and members of the Classes in an unfair, unconscionable, and oppressive manner.

293.     The financial benefits derived by Defendants rightfully belong to Plaintiffs and members of the Classes. Defendants should be compelled to disgorge in a common fund for the

benefit of Plaintiffs and members of the Classes all wrongful or inequitable proceeds received by them. Further, a constructive trust should be imposed upon all wrongful or inequitable sums received by Defendants traceable to Plaintiffs and the members of the Classes.

294.    Plaintiffs and the Class have no adequate remedy at law.[13]

## IV.    Fourth Cause of Action, Unlawful Violation of the Virginia Consumer Protection Act, Va. Code §§ 59.1-196 *et seq.,* on Behalf of the National Class and the Military, Veterans, and Disabled Class.

295.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 276, inclusive, of this Complaint.

296.    On information and belief, the acts and practices at issue in this action, as alleged in this Complaint, were directed from Booz Allen's corporate headquarters in Virginia. Accordingly, the Virginia Consumer Protection Act, Va. Code §§ 59.1-196 *et seq.,* applies to Booz Allen and Defendants.

297.    Among other things, the Virginia Consumer Protection Act prohibits "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." *Id.* at § 59.1-200(A)(14).

298.    Plaintiffs contend that an act or practices that violates applicable law that is held out as being valid by a business is per se false, deceptive, and misleading within the meaning of the Virginia Consumer Protection Act.

---

[13] To the extent that Plaintiffs and the Classes also allege legal causes of action herein, they are entitled to plead these theories of relief in the alternative, to the extent any inconsistency exists. *See* Fed. R. Civ. P., Rule 8(a)(3).

299.    Accordingly, Defendants violated the Virginia Consumer Protection Act because, among other things, the charging of Junk Fees violates:

a.    The FLREA, which prohibits the charging of "recreation fees," except in specific circumstances, which Defendants have not and cannot satisfy;

b.    Section 16 U.S.C. § 6804(b)(2)-(3) of the FLREA, which entitles the Military, Veterans, and the Disabled to free National Park (and other federal land) access;

c.    18 U.S.C. §§ 1301, *et seq.*, which prohibits the promotion and advertisement of lotteries in interstate commerce; and

d.    Va. Code §§ 18.2-325, *et seq.*, which, among other things, prohibits participation in interstate lotteries.

300.    The Junk Fees were charged on "consumer transactions" within the meaning of Virginia Consumer Protection Act, § 59.1-198, because, among other reasons, the transactions involve the "sale . . . goods or services to be used primarily for personal, family or household purposes."

301.    Booz Allen and Defendants are "seller[s] . . . who advertise[], solicit[], or engage[] in consumer transactions" through their operations of recreation.gov, as alleged in this Complaint. *Id.*

302.    Plaintiffs and members of the National Class and the Military, Veterans, and Disabled Class have been deceived by Defendants' acts as alleged in this Complaint, and have suffered concrete financial harm arising from the deception, in the form of paying Junk Fees to Defendants.

303.    Defendants violated and continue to violate the legal of Plaintiffs and the National Class and the Military, Veterans, and Disabled Class by knowingly charging unlawful Junk Fees

and refusing to refund those sums to Plaintiffs and the National Class and the Military, Veterans, and Disabled Class.

304.    Defendants' charging of Junk Fees constitutes a willful violation of the Virginia Consumer Protection Act, which entitles Plaintiffs and the National Class and the Military, Veterans, and Disabled Class to "three times the actual damages sustained, or $1,000, whichever is greater." Va. Code § 59.1-204(A).

305.    At a minimum, since the *Kotab* decision was issued in March of 2022, there can be no question that Defendants knew the Junk Fees to be unlawful, yet willfully elected to continue to charge the illegal Junk Fees to Plaintiffs and the National Class and the Military, Veterans, and Disabled Class.

306.    Plaintiffs and the National Class and the Military, Veterans, and Disabled Class seek all available remedies and relief available under the Virginia Consumer Protection Act, including an award of compensatory and/or actual damages, trebling of compensatory and/or actual damages, an award of statutory damages, punitive damages, and attorneys' fees and costs. Va. Code § 59.1-204.

**V.   Fifth Cause of Action, Deceptive Violation of the Virginia Consumer Protection Act, Va. Code §§ 59.1-196 *et seq.,* on Behalf of the National Class and the Military, Veterans, and Disabled Class.**

307.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 276, inclusive, of this Complaint.

308.    As alleged above, Defendants deceived Plaintiffs and the National Class and the Military, Veterans, and Disabled Class into believing that the unlawful Junk Fees charged on recreation.gov were paid to the Federal Agencies, when in fact, they were paid to Defendants.

309.     On information and belief, the acts and practices at issue in this action, as alleged in this Complaint, were directed from Booz Allen's corporate headquarters, in Virginia. Accordingly, the Virginia Consumer Protection Act applies to Booz Allen and Defendants.

310.     Among other things, the Virginia Consumer Protection Act prohibits "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." *Id.* at § 59.1-200(A)(14).

311.     The Junk Fees were charged on "consumer transactions" within the meaning of Virginia Consumer Protection Act, § 59.1-198, because, among other reasons, the transactions involve the "sale . . . goods or services to be used primarily for personal, family or household purposes."

312.     Booz Allen and Defendants are "seller[s] . . . who advertise[], solicit[], or engage[] in consumer transactions" through their operations of recreation.gov, as alleged in this Complaint. *Id.*

313.     Defendants' practices, as alleged in this Complaint, violate the Virginia Consumer Protection Act because, among other reasons, they "[m]isrepresent[] goods [and] services [sold by Booz Allen] as those [of] another."   Namely, the goods and services sold by Booz Allen and Defendants on recreation.gov were misrepresented to consumers to appear as though they originated with the Federal Agencies, instead of Booz Allen.  Va. Code Ann. § 59.1-200(A)(1).

314.     Further, the charging of Junk Fees was deceptive because the Junk Fees were misrepresented to consumers.  *Id.* at § 59.1-200(A)(14) (Prohibiting "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.").

315.     Specifically, as alleged in this Complaint, Defendants' deceptive and false acts and practices, misrepresentations, and/or material omissions include, but are not limited to, the following:

a.   Operating the recreation.gov website and App to create the appearance that they are run by the Federal Agencies, and not Booz Allen, including by displaying the official insignias of the Federal Agencies and using a ".gov" domain.

b.   Predominantly displaying the official insignias of the Federal Agencies, using a ".gov" domain, and displaying other information to create the affirmative and false misrepresentation to consumers that the recreation.gov website and App charge the Junk Fees on behalf of the Federal Agencies.

c.   Predominantly displaying the official insignias of the Federal Agencies, using a ".gov" domain, and displaying other information to create the affirmative and false representation to consumers that Junk Fees paid through the recreation.gov website and App are paid to the Federal Agencies, and not Booz Allen.

d.   Intentionally omitting references to Booz Allen from the recreation.gov website and App, including by omitting references to Booz Allen on the recreation.gov homepage, the "About Us" page, the Terms of Service, the Privacy Policy, among other places.

e.   To the extent Booz Allen's involvement is disclosed to consumers, that hidden disclosure affirmatively misstates that Booz Allen operates recreation.gov as a "public service," when in fact, Booz Allen operates recreation.gov and the App for its own profit and at the expense of the public good.

f.  Sending marketing emails and making other affirmative misrepresentations to consumers about the prices of services on recreation.gov and the App that do not include the Junk Fess.

g.  Not disclosing the existence of Junk Fees until the time of checkout, if at all.

h.  Failing to disclose that the Junk Fees are paid to Booz Allen.

i.  Failing to disclose that the Junk Fees violate the FLREA.

j.  Failing to disclose that the lottery Junk Fees violate state and federal anti-lottery and anti-gambling laws.

k.  Failing to disclose that recreation.gov and the recreation.gov App are operated by a for profit federal contractor, for that contractor's profit, instead of for the benefit of the public and/or the Federal Agencies.

l.  Failing to disclose that Booz Allen has complete control over the amount of the Junk Fees charged to consumers.

m. Representing that the Junk Fees are lawful and valid fees.

n.  Restricting access to federal lands unless the unlawful Junk Fees are paid to Booz Allen.

o.  Representing to the Military, Veterans, and the Disabled that they cannot access National Parks (and other federal lands) without paying Junk Fees, in violation of the FLREA.

p.  Charging Junk Fees that are not in any way proportional to the costs of providing the recreation.gov and App services or the value of those services.

316.     Plaintiffs and the National Class and the Military, Veterans, and Disabled Class have been deceived by Defendants' acts as alleged in this Complaint, and have suffered concrete financial harm arising from Defendants' acts, in the form of paying Junk Fees to Defendants.

317.     Defendants violated and continue to violate Plaintiffs' and the National Class's and the Military, Veterans, and Disabled Class's legal rights by knowingly keeping the unlawfully charged Junk Fees and refusing to refund those sums to Plaintiffs and the Classes.

318.     Defendants' charging of Junk Fees constitutes a willful violation of the Virginia Consumer Protection Act, which entitles Plaintiffs and National Class to "three times the actual damages sustained, or $1,000, whichever is greater."  Va. Code § 59.1-204(A).

319.     At a minimum, since the *Kotab* decision was issued in March of 2022, there can be no question that Defendants knew the Junk Fees to be unlawful, yet willfully elected to continue to charge the illegal Junk Fees to Plaintiffs and the National Class and the Military, Veterans, and Disabled Class.

320.     Plaintiffs and the National Class and the Military, Veterans, and Disabled Class seek all available remedies and relief available under the Virginia Consumer Protection Act, including an award of compensatory and/or actual damages, trebling of compensatory and/or actual damages, an award of statutory damages, punitive damages, and attorneys' fees and costs. Va. Code § 59.1-204.

## VI.   Sixth Cause of Action, Unlawful Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, on Behalf of the California Class.

321.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 276, inclusive, of this Complaint.

322.     Defendants, Plaintiffs Streeter, Oliver, and Jones, and the California Class are "persons" within the meaning of the California Unfair Competition Law ("UCL").

323.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

324.   Defendants' practices of charging Junk Fees are "unlawful" within the meaning of the UCL because, among other things, those Junk Fees violate:

   a.   The FLREA, which prohibits the charging of "recreation fees," except in specific circumstances, which Defendants have not and cannot satisfy;

   b.   Section 16 U.S.C. § 6804(b)(2)-(3) of the FLREA, which entitles the Military, Veterans, and the Disabled to free National Park (and other federal land) access;

   c.   18 U.S.C. §§ 1301, *et seq.*, which prohibits the promotion and advertisement of lotteries in interstate commerce; and

   d.   California Penal Code §§ 319 *et seq.,* which bans the operations of lotteries, where the lottery involves: "(1) a prize; (2) distribution by chance; and (3) consideration." *Western Telcon, Inc.*, 13 Cal.4th at 484.

325.   Defendants have, in the course of their business and in the course of trade or commerce, charged these unlawful Junk Fees to Plaintiffs Streeter, Oliver, and Jones and the California Class.

326.   Plaintiffs Streeter, Oliver, and Jones and the California Class have suffered injury in fact—in the form of Junk Fees—and have lost money as a result of Defendants' unlawful business acts and practices, and will continue to lose money and be injured by those acts and practices if the practices are not enjoined.

327.   Plaintiffs Streeter, Oliver, and Jones and the California Class seek an order providing restitution and disgorgement of all Junk Fees paid to Booz Allen by Plaintiffs Streeter, Oliver, and Jones and the California Class and injunctive and declaratory relief as may be appropriate.

328.     Plaintiffs Streeter, Oliver, and Jones and the California Class further seek their attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5 because Plaintiffs and the California Class seek to enforce "an important right affecting the public interest" in bringing this cause of action.

## VII.  Seventh Cause of Action, Unfair Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.,* on Behalf of the California Class.

329.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 276, inclusive, of this Complaint.

330.     Defendants, Plaintiffs Streeter, Oliver, and Jones, and the California Class are "persons" within the meaning of the UCL.

331.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

332.     The acts and practices of Defendants as alleged herein also constitute "unfair" business acts and practices under the UCL because Defendants' conduct is unconscionable, immoral, deceptive, unfair, illegal, unethical, oppressive, and/or unscrupulous.  Further, the gravity of Defendants' conduct outweighs any conceivable benefit of such conduct.

333.     Defendants have, in the course of their business and in the course of trade or commerce, undertaken and engaged in unfair business acts and practices by tricking consumers into paying Junk Fees by causing consumers to believe that the Junk Fees were being paid to the Federal Agencies, and not being kept by Defendants for their own profits.

334.     Specifically, as alleged in this Complaint, Defendants' unfair acts and practices, omissions, and/or affirmative misstatements include, but are not limited to, the following:

a.   Operating the recreation.gov website and App to create the appearance that they are run by the Federal Agencies, and not Booz Allen, including by displaying the official insignias of the Federal Agencies and using a ".gov" domain.

b.  Predominantly displaying the official insignias of the Federal Agencies, using a ".gov" domain, and displaying other information to create the affirmative and false misrepresentation to consumers that the recreation.gov website and App charge the Junk Fees on behalf of the Federal Agencies.

c.  Predominantly displaying the official insignias of the Federal Agencies, using a ".gov" domain, and displaying other information to create the affirmative and false representation to consumers that Junk Fees paid through the recreation.gov website and App are paid to the Federal Agencies, and not Booz Allen.

d.  Intentionally omitting references to Booz Allen from the recreation.gov website and App, including by omitting references to Booz Allen on the recreation.gov homepage, the "About Us" page, the Terms of Service, the Privacy Policy, among other places.

e.  To the extent Booz Allen's involvement is disclosed to consumers, that hidden disclosure affirmatively misstates that Booz Allen operates recreation.gov as a "public service," when in fact, Booz Allen operates recreation.gov and the App for its own profit and at the expense of the public good.

f.  Sending marketing emails and making other affirmative misrepresentations to consumers about the prices of services on recreation.gov and the App that do not include the Junk Fess.

g.  Not disclosing the existence of Junk Fees until the time of checkout, if at all.

h.  Failing to disclose that the Junk Fees are paid to Booz Allen.

i.  Failing to disclose that the Junk Fees violate the FLREA.

j.   Failing to disclose that the lottery Junk Fees violate state and federal anti-lottery and anti-gambling laws.

k.   Failing to disclose that recreation.gov and the recreation.gov App are operated by a for profit federal contractor, for that contractor's profit, instead of for the benefit of the public and/or the Federal Agencies.

l.   Failing to disclose that Booz Allen has complete control over the amount of the Junk Fees charged to consumers.

m.   Representing that the Junk Fees are lawful and valid fees.

n.   Restricting access to federal lands unless the unlawful Junk Fees are paid to Booz Allen.

o.   Representing to the Military, Veterans, and the Disabled that they cannot access National Parks (and other federal lands) without paying Junk Fees, in violation of the FLREA.

p.   Charging Junk Fees that are not in any way proportional to the costs of providing the recreation.gov and App services or the value of those services.

335.   Plaintiffs Streeter, Oliver, and Jones and the California Class have suffered injury in fact—in the form of paying Junk Fees—and have lost money as a result of Defendants' unfair and deceptive acts and practices, and will continue to lose money and be injured by those acts and practices if the practices are not enjoined.

336.   Plaintiffs Streeter, Oliver, and Jones and the California Class seek an order providing restitution and disgorgement of all Junk Fees paid to Booz Allen by Plaintiffs Streeter, Oliver, and Jones and the California Class and injunctive and declaratory relief as may be appropriate.

337.    Plaintiffs Streeter, Oliver, and Jones and the California Class further seek their attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5 because Plaintiffs and the California Class seek to enforce "an important right affecting the public interest" in bringing this cause of action.

## VIII.  Eighth Cause of Action, Violation of California's California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, on Behalf of the California Class.

338.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 276, inclusive, of this Complaint.

339.    At all relevant times, Plaintiffs Streeter, Oliver, and Jones and the California Class were "consumers" under the terms of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*, as individuals seeking or acquiring, by purchase or lease, goods or services for personal, family, or household purposes.

340.    Defendants' actions and conduct constituted transactions for the sale or lease of goods or services to consumers under the terms of the CLRA, namely the selling of online reservations, conducting lotteries, and charging the associated Junk Fees through recreation.gov and the recreation.gov App.

341.    Defendants violated the CLRA by, among other things, making material false statements and omitting truthful information about the Junk Fees charged to Plaintiffs Streeter, Oliver, and Jones and the California Class.

342.    Specifically, as alleged in this Complaint, Defendants' unfair, unconscionable, deceptive acts, practices, omissions, and/or affirmative misstatements include, but are not limited to, the following:

a.    Operating the recreation.gov website and App to create the appearance that they are run by the Federal Agencies, and not Booz Allen, including by displaying the official insignias of the Federal Agencies and using a ".gov" domain.

b.    Predominantly displaying the official insignias of the Federal Agencies, using a ".gov" domain, and displaying other information to create the affirmative and false misrepresentation to consumers that the recreation.gov website and App charge the Junk Fees on behalf of the Federal Agencies.

c.    Predominantly displaying the official insignias of the Federal Agencies, using a ".gov" domain, and displaying other information to create the affirmative and false representation to consumers that Junk Fees paid through the recreation.gov website and App are paid to the Federal Agencies, and not Booz Allen.

d.    Intentionally omitting references to Booz Allen from the recreation.gov website and App, including by omitting references to Booz Allen on the recreation.gov homepage, the "About Us" page, the Terms of Service, the Privacy Policy, among other places.

e.    To the extent Booz Allen's involvement is disclosed to consumers, that hidden disclosure affirmatively misstates that Booz Allen operates recreation.gov as a "public service," when in fact, Booz Allen operates recreation.gov and the App for its own profit and at the expense of the public good.

f.  Sending marketing emails and making other affirmative misrepresentations to consumers about the prices of services on recreation.gov and the App that do not include the Junk Fess.

g.  Not disclosing the existence of Junk Fees until the time of checkout, if at all.

h.  Failing to disclose that the Junk Fees are paid to Booz Allen.

i.  Failing to disclose that the Junk Fees violate the FLREA.

j.  Failing to disclose that the lottery Junk Fees violate state and federal anti-lottery and anti-gambling laws.

k.  Failing to disclose that recreation.gov and the recreation.gov App are operated by a for profit federal contractor, for that contractor's profit, instead of for the benefit of the public and/or the Federal Agencies.

l.  Failing to disclose that Booz Allen has complete control over the amount of the Junk Fees charged to consumers.

m.  Representing that the Junk Fees are lawful and valid fees.

n.  Restricting access to federal lands unless the unlawful Junk Fees are paid to Booz Allen.

o.  Representing to the Military, Veterans, and the Disabled that they cannot access National Parks (and other federal lands) without paying Junk Fees, in violation of the FLREA.

p.  Charging Junk Fees that are not in any way proportional to the costs of providing the recreation.gov and App services or the value of those services.

343.    Defendants' misrepresentations were material, and Defendants' violations of the CLRA were a substantial factor in causing Plaintiffs Streeter, Oliver, and Jones and the California Class to incur the Junk Fees.

344.    As a direct and proximate consequence of these actions, Plaintiffs Streeter, Oliver, and Jones and the California Class suffered injury.

345.    Defendants' conduct was malicious, fraudulent, and wanton in that it intentionally and knowingly provided misleading information to Plaintiffs and the California Class for Defendants' own benefits to the detriment of Plaintiffs and the California Class.

346.    Plaintiffs Streeter, Oliver, and Jones and the California Class seek injunctive and declaratory relief prohibiting the Junk Fee practices described in this Complaint.[14]

347.    Plaintiffs Streeter, Oliver, and Jones and the California Class further seek their attorneys' fees and costs, including pursuant to California Code of Civil Procedure Section 1021.5 because Plaintiffs and the California Class seek to enforce "an important right affecting the public interest" in bringing this cause of action.

## IX.    Ninth Cause of Action, Violation of California's False Advertising Law, Cal. Civ. Code §§ 17500 *et seq.,* on Behalf of the California Class.

348.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 276, inclusive, of this Complaint.

349.    In violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.,* Defendants' advertisements, policies, acts, and practices described in this Complaint were designed to cause Plaintiffs Streeter, Oliver, and Jones and the California Class into paying

---

[14] Plaintiffs and the California Class expressly reserve their right to amend this cause of action to claim damages, including exemplary and punitive damages, if Defendants fail to remedy their practices within 30 days of service of the CLRA notice.  *See* Cal. Civ. Code, § 1782(d) (expressly permitting amendment to claim damages at least 30 days after service).

Junk Fees to Defendants, and did in fact result in Plaintiffs Streeter, Oliver, and Jones and the California Class paying unlawful Junk Fees to Defendants.

350.   Defendants knew or reasonably should have known that representations on the recreation.gov website and App are false and misleading.

351.   Specifically, as alleged in this Complaint, Defendants' unfair, unconscionable, deceptive acts, practices, omissions, and/or affirmative misstatements include, but are not limited to, the following:

a.   Operating the recreation.gov website and App to create the appearance that they are run by the Federal Agencies, and not Booz Allen, including by displaying the official insignias of the Federal Agencies and using a ".gov" domain.

b.   Predominantly displaying the official insignias of the Federal Agencies, using a ".gov" domain, and displaying other information to create the affirmative and false misrepresentation to consumers that the recreation.gov website and App charge the Junk Fees on behalf of the Federal Agencies.

c.   Predominantly displaying the official insignias of the Federal Agencies, using a ".gov" domain, and displaying other information to create the affirmative and false representation to consumers that Junk Fees paid through the recreation.gov website and App are paid to the Federal Agencies, and not Booz Allen.

d.   Intentionally omitting references to Booz Allen from the recreation.gov website and App, including by omitting references to Booz Allen on the recreation.gov homepage, the "About Us" page, the Terms of Service, the Privacy Policy, among other places.

e. To the extent Booz Allen's involvement is disclosed to consumers, that hidden disclosure affirmatively misstates that Booz Allen operates recreation.gov as a "public service," when in fact, Booz Allen operates recreation.gov and the App for its own profit and at the expense of the public good.

f. Sending marketing emails and making other affirmative misrepresentations to consumers about the prices of services on recreation.gov and the App that do not include the Junk Fess.

g. Not disclosing the existence of Junk Fees until the time of checkout, if at all.

h. Failing to disclose that the Junk Fees are paid to Booz Allen.

i. Failing to disclose that the Junk Fees violate the FLREA.

j. Failing to disclose that the lottery Junk Fees violate state and federal anti-lottery and anti-gambling laws.

k. Failing to disclose that recreation.gov and the recreation.gov App are operated by a for profit federal contractor, for that contractor's profit, instead of for the benefit of the public and/or the Federal Agencies.

l. Failing to disclose that Booz Allen has complete control over the amount of the Junk Fees charged to consumers.

m. Representing that the Junk Fees are lawful and valid fees.

n. Restricting access to federal lands unless the unlawful Junk Fees are paid to Booz Allen.

o. Representing to the Military, Veterans, and the Disabled that they cannot access National Parks (and other federal lands) without paying Junk Fees, in violation of the FLREA.

p.  Charging Junk Fees that are not in any way proportional to the costs of providing the recreation.gov and App services or the value of those services.

352.    As a result, Plaintiffs Streeter, Oliver, and Jones, the California Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

353.    Plaintiffs Streeter, Oliver, and Jones and the California Class further seek their attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5 because Plaintiffs and the California Class seek to enforce "an important right affecting the public interest" in bringing this cause of action.

## X.   Tenth Cause of Action, Unlawful Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.,* on Behalf of the Florida Class.

354.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 276, inclusive, of this Complaint.

355.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Fla. Stat. §§ 501.201 *et seq.,* "prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." *Id.* at § 501.204.

356.    An unfair practice that violates "any law, statute, rule, regulation, or ordinance" constitutes a per se violation of FDUTPA.  *See id.* at § 501.203(3)(c).

357.    Defendants' practices of charging Junk Fees violate FDUTPA because, among other things, those Junk Fees violate:

a.  The FLREA, which prohibits the charging of "recreation fees," except in specific circumstances, which Defendants have not and cannot satisfy;

b. Section 16 U.S.C. § 6804(b)(2)-(3) of the FLREA, which entitles the Military, Veterans, and the Disabled to free National Park (and other federal land) access;

c. 18 U.S.C. §§ 1301, *et seq.*, which prohibits the promotion and advertisement of lotteries in interstate commerce; and

d. Fla. Stat. § 849.09, which makes it unlawful "[s]et up, promote, or conduct any lottery for money or for anything of value."

358.     Plaintiff Loginova and the Florida Class suffered actual damages and lost money or property as a direct and proximate result of Defendants' violations of FDUTPA, and will continue to suffer a loss money or property in the future of Defendants' practices are not enjoined.

359.     Plaintiff Loginova and the Florida Class are "consumers" and "persons" within the meaning of FDUTPA.

360.     Defendants advertised, offered, or sold goods or services in Florida and engaged in commerce affecting Florida residents, including Plaintiff Loginova and the Florida Class.

361.     Plaintiff Loginova and the Florida Class seek all monetary and equitable relief allowed by law, including actual or nominal damages under Fla. Stat. § 501.211, declaratory and injunctive relief, attorneys' fees and costs pursuant to Fla. Stat. § 501.2105(1), and any other relief that the Court deems to be just and proper under FDUTPA.

## XI.   Eleventh Cause of Action, Unfair and Deceptive Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*, on Behalf of the Florida Class.

362.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 276, inclusive, of this Complaint.

363.     FDUPTA "prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Fla. Stat. § 501.204.

364.   Defendants engaged in unconscionable acts or practices and in unfair or deceptive acts or practices in the conduct of its business and operation of recreation.gov and the App.

365.   Specifically, as alleged in this Complaint, Defendants' unfair, unconscionable, deceptive acts and practices, omissions, and/or affirmative misstatements include, but are not limited to, the following:

    a.   Operating the recreation.gov website and App to create the appearance that they are run by the Federal Agencies, and not Booz Allen, including by displaying the official insignias of the Federal Agencies and using a ".gov" domain.

    b.   Predominantly displaying the official insignias of the Federal Agencies, using a ".gov" domain, and displaying other information to create the affirmative and false misrepresentation to consumers that the recreation.gov website and App charge the Junk Fees on behalf of the Federal Agencies.

    c.   Predominantly displaying the official insignias of the Federal Agencies, using a ".gov" domain, and displaying other information to create the affirmative and false representation to consumers that Junk Fees paid through the recreation.gov website and App are paid to the Federal Agencies, and not Booz Allen.

    d.   Intentionally omitting references to Booz Allen from the recreation.gov website and App, including by omitting references to Booz Allen on the recreation.gov homepage, the "About Us" page, the Terms of Service, the Privacy Policy, among other places.

    e.   To the extent Booz Allen's involvement is disclosed to consumers, that hidden disclosure affirmatively misstates that Booz Allen operates recreation.gov as a

"public service," when in fact, Booz Allen operates recreation.gov and the App

for its own profit and at the expense of the public good.

f.    Sending marketing emails and making other affirmative misrepresentations to

consumers about the prices of services on recreation.gov and the App that do

not include the Junk Fess.

g.    Not disclosing the existence of Junk Fees until the time of checkout, if at all.

h.    Failing to disclose that the Junk Fees are paid to Booz Allen.

i.    Failing to disclose that the Junk Fees violate the FLREA.

j.    Failing to disclose that the lottery Junk Fees violate state and federal anti-lottery

and anti-gambling laws.

k.    Failing to disclose that recreation.gov and the recreation.gov App are operated

by a for profit federal contractor, for that contractor's profit, instead of for the

benefit of the public and/or the Federal Agencies.

l.    Failing to disclose that Booz Allen has complete control over the amount of the

Junk Fees charged to consumers.

m.    Representing that the Junk Fees are lawful and valid fees.

n.    Restricting access to federal lands unless the unlawful Junk Fees are paid to

Booz Allen.

o.    Representing to the Military, Veterans, and the Disabled that they cannot access

National Parks (and other federal lands) without paying Junk Fees, in violation

of the FLREA.

p.    Charging Junk Fees that are not in any way proportional to the costs of

providing the recreation.gov and App services or the value of those services.

366.    Defendants' statements, misrepresentations, and omissions were material because they were reasonably likely to deceive reasonable consumers, and in fact did cause such deception.

367.    Plaintiff Loginova and the Florida Class acted reasonably in relying on the statements, misrepresentations, and omissions of Defendants and could not reasonably have uncovered the falsity of those statements, misrepresentations, and omissions.

368.    Plaintiff Loginova and the Florida Class suffered actual damages and lost money or property as a direct and proximate result of Defendants' violations of FDUTPA, and will continue to suffer losses in the future if Defendants' practices are not enjoined.

369.    Plaintiff Loginova and the Florida Class are "consumers" and "persons" within the meaning of FDUPTA.

370.    Defendants advertised, offered, or sold goods or services in Florida and engaged in commerce affecting Florida residents, including Plaintiff Loginova and the Florida Class.

371.    Plaintiff Loginova and the Florida Class seek all monetary and equitable relief allowed by law, including actual or nominal damages under Fla. Stat. § 501.211, declaratory and injunctive relief, attorneys' fees and costs pursuant to Fla. Stat. § 501.2105(1), and any other relief that the Court deems to be just and proper under FDUTPA.

## XII.    Twelfth Cause of Action, Unlawful Violation of New York General Business Law § 349, on Behalf of the New York Class.

372.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 276, inclusive, of this Complaint.

373.    Pursuant to New York General Business Law, Section 349 ("GBL 349"), "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

374.     GBL 349 further provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."

375.     Additionally, GBL 349 goes on to state that "[t]he court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff."

376.     Plaintiffs contend that when the charging of a fee is unlawful, but is represented to consumers as being valid and proper, the charging of that fee is per se "deceptive" within the meaning of GBL 349.  *See* 349(g) ("[t]his section shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state").

377.     Defendants' practices of charging Junk Fees violate GBL 349 because, among other things, those Junk Fees violate:

a.  The FLREA, which prohibits the charging of "recreation fees," except in specific circumstances, which Defendants have not and cannot satisfy;

b.  Section 16 U.S.C. § 6804(b)(2)-(3) of the FLREA, which entitles the Military, Veterans, and the Disabled to free National Park (and other federal land) access;

c.  18 U.S.C. §§ 1301, *et seq.*, which prohibits the promotion and advertisement of lotteries in interstate commerce; and

d.  N.Y. Penal Law § 225.00, *et seq.*, which, among other things, prohibits the promotion of gambling in New York.

378.    Plaintiff Berger and the New York Class are persons within the meaning of GBL 349(h).

379.    Defendants are a person, firm, corporation, or association within the meaning of GBL 349(b).

380.    These deceptive acts and practices were consumer-oriented, and reasonable consumers would be—and in fact were—misled by these deceptive acts and practices.

381.    These deceptive acts and practices as to Mr. Berger and the New York Class occurred in New York.

382.    The above described deceptive acts and practices by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

383.    Further, Defendants' conduct was substantially injurious to Plaintiff Berger and members of the New York Class in that they were deceptively forced to pay Junk Fees.

384.    Defendants' actions in engaging in the above-named deceptive acts and practices were negligent, knowing, willful, and/or wanton and reckless with respect to the rights of members of the New York Class.

385.    As a result of Defendants' violations of the GBL 349, Mr. Berger and members of the New York Class have paid and will continue to pay deceptive Junk Fees. Accordingly, they have suffered and will continue to suffer actual damages.

386.    Plaintiff Berger and the New York Class were injured as a direct and proximate result of Defendants' deceptive acts and practices, causing them to pay the unlawful Junk Fees.

387.     Accordingly, Plaintiff Berger and New York Class are entitled to relief under GBL 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

## XIII.   Thirteenth Cause of Action, Deceptive Violation of New York General Business Law § 349, on Behalf of the New York Class.

388.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 276, inclusive, of this Complaint.

389.     Pursuant to GBL 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

390.     GBL 349 further provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."

391.     Additionally, "[t]he court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff."  *Id.*

392.     Plaintiff Berger and the New York Class are persons within the meaning GBL 349(h).

393.     Defendants are a person, firm, corporation, or association within the meaning of GBL 349(b).

394.     Defendants engaged in deceptive acts and practices in the conduct of business, trade, and commerce by, among other things, making false statements and omitting truthful

information about Booz Allen's operation of recreation.gov, including by charging deceptive and unlawful Junk Fees. *See* N.Y. Gen. Bus. § 349(a), (h).

395.   Specifically, as alleged in this Complaint, Defendants' deceptive acts and practices include, but are not limited to, the following:

a.   Operating the recreation.gov website and App to create the appearance that they are run by the Federal Agencies, and not Booz Allen, including by displaying the official insignias of the Federal Agencies and using a ".gov" domain.

b.   Predominantly displaying the official insignias of the Federal Agencies, using a ".gov" domain, and displaying other information to create the affirmative and false misrepresentation to consumers that the recreation.gov website and App charge the Junk Fees on behalf of the Federal Agencies.

c.   Predominantly displaying the official insignias of the Federal Agencies, using a ".gov" domain, and displaying other information to create the affirmative and false representation to consumers that Junk Fees paid through the recreation.gov website and App are paid to the Federal Agencies, and not Booz Allen.

d.   Intentionally omitting references to Booz Allen from the recreation.gov website and App, including by omitting references to Booz Allen on the recreation.gov homepage, the "About Us" page, the Terms of Service, the Privacy Policy, among other places.

e.   To the extent Booz Allen's involvement is disclosed to consumers, that hidden disclosure affirmatively misstates that Booz Allen operates recreation.gov as a

"public service," when in fact, Booz Allen operates recreation.gov and the App for its own profit and at the expense of the public good.

f.   Sending marketing emails and making other affirmative misrepresentations to consumers about the prices of services on recreation.gov and the App that do not include the Junk Fess.

g.   Not disclosing the existence of Junk Fees until the time of checkout, if at all.

h.   Failing to disclose that the Junk Fees are paid to Booz Allen.

i.   Failing to disclose that the Junk Fees violate the FLREA.

j.   Failing to disclose that the lottery Junk Fees violate state and federal anti-lottery and anti-gambling laws.

k.   Failing to disclose that recreation.gov and the recreation.gov App are operated by a for profit federal contractor, for that contractor's profit, instead of for the benefit of the public and/or the Federal Agencies.

l.   Failing to disclose that Booz Allen has complete control over the amount of the Junk Fees charged to consumers.

m.   Representing that the Junk Fees are lawful and valid fees.

n.   Restricting access to federal lands unless the unlawful Junk Fees are paid to Booz Allen.

o.   Representing to the Military, Veterans, and the Disabled that they cannot access National Parks (and other federal lands) without paying Junk Fees, in violation of the FLREA.

p.   Charging Junk Fees that are not in any way proportional to the costs of providing the recreation.gov and App services or the value of those services.

396.    These deceptive acts and practices were consumer-oriented, and reasonable consumers would be—and in fact were—misled by these deceptive acts and practices.

397.    Plaintiff Berger and the New York Class were injured as a direct and proximate result of Defendants' deceptive acts and practices, causing them to pay the unlawful Junk Fees.

398.    These deceptive acts and practices as to Mr. Berger and the New York Class occurred in New York.

399.    The above-described deceptive acts and practices by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

400.    Further, Defendants' conduct was substantially injurious to Plaintiff Berger and members of the New York Class in that they were deceptively forced to pay Junk Fees.

401.    Defendants' actions in engaging in the above-named deceptive acts and practices were negligent, knowing, willful, and/or wanton and reckless with respect to the rights of members of the New York Class.

402.    As a result of Defendants' violations of the GBL 349, Mr. Berger and members of the New York Class have paid and will continue to pay deceptive Junk Fees. Accordingly, they have suffered and will continue to suffer actual damages.

403.    Accordingly, Plaintiff Berger and New York Class are entitled to relief under GBL 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

**XIV.   Fourteenth Cause of Action, Violation of New York General Business Law § 350 *et seq.,* on Behalf of the New York Class.**

404.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 276, inclusive, of this Complaint.

405.    N.Y. Gen. Bus. Law § 350, *et seq.,* ("GBL 350") provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

406.    GBL 350(e) further provides that "[a]ny person who has been injured by reason of any violation of [GBL 350] may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or five hundred dollars, whichever is greater, or both such actions."

407.    Additionally, "the court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages, up to ten thousand dollars, if the court finds that the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff."  *Id.*

408.    Plaintiff Berger and the New York Class are persons within the meaning of GBL 350(e).

409.    Defendants engaged false advertising in the conduct of business, trade and commerce, and in the furnishing of services by, among other things, making false statements and omitting truthful information about Booz Allen's operation of recreation.gov, including by charging deceptive and unlawful Junk Fees and sending deceptive marketing emails to consumers.

410.    Specifically, as alleged in this Complaint, Defendants engaged in false advertising in the conduct of business, trade and commerce, and in the furnishing of services by, among other things:

a.    Operating the recreation.gov website and App to create the appearance that they are run by the Federal Agencies, and not Booz Allen, including by displaying the official insignias of the Federal Agencies and using a ".gov" domain.

b.    Predominantly displaying the official insignias of the Federal Agencies, using a ".gov" domain, and displaying other information to create the affirmative and false misrepresentation to consumers that the recreation.gov website and App charge the Junk Fees on behalf of the Federal Agencies.

c.    Predominantly displaying the official insignias of the Federal Agencies, using a ".gov" domain, and displaying other information to create the affirmative and false representation to consumers that Junk Fees paid through the recreation.gov website and App are paid to the Federal Agencies, and not Booz Allen.

d.    Intentionally omitting references to Booz Allen from the recreation.gov website and App, including by omitting references to Booz Allen on the recreation.gov homepage, the "About Us" page, the Terms of Service, the Privacy Policy, among other places.

e.    To the extent Booz Allen's involvement is disclosed to consumers, that hidden disclosure affirmatively misstates that Booz Allen operates recreation.gov as a "public service," when in fact, Booz Allen operates recreation.gov and the App for its own profit and at the expense of the public good.

f.  Sending marketing emails and making other affirmative misrepresentations to consumers about the prices of services on recreation.gov and the App that do not include the Junk Fess.

g.  Not disclosing the existence of Junk Fees until the time of checkout, if at all.

h.  Failing to disclose that the Junk Fees are paid to Booz Allen.

i.  Failing to disclose that the Junk Fees violate the FLREA.

j.  Failing to disclose that the lottery Junk Fees violate state and federal anti-lottery and anti-gambling laws.

k.  Failing to disclose that recreation.gov and the recreation.gov App are operated by a for profit federal contractor, for that contractor's profit, instead of for the benefit of the public and/or the Federal Agencies.

l.  Failing to disclose that Booz Allen has complete control over the amount of the Junk Fees charged to consumers.

m.  Representing that the Junk Fees are lawful and valid fees.

n.  Restricting access to federal lands unless the unlawful Junk Fees are paid to Booz Allen.

o.  Representing to the Military, Veterans, and the Disabled that they cannot access National Parks (and other federal lands) without paying Junk Fees, in violation of the FLREA.

p.  Charging Junk Fees that are not in any way proportional to the costs of providing the recreation.gov and App services or the value of those services.

411.  These false advertising statements were consumer-oriented, and reasonable consumers would be—and in fact were—misled by these deceptive acts and practices.

412.    Plaintiff Berger and the New York Class were injured as a direct and proximate result of Defendants' false advertising, causing them to pay the unlawful Junk Fees.

413.    The false advertising as to Mr. Berger and the New York Class occurred in New York.

414.    The false advertising by Defendants is immoral, unethical, oppressive, and unscrupulous. These acts cause substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighs any benefits to consumers or to competition.

415.    Further, Defendants' false advertising was substantially injurious to Plaintiff Berger and members of the New York Class in that they were deceptively forced to pay Junk Fees.

416.    Defendants' actions in engaging in the above-named false advertising acts were negligent, knowing, willful, and/or wanton and reckless with respect to the rights of members of the New York Class.

417.    As a result of Defendants' violations of the GBL 350, Mr. Berger and members of the New York Class have paid and will continue to pay deceptive Junk Fees. Accordingly, they have suffered and will continue to suffer actual damages.

418.    Accordingly, Plaintiff Berger and New York Class are entitled to relief under GBL 350, including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

**XV.   Fifteenth Cause of Action, Unlawful Violation of the Utah Consumer Sales Practice Act, Utah Code §§ 13-11-1 *et seq.*, on Behalf of the Utah Class.**

419.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 276, inclusive, of this Complaint.

420.     The Utah Consumer Sales Practice Act, Utah Code §§ 13-11-1, *et seq.* prohibits "deceptive act[s] or practice[s] . . .  in connection with a consumer transaction." *Id.* at 113-11-4(1).

421.     Plaintiff Lauritzen, and the Utah Class are "persons" who participated in a "consumer transaction" within the meaning on Utah Consumer Sales Practice Act.

422.     Defendants are "suppliers" who participated in a "consumer transaction" within the meaning of the Utah Consumer Sales Practice Act.

423.     Plaintiffs contend that under the Utah Consumer Sales Practice Act, a practice is per se "deceptive" if it is unlawful but nonetheless held out by Defendants as being valid.

424.     Accordingly, Defendants' practices of charging Junk Fees violate the Utah Consumer Sales Practice Act because, among other things, those Junk Fees violate:

  a.   The FLREA, which prohibits the charging of "recreation fees," except in specific circumstances, which Defendants have not and cannot satisfy;

  b.   Section 16 U.S.C. § 6804(b)(2)-(3) of the FLREA, which entitles the Military, Veterans, and the Disabled to free National Park (and other federal land) access;

  c.   18 U.S.C. §§ 1301, *et seq.*, which prohibits the promotion and advertisement of lotteries in interstate commerce; and

  d.   Utah Code § 76-10-1101, *et seq.*, which, among other things, prohibits the operation of lotteries, including internet lotteries, in Utah.

425.     Plaintiff Lauritzen and the Utah Class were injured as a direct and proximate result of Defendants' deceptive acts and practices, which caused them to pay the unlawful Junk Fees.

426.     Defendants' violations present a continuing risk to Plaintiff Lauritzen and the Utah Class, as well as to the general public.

427.   Pursuant to the Utah Consumer Sales Practice Act, Plaintiff Lauritzen and the Utah Class seek an order enjoining Defendants' unfair or deceptive acts or practices, awarding damages, and awarding them their attorneys' fees and cost, as well as any other relief the Court deems just and proper under the Utah Consumer Sales Practice Act.

## XVI. Sixteenth Cause of Action, Deceptive Violation of the Utah Consumer Sales Practice Act, Utah Code §§ 13-11-1 *et seq.*, on Behalf of the Utah Class.

428.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 276, inclusive, of this Complaint.

429.   The Utah Consumer Sales Practice Act, Utah Code §§ 13-11-1A, *et seq.* prohibits "deceptive act[s] or practice[s] . . .  in connection with a consumer transaction."

430.   Plaintiff Lauritzen, and the Utah Class are "persons" who participated in a "consumer transaction" within the meaning on Utah Consumer Sales Practice Act.

431.   Defendants are "suppliers" who participated in a "consumer transaction" within the meaning of the Utah Consumer Sales Practice Act.

432.   As alleged in this Complaint, Defendants engaged in deceptive acts and practices in the course of making consumer transactions by, among other things, making false statements and omitting truthful information about Booz Allen's operation of recreation.gov.

433.   Specifically, as alleged in this Complaint, Defendants' deceptive acts and practices include, but are not limited to, the following:

a.   Operating the recreation.gov website and App to create the appearance that they are run by the Federal Agencies, and not Booz Allen, including by displaying the official insignias of the Federal Agencies and using a ".gov" domain.

b.   Predominantly displaying the official insignias of the Federal Agencies, using a ".gov" domain, and displaying other information to create the affirmative and

false misrepresentation to consumers that the recreation.gov website and App charge the Junk Fees on behalf of the Federal Agencies.

c.   Predominantly displaying the official insignias of the Federal Agencies, using a ".gov" domain, and displaying other information to create the affirmative and false representation to consumers that Junk Fees paid through the recreation.gov website and App are paid to the Federal Agencies, and not Booz Allen.

d.   Intentionally omitting references to Booz Allen from the recreation.gov website and App, including by omitting references to Booz Allen on the recreation.gov homepage, the "About Us" page, the Terms of Service, the Privacy Policy, among other places.

e.   To the extent Booz Allen's involvement is disclosed to consumers, that hidden disclosure affirmatively misstates that Booz Allen operates recreation.gov as a "public service," when in fact, Booz Allen operates recreation.gov and the App for its own profit and at the expense of the public good.

f.   Sending marketing emails and making other affirmative misrepresentations to consumers about the prices of services on recreation.gov and the App that do not include the Junk Fess.

g.   Not disclosing the existence of Junk Fees until the time of checkout, if at all.

h.   Failing to disclose that the Junk Fees are paid to Booz Allen.

i.   Failing to disclose that the Junk Fees violate the FLREA.

j.   Failing to disclose that the lottery Junk Fees violate state and federal anti-lottery and anti-gambling laws.

k.  Failing to disclose that recreation.gov and the recreation.gov App are operated by a for profit federal contractor, for that contractor's profit, instead of for the benefit of the public and/or the Federal Agencies.

l.  Failing to disclose that Booz Allen has complete control over the amount of the Junk Fees charged to consumers.

m.  Representing that the Junk Fees are lawful and valid fees.

n.  Restricting access to federal lands unless the unlawful Junk Fees are paid to Booz Allen.

o.  Representing to the Military, Veterans, and the Disabled that they cannot access National Parks (and other federal lands) without paying Junk Fees, in violation of the FLREA.

p.  Charging Junk Fees that are not in any way proportional to the costs of providing the recreation.gov and App services or the value of those services.

434.  Plaintiff Lauritzen and the Utah Class were injured as a direct and proximate result of Defendants' deceptive acts and practices, which caused them to pay the unlawful Junk Fees.

435.  Defendants' violations present a continuing risk to Plaintiff Lauritzen and the Utah Class, as well as to the general public.

436.  Pursuant to the Utah Consumer Sales Practice Act, Plaintiff Lauritzen and the Utah Class seek an order enjoining Defendants' unfair or deceptive acts or practices, awarding damages, and awarding them their attorneys' fees and cost, as well as any other relief the Court deems just and proper under the Utah Consumer Sales Practice Act.

XVII.   **Seventeenth Cause of Action, Unlawful Violation of Washington's Unfair Acts and Practices in the Conduct of Trade or Commerce Act. Wash. Rev. Code §§ 19.86.020 *et seq.*,, on Behalf of the Washington Class.**

437.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 276, inclusive, of this Complaint.

438.   Washington's Consumer Protection Act ("CPA") prohibits any person from using "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW § 19.86.020.

439.   Under the CPA, an unfair or deceptive act includes an act which is unlawful and against public policy.  RCW § 19.86.093.

440.   Plaintiff Wilson, the Washington Class, and Defendants are "persons" within the meaning of the CPA.

441.   Defendants' practices of charging Junk Fees are "unlawful" and against public policy within the meaning of the CPA because, among other things, those Junk Fees violate:

   a.   The FLREA, which prohibits the charging of "recreation fees," except in specific circumstances, which Defendants have not and cannot satisfy;

   b.   Section 16 U.S.C. § 6804(b)(2)-(3) of the FLREA, which entitles the Military, Veterans, and the Disabled to free National Park (and other federal land) access;

   c.   18 U.S.C. §§ 1301, *et seq.*, which prohibits the promotion and advertisement of lotteries in interstate commerce; and

   d.   Wash. Rev. Code §§ 9.46.010, *et seq.*, which "restrain[s] all persons from seeking profit from professional gambling activities in this state."

442.   Plaintiff Wilson and the Washington Class were injured as a direct and proximate result of Defendants' unlawful deceptive acts and practices, which caused them to pay the unlawful Junk Fees.

443.    Defendants' violations present a continuing risk to Plaintiff Wilson and the Washington Class, as well as to the general public.

444.    Plaintiffs Wilson and the Washington Class seek to recover actual damages and treble damages, together with the costs of suit, including reasonable attorneys' fees, equitable and injunctive relief, and such other relief that is available under the CPA.

## XVIII.  Eighteenth Cause of Action, Unfair and Deceptive Violation of Washington's Unfair Acts and Practices in the Conduct of Trade or Commerce Act. Wash. Rev. Code §§ *et seq.,* 19.86.020, on Behalf of the Washington Class.

445.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 276, inclusive, of this Complaint.

446.    The CPA prohibits any person from using "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW § 19.86.020.

447.    Plaintiff Wilson, the Washington Class, and Defendants are "persons" within the meaning of the CPA.

448.    As alleged in this Complaint, Defendants engaged in unfair and deceptive acts and practices in the course of making a consumer transaction by, among other things, making false statements and omitting truthful information about Booz Allen's operation of recreation.gov.

449.    Specifically, as alleged in this Complaint, Defendants' unfair and deceptive acts and practices include, but are not limited to, the following:

a.   Operating the recreation.gov website and App to create the appearance that they are run by the Federal Agencies, and not Booz Allen, including by displaying the official insignias of the Federal Agencies and using a ".gov" domain.

b.   Predominantly displaying the official insignias of the Federal Agencies, using a ".gov" domain, and displaying other information to create the affirmative and

false misrepresentation to consumers that the recreation.gov website and App charge the Junk Fees on behalf of the Federal Agencies.

c. Predominantly displaying the official insignias of the Federal Agencies, using a ".gov" domain, and displaying other information to create the affirmative and false representation to consumers that Junk Fees paid through the recreation.gov website and App are paid to the Federal Agencies, and not Booz Allen.

d. Intentionally omitting references to Booz Allen from the recreation.gov website and App, including by omitting references to Booz Allen on the recreation.gov homepage, the "About Us" page, the Terms of Service, the Privacy Policy, among other places.

e. To the extent Booz Allen's involvement is disclosed to consumers, that hidden disclosure affirmatively misstates that Booz Allen operates recreation.gov as a "public service," when in fact, Booz Allen operates recreation.gov and the App for its own profit and at the expense of the public good.

f. Sending marketing emails and making other affirmative misrepresentations to consumers about the prices of services on recreation.gov and the App that do not include the Junk Fess.

g. Not disclosing the existence of Junk Fees until the time of checkout, if at all.

h. Failing to disclose that the Junk Fees are paid to Booz Allen.

i. Failing to disclose that the Junk Fees violate the FLREA.

j. Failing to disclose that the lottery Junk Fees violate state and federal anti-lottery and anti-gambling laws.

k. Failing to disclose that recreation.gov and the recreation.gov App are operated by a for profit federal contractor, for that contractor's profit, instead of for the benefit of the public and/or the Federal Agencies.

l. Failing to disclose that Booz Allen has complete control over the amount of the Junk Fees charged to consumers.

m. Representing that the Junk Fees are lawful and valid fees.

n. Restricting access to federal lands unless the unlawful Junk Fees are paid to Booz Allen.

o. Representing to the Military, Veterans, and the Disabled that they cannot access National Parks (and other federal lands) without paying Junk Fees, in violation of the FLREA.

p. Charging Junk Fees that are not in any way proportional to the costs of providing the recreation.gov and App services or the value of those services.

450. Plaintiff Wilson and the Washington Class were injured as a direct and proximate result of Defendants' unfair and deceptive acts and practices, which caused them to pay the unlawful Junk Fees.

451. Defendants' violations present a continuing risk to Plaintiff Wilson and the Washington Class, as well as to the general public.

452. Plaintiff Wilson and the Washington Class seek to recover actual damages and treble damages, together with the costs of suit, including reasonable attorneys' fees, equitable and injunctive relief, and such other relief that is available under the CPA.

## **PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of the members of the Classes, respectfully request the Court enter an Order:

a. Certifying the proposed Classes;

b. Declaring Defendants' practices of charging Junk Fees to be unlawful;

c. Awarding Plaintiffs and the Classes actual damages;

d. Awarding Plaintiffs and the Classes compensatory damages;

e. Awarding Plaintiffs and the Classes statutory damages, where permitted by applicable law;

f. Awarding Plaintiffs and the Classes treble damages, where permitted by applicable law;

g. Awarding Plaintiffs and the Classes exemplary and/or punitive damages, where permitted by applicable law;

h. Awarding Plaintiffs and the Classes restitution of the amounts unlawfully taken from them by Defendants;

i. To the extent any contract was formed between Plaintiffs, the Classes, and Defendants, rescinding those contracts;

j. Disgorging Defendants of the amounts unlawfully taken from Plaintiffs and the Classes;

k. Awarding Plaintiffs and the Classes attorneys' fees and costs;

l. Awarding Plaintiffs and the Classes pre- and post-judgment interest, as applicable;

m. Enjoining Defendants from continuing to charge Junk Fees;

n.      Ordering Defendants to provide truthful, accurate, and predominantly displayed

disclosures to consumers to reflect that Booz Allen operates recreation.gov; and

o.      All further relief as the Court deems just and proper.


Date: January 11, 2023                    /s/ Glenn Chappell

Glenn Chappell (State Bar No. 92153)
gchappell@tzlegal.com
Andrea Gold *(pro hac vice to be filed)*
agold@tzlegal.com
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Wesley M. Griffith *(pro hac vice to be filed)*
wgriffith@tzlegal.com
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950


*Counsel for Plaintiffs and the Putative Classes*

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs, on behalf of themselves and the putative classes, hereby respectfully demand a trial by jury on all claims.

Date: January 11, 2023

*/s/ Glenn Chappell*

Glenn Chappell (State Bar No. 92153)
*gchappell@tzlegal.com*
Andrea Gold *(pro hac vice to be filed)*
*agold@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Wesley M. Griffith *(pro hac vice to be filed)*
*wgriffith@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950

*Counsel for Plaintiffs and the Putative Classes*