**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

ROBYN WILSON, *et al.*,

                    *Plaintiffs*,

v.                                              Civil Action No. 1:23-cv-00043 (PTG) (IDD)

BOOZ ALLEN HAMILTON INC., *et al*.,

                    *Defendants.*


**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT BOOZ ALLEN HAMILTON INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

STATEMENT OF FACTS ............................................................................................... 3

    A.    Recreation One Stop Program ................................................................... 3

    B.    USDA Contract with Booz Allen for Operation of Recreation.gov ....................... 4

    C.    Plaintiffs' Complaint ................................................................................ 9

LEGAL STANDARD ..................................................................................................... 10

ARGUMENT ................................................................................................................... 11

I.     The Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction Because Booz Allen is Entitled to Derivative Sovereign Immunity ................................. 11

    A.    Congress Did Not Waive the Government's Sovereign Immunity ..................... 12

    B.    The Government Authorized Booz Allen to Operate Recreation.gov ................. 13

    C.    The Government Validly Conferred the Authorization to Booz Allen ................. 15

II.    The Complaint Should Be Dismissed for Failure to Join USDA and the Federal Agencies as Necessary and Indispensable Parties ............................................................ 17

    A.    Various Federal Agencies Are Necessary Parties ................................................ 17

    B.    The Various Federal Agencies Cannot Feasibly Be Joined ................................ 20

    C.    Because the Various Federal Agencies Are Indispensable, This Action Must Be Dismissed ............................................................................................ 21

III.   Plaintiffs Lack Article III Standing Because They Cannot Establish Causation or Redressability ............................................................................................................. 23

IV.   Because the Complaint's Core Allegation is Demonstrably False, the Complaint Fails to State a Claim ................................................................................................ 25

V.    Plaintiffs' Statutory Consumer Protection Claims Fail on Multiple Grounds ................. 26

    A.    Plaintiffs' State Consumer Protection Claims Fail Because the Government Validly Authorized the Alleged Conduct ............................................... 26

    B.    Plaintiffs Fail to Plausibly Allege Any State Consumer Fraud Claim ................. 27

i

1.      Plaintiffs Fail to Plausibly Allege a Material Misrepresentation or Omission by Booz Allen that Would Deceive a Reasonable Consumer ..................................................................... 27

2.      Plaintiffs Fail to Plausibly Allege Reliance on Any Deceptive Conduct or that Any Deception Caused Their Alleged Harm ................. 29

3.      Plaintiffs Fail to Plausibly Allege a Duty to Disclose or that Booz Allen's Role in Connection With Recreation.gov is Not Already Publicly Known ....................................................................... 30

4.      Plaintiffs Cannot Assert Claims Under the VCPA Because No Plaintiff Resides or Was Injured in Virginia ............................................. 32

5.      Plaintiff Lauritzen's Unlawful and Deceptive UCSPA Claims Fail to Allege Intentional or Knowing Behavior ............................................. 33

6.      Plaintiffs Fail to Plausibly Allege Unfair or Unconscionable Conduct .................................................................................. 34

VI.     Plaintiffs' Claims for Unjust Enrichment Fail ................................................. 34

VII.    The Court Should Dismiss All Claims Against the Unnamed "Doe" Defendants .......... 35

CONCLUSION ....................................................................................... 36

# TABLE OF AUTHORITIES

**Cases**                                                                                                                   **Page(s)**

*Ackerson v. Bean Dredging LLC*,
   589 F.3d 196 (5th Cir. 2009) ..................................................................................12, 14

*Adams v. Bain*,
   697 F.2d 1213 (4th Cir. 1982) ...........................................................................10

*ADI Constr. of Va. LLC v. Bordewick*,
   2013 WL 3730084 (E.D. Va. July 12, 2013) ...................................................18, 21

*Am. Greyhound Racing, Inc. v. Hull*,
   305 F.3d 1015 (9th Cir. 2022) ...........................................................................23

*Angiano v. Anheuser-Busch InBev Worldwide, Inc.*,
   532 F. Supp. 3d 911 (C.D. Cal. 2021) ...............................................................27

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................10

*Barrett v. Milwaukee Elec. Tool, Inc.*,
   2016 WL 4595947 (S.D. Cal. Jan. 26, 2016) ...................................................32

*Becerra v. Dr Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ...........................................................................29

*Blunt v. U.S. Dep't of Educ.*,
   2019 WL 13214054 (D. Colo. Apr. 19, 2019), *report and rec. adopted*, 2019
   WL 13214055 (D. Colo. May 24, 2019) ...........................................................13

*BMF Advance, LLC v. Litiscape, LLC*,
   2022 WL 1307830 (D. Utah May 2, 2022) .......................................................35

*Butters v. Vance Int'l, Inc.*,
   225 F.3d 462 (4th Cir. 2000) .................................................................11, 13, 16

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153 (2016) ...........................................................................................13

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau*,
   169 So. 3d 164 (Fla. Dist. Ct. App. 2015) ........................................................30

*Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*,
   492 F.3d 484 (4th Cir. 2007) .............................................................................33

*Chidi Njoku v. Unknown Special Unit Staff*,
   217 F.3d 840, 2000 WL 903896 (4th Cir. 2000) ..............................................36

*Cir. City Stores, Inc. v. E.E.O.C.*,
  75 F. Supp. 2d 491 (E.D. Va. 1999), *aff'd*, 232 F.3d 887 (4th Cir. 2000) ............................ 12

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ............................................................................ 29

*Corsello v. Verizon N.Y., Inc.*,
  967 N.E.2d 1177 (N.Y. 2012) ........................................................................ 35, 36

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
  2017 WL 1682534 (E.D. Va. May 1, 2017) .......................................................... 16

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
  888 F.3d 640 (4th Cir. 2018) ..................................................................... *passim*

*Cunningham v. Lester*,
  990 F.3d 361 (4th Cir. 2021) ...................................................................... 12, 37

*Curtis v. Propel Prop. Tax Funding, LLC*,
  2018 WL 717006 (E.D. Va. Feb. 5, 2018) ............................................................ 30

*Dawavendawa v. Salt River Project Agr. Imp. & Power Dist.*,
  276 F.3d 1150 (9th Cir. 2002) ............................................................................ 21

*Doe v. CVS Pharmacy, Inc.*,
  982 F.3d 1204 (9th Cir. 2020) ............................................................................ 34

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ............................................................................. 27

*Eidmann v. Walgreen Co.*,
  522 F. Supp. 3d 634 (N.D. Cal. 2021) ................................................................. 31

*Falk v. Gen. Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ............................................................... 35

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) .............................................................................. 28

*Friends for Ferrell Parkway, LLC v. Stasko*,
  282 F.3d 315 (4th Cir. 2002) ............................................................................ 24

*Garcia v. Volkswagen Grp. of Am., Inc.*,
  2022 WL 2542291 (E.D. Va. July 7, 2022) ........................................................... 35

*GBA Assocs. v. Gen. Servs. Admin.*,
  32 F.3d 898 (4th Cir. 1994) .............................................................................. 24

iv

*Goines v. Valley Cmty. Servs. Bd.*,
    822 F.3d 159 (4th Cir. 2016) ..................................................4, 9, 11, 25

*Greenbelt Ventures, LLC v. Washington Metro. Area Transit Auth.*,
    2010 WL 3469957 (D. Md. Sept. 1, 2010),
    *aff'd*, 481 F. App'x 833 (4th Cir. 2012)............................................13

*Gurwell v. Sea World Parks & Ent. LLC*,
    2021 WL 4168503 (E.D. Va. Aug. 11, 2021).................................30, 35

*Hartman v. Nationwide Mut. Ins. Co.*,
    2010 WL 1952868 (Wash. Ct. App. 2010)..............................................30

*Hauck v. Advanced Micro Devices, Inc.*,
    2019 WL 1493356 (N.D. Cal. Apr. 4, 2019),
    *aff'd*, 816 F. App'x 39 (9th Cir. 2020)................................................32

*Herrick v. Grindr LLC*,
    765 F. App'x 586 (2d Cir. 2019) ........................................................30

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ..............................................................28

*In re Interior Molded Doors Antitrust Litig.*,
    2019 WL 4478734 (E.D. Va. Sept. 18, 2019)......................................35

*Johnson v. Quin Rivers Agency for Cmty. Action, Inc.*,
    128 F. Supp. 2d 332 (E.D. Va. 2001) ..................................................12

*Jordan v. Def. Fin. & Acct. Servs.*,
    744 F. App'x 692 (11th Cir. 2018) ......................................................13

*Kee v. R-G Crown Bank*,
    656 F. Supp. 2d 1348 (D. Utah 2009)..................................................34

*Kerns v. United States*,
    585 F.3d 187 (2009)............................................................................10

*Kescoli v. Babbitt*,
    101 F.3d 1304 (9th Cir. 1996) ............................................................22

*Klaehn v. Cali Bamboo LLC*,
    2022 WL 1830685 (9th Cir. June 3, 2022) ..........................................35

*Knapp v. Zoetis Inc.*,
    2021 WL 1225970 (E.D. Va. Mar. 31, 2021) ......................................33

*Kotab v. Bureau of Land Management*,
  595 F. Supp. 3d 947 (D. Nev. 2022) ............................................................19, 32

*Kurimski v. Shell Oil Co.*,
  No. 2022 WL 2913742 (S.D. Fla. June 30, 2022) ...................................30

*La Cuna De Aztlan Sacred Sites Prot. Circle Advisory Comm. v.*
  *U.S. Dep't of Interior*, 642 F. App'x 690 (9th Cir. 2016) ......................25

*Lane v. Pena*,
  518 U.S. 187 (1996) ...............................................................................12

*Lavie v. Procter & Gamble Co.*,
  129 Cal. Rptr. 2d 486 (Cal. Ct. App. 2003) ...........................................28

*Lin v. Can. Goose US, Inc.*,
  2022 WL 16926312 (S.D.N.Y. Nov. 14, 2022) .......................................30

*Lisson v. Wells Fargo Bank, N.A.*,
  2019 WL 3577859 (Wash. Ct. App. 2019) ..............................................28

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...............................................................................23

*In re Magnesium Oxide Antitrust Litig.*,
  2011 WL 5008090 (D.N.J. Oct. 20, 2011) ..............................................33

*Mangold v. Analytic Servs., Inc.*,
  77 F.3d 1442 (4th Cir. 1996) ...........................................................11, 16

*Martinez v. Best Buy Co.*,
  2012 UT App 186, 283 P.3d 521 ......................................................30, 34

*McClellon v. Wells Fargo Advisors Fin. Network, LLC*,
  2018 WL 3727598 (W.D. Wash. Aug. 6, 2018) .......................................30

*Michelo v. Nat'l Collegiate Student Loan Tr.*
  *2007-2*, 419 F. Supp. 3d 668 (S.D.N.Y. 2019) .......................................30

*Murphy v. Twitter, Inc.*,
  274 Cal. Rptr. 3d 360 (Cal. Ct. App. 2021) ............................................34

*Myers v. Lee*,
  2010 WL 2757115 (E.D. Va. July 12, 2010) ...........................................27

*Nat'l Union Fire Ins. Co. of Pitt., PA v. Rite Aid of S.C., Inc.*,
  210 F.3d 246 (4th Cir. 2000) .................................................................20

*Owens-Illinois, Inc. v. Meade*,
  186 F.3d 435 (4th Cir. 1999) ................................................17, 21, 22

*Padin v. Oyster Point Dodge*,
  397 F. Supp. 2d 712 (E.D. Va. 2005) ...........................................28

*Pitts v. Volkswagen Grp. of Am., Inc.*,
  2021 WL 503710 (E.D. Va. Feb. 10, 2021) ...................................33

*Proxtronics Dosimetry, LLC v. United States*,
  128 Fed. Cl. 656 (2016) ...............................................................5

*Quillen v. Int'l Playtex, Inc.*,
  789 F.2d 1041 (4th Cir. 1986) ......................................................33

*Randolph v. J.M. Smucker Co.*,
  303 F.R.D. 679 (S.D. Fla. 2014) ..................................................28

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008) ................................................................21, 23

*Rojas-Lozano v. Google, Inc.*,
  159 F. Supp. 3d 1101 (N.D. Cal. 2016) ........................................28

*Selbe v. United States*,
  899 F. Supp. 1524 (W.D. Va. 1995) .............................................32

*In re Sling Media Slingbox Advert. Litig.*,
  202 F. Supp. 3d 352 (S.D.N.Y. 2016) ..........................................28

*Sloma v. Mercedes-Benz USA, LLC*,
  2009 WL 10675023 (C.D. Cal. July 14, 2009) .............................30

*Smith v. Apple, Inc.*,
  583 F. Supp. 3d 554 (S.D.N.Y. 2022) ..........................................36

*In re Sony Grand*,
  758 F. Supp. 2d 1077 (S.D. Cal. 2010) ........................................30

*Spaulding v. Wells Fargo Bank, N.A.*,
  714 F.3d 769 (4th Cir. 2013) ........................................................28

*State v. Beach Blvd Auto. Inc.*,
  139 So. 3d 380 (Fla. Dist. Ct. App. 2014) ....................................28

*State v. Living Essentials, LLC*,
  436 P.3d 857 (Wash. App. Div. 1 2019) .......................................28

*Suero v. NFL*,
  2022 WL 17985657 (S.D.N.Y. Dec. 16, 2022) ....................................................28

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)..........................................................................................11

*United States v. 30,006.25 in U.S. Currency*,
  236 F.3d 610 (10th Cir. 2000) ...........................................................................13

*United States v. Garcia*,
  855 F.3d 615 (4th Cir. 2017) ...............................................................................5

*Veney v. Wyche*,
  293 F.3d 726 (4th Cir. 2002) ...................................................................4, 11, 25

*Welch, Jr. v. United States*,
  409 F.3d 646 (4th Cir. 2005) ..............................................................................12

*William Insulation Co. Inc. v. JH Kelly LLC*,
  2021 WL 1894092 (W.D. Wash. May 11, 2021)..................................................35

*Williams v. Burgess*,
  2010 WL 1957105 (E.D. Va. May 13, 2010) .......................................................36

*Wolph v. Acer Am. Corp.*,
  2009 WL 2969467 (N.D. Cal. Sept. 14, 2009) ....................................................32

*Woodard v. Harrison*,
  2011 WL 13209646 (E.D.N.C. Apr. 4, 2011)......................................................36

*Write Start Early Christian Educ. Ctr., LLC v. Nat'l Fire & Marine Ins.*,
  836 F. App'x 362 (6th Cir. 2020) .......................................................................25

*Yashenko v. Harrah's NC Casino Co.*,
  446 F.3d 541 (4th Cir. 2006) ...................................................................... passim

*Yearsley v. W.A. Ross Construction Co.*,
  309 U.S. 18 (1940)...................................................................................... passim

*Zaycer v. Sturm Foods, Inc.*,
  896 F. Supp. 2d 399 (D. Md. 2012) ....................................................................33

**Statutes**

16 U.S.C. § 6805(a) .......................................................................................5, 16

16 U.S.C. § 6806..............................................................................................7, 8

41 U.S.C. Div. C ................................................................................................16

Fla. Stat. Ann. § 501.212(1)(a) ..................................................................27

N.Y. Gen. Bus. Law § 349(d) ....................................................................27

N.Y. Gen. Bus. Law § 350-d .....................................................................27

Utah Code Ann. § 13-11-22(1)(a) ..............................................................27

Va. Code Ann. § 59.1-199(A) ....................................................................27

Wash. Rev. Code Ann. § 19.86.170 ...........................................................27

**Other Authorities**

Fed. R. Civ. P. 9(b) ........................................................................27, 28, 35

Fed. R. Civ. P. 12(b) ........................................................................... *passim*

Fed. R. Civ. P. 19 .......................................................................17, 18, 21, 22

Fed. R. Evid. 201(b).....................................................................................5

**INTRODUCTION**

The Complaint paints a vivid, albeit fanciful, picture of a "multibillion dollar" company attempting to "line its own pockets" by charging so-called "Junk Fees" to the American public through Recreation.gov—a website that Booz Allen Hamilton Inc. ("Booz Allen") operates at the direction of the U.S. Government, and on which various federal agencies list camping and lodging facilities, tours, passes and the like for reservation by public users. But Plaintiffs' claims are based on a fundamental misunderstanding of how Recreation.gov actually works. Indeed, their core allegations are flatly contradicted by the contract awarded by the U.S. Department of Agriculture, Forest Service ("USDA") to Booz Allen to provide the government with reservation services (the "Contract"), as well as various other government and publicly available documents that are either incorporated into Plaintiffs' Complaint or are readily subject to judicial notice.

The reality is that Booz Allen does not charge *any* fees to the users of Recreation.gov, including the Plaintiffs in this case. Booz Allen operates Recreation.gov pursuant to the terms of the Contract. The federal agencies that use Recreation.gov to post available recreation opportunities for reservation decide whether and for how much to charge fees to the users who make those reservations. Indeed, the Contract between Booz Allen and the USDA plainly states that "*[t]he Government has the sole discretion at applying fees*." Plaintiffs' claims thus attack the conduct of the U.S. Government—specifically, the way in which the *federal government* manages access to *federal lands*.

As a consequence, Plaintiffs' allegations conflate two separate issues: (1) the fees charged by the government to the users of Recreation.gov, and (2) the payments made by the government to Booz Allen as compensation for its reservation services under the Contract. Under the terms of the Contract, the USDA agreed to pay Booz Allen a unit price for various types of transactions, including those conducted by public users on Recreation.gov. However, the government's per-

1

transaction payments to Booz Allen are not conditioned in any way on the fees charged *by the federal agencies* to the users of Recreation.gov.  To be sure, certain federal agencies charge reservation fees to the users to help cover the government's costs of operating Recreation.gov, including the USDA's payments to Booz Allen.  But those fees are charged by the agencies in their "sole discretion," and are deposited into a U.S. Treasury account; the USDA pays Booz Allen directly for its work under the Contract.  Plaintiffs' claims must be dismissed for myriad reasons.

First, well-established principles of derivative sovereign immunity deprive this Court of jurisdiction over Plaintiffs' claims.  Indeed, this is a textbook case for application of derivative sovereign immunity: the government would be immune from the claims asserted by Plaintiffs, the government authorized all of Booz Allen's actions in connection with Recreation.gov, and that authorization was validly conferred through a contract specifically authorized by Congress.  Because Booz Allen is immune from suit, the claims must be dismissed under Rule 12(b)(1).

Second, Plaintiffs have failed to join the federal agencies involved in Recreation.gov, all of whom are necessary and indispensable parties, including Booz Allen's contractual counterparty, the USDA.  Plaintiffs' claims attack U.S. Government conduct—not only the charging of fees, but also the alleged failure by the federal agencies to comply with various procedural requirements before charging certain fees for access to national parks and other federal lands.  And Plaintiffs' requests for relief are aimed at altering or altogether halting the government's conduct, not Booz Allen's.  As such, both Booz Allen *and the government* would be severely prejudiced were this case to proceed without the federal agencies.  But because the agencies cannot feasibly be joined— they are immune from suit—the claims must be dismissed under Rule 12(b)(7).

Third, Plaintiffs lack standing under Article III because Plaintiffs cannot establish a causal connection between the payment of the complained-of fees and Booz Allen's conduct, or that their

alleged harm would be redressed by a favorable decision against Booz Allen.  Put simply, Booz Allen does not decide whether and for how much to charge fees to the users of Recreation.gov. Federal agencies do.  As such, a favorable decision in Plaintiffs' favor—including a declaration against Booz Allen that such fees are unlawful and an injunction barring Booz Allen from charging such fees—would not redress Plaintiffs' alleged injuries.  Because Plaintiffs lack standing, this Court lacks subject matter jurisdiction over their claims.

Fourth, Plaintiffs fail to state a claim because the core allegation underlying each of their claims is contradicted by the terms of Booz Allen's Contract—which control over the Complaint's allegations—as well as the documents attached or integrated into the Complaint.  Those documents establish that federal agencies—not Booz Allen—decide whether and for how much to charge fees to the users of Recreation.gov.  Plaintiffs' claims are thus implausible under Rule 12(b)(6).

Fifth, Plaintiffs' state law statutory consumer protection and unjust enrichment claims should be dismissed, including because they do not plausibly allege that a reasonable consumer would be misled into believing that the government does not use or pay a contractor to provide reservation services, including through Recreation.gov.  Nor do Plaintiffs plausibly allege that these payment details are material to a reasonable consumer or would impact their behavior in any way.  Plaintiffs' claims based on an alleged failure to disclose Booz Allen's role in Recreation.gov also fail because Booz Allen's role is already widely known and publicly disclosed.

Sixth, the claims against the "Doe" defendants are improperly pled.  Therefore, the claims asserted against them—like the claims asserted against Booz Allen—should be dismissed.

## STATEMENT OF FACTS

### A.    Recreation One Stop Program

The government established Recreation.gov in 2002, as part of a program now known as Recreation One Stop ("R1S").  Compl. ¶ 39.  The R1S program is a partnership among several

federal agencies to provide a reservation system for the public to access federal lands, including national parks, forests, wildlife refuges, campgrounds and more.  *See* Meade & DeLappe Statement, ECF 1-3 at 3–4.[1]  With R1S, the government sought to reduce redundancy by combining the existing online reservation services of the Forest Service, U.S. Army Corps of Engineers and National Park Service.  *Id.* at 3.  The government enlisted the help of a contractor to design software to support these activities.  *Id.*  At first, Recreation.gov provided limited campground and ticket options.  *Id.*  Over time, however, the R1S program has grown significantly, both as to the volume and range of federal sites available for reservation as well as the number of visitors who use Recreation.gov to plan, reserve and share their experiences.  *Id.* at 4.

### B.    USDA Contract with Booz Allen for Operation of Recreation.gov

In May 2017, the government entered into a contract with Booz Allen for recreation services in support of the R1S program.  *See* Contract, Ex. A.[2]  Although numerous federal agencies use Recreation.gov, the Contract was awarded to Booz Allen by the USDA.  Congress specifically authorized the government to enter into this type of contract.  *See* 16 U.S.C. § 6805(a) ("the Secretary may enter into a fee management agreement, including a contract, which may provide for a reasonable commission, reimbursement, or discount, with . . . [a] nongovernmental

---

[1]    The Court may consider documents attached to the Complaint in resolving the present motion.  *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 66 (4th Cir. 2016) ("[W]e also consider [on a motion to dismiss] documents that are . . . attached to the complaint as exhibits.").

[2]    The Court may consider the Contract in resolving this motion because Plaintiffs reference it throughout the Complaint and it is integral to Plaintiffs' claims.  *See, e.g.*, Compl. ¶¶ 1, 4, 60 n.8, 63, 78, 315(k), 334(k), 342(k), 351(k), 365(k), 395(k), 410(k), 433(k), 449(k); *Goines*, 822 F.3d at 166 ("[W]e may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity.").  Further, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002); *see also Goines*, 822 F.3d at 166–67 (discussing the "exhibit-prevails rule").  Further, the Contract enclosed as Exhibit A has been excerpted to omit highly confidential, competitively-sensitive business information.

entity . . . for the purpose of obtaining . . . visitor reservation services").

Contrary to Plaintiffs' allegations, *see* Compl. ¶ 3, Recreation.gov was not "run by the United States government" prior to Booz Allen's Contract. Rather, the USDA relied upon another contractor, Reserve America, which operated Recreation.gov on the government's behalf as of at least 2006. *See* Ex. A at 27 ("The Government has an existing service contract with Active Network, d.b.a. Reserve America, through which all service and support of R1S is obtained.")[3]; ECF 1-3 at 6 (referring to "award of a 10-year contract to Reserve America (now ACTIVE Network) in 2006").

With the term of Reserve America's contract nearing expiration, the USDA issued a solicitation in July 2015, which kicked off the competition resulting in an award to Booz Allen. *See* Ex. A at 26–28; *see also* Solicitation, Ex. B.[4] The USDA explained that it sought to "award a successor contract to the current Reservations Services contract," to "build upon the historic strengths of the legacy program with the goal of providing internal and external customers a robust, reliable, innovative and flexible approach to providing recreation information and comprehensive travel planning and reservation services." Ex. A at 26. In the solicitation, the USDA detailed the reservation services it required as well as how the contractor would be paid for its work. Those terms were ultimately incorporated into the Contract awarded to Booz Allen.

---

[3]     The citations for each of the exhibits attached to this motion refer to the PDF page numbers.

[4]     The Court may take judicial notice of the solicitation materials in resolving this motion because they are government documents publicly available on the System for Award Management (sam.gov), the official U.S. Government system for contract opportunities, and thus their authenticity and accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b); *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites."); *Proxtronics Dosimetry, LLC v. United States*, 128 Fed. Cl. 656, 668 n.6 (2016) (taking judicial notice of government contract solicitation available on government website). Further, Exhibit B is comprised of the solicitation and one of its relevant attachments; the remaining attachments are voluminous and available on sam.gov.

Pursuant to the Contract, Booz Allen provides reservation services online, telephonically and in-person.  Ex. A at 26.  As is relevant here, the Contract requires Booz Allen to operate Recreation.gov.  *Id.* at 26–27.  That work includes developing and maintaining the online reservation system that serves two sets of users—the public (*e.g.*, individuals like Plaintiffs who seek to visit federal lands and waters) and the federal agencies that use the website to post inventory (*e.g.*, parks or campgrounds) for the public to reserve.  *See id.* at 27, 149, 150–51.  Those federal agencies include the Bureau of Land Management, U.S. Army Corps of Engineers, Forest Service, and National Park Service, among others.  Ex. A at 29–31; *see also* Recreation.gov Website, ECF 1-5 at 3.  To serve both sets of users, the Contract requires that Booz Allen's online reservation services provide various capabilities for both the public-facing interface that allows for users to browse and select sites for reservation and the internal, government-facing interface that allows each federal agency to post camping and lodging facilities, tours, passes and the like that are available for reservation.  *See* Ex. A at 116–123.

Most pertinent here, Recreation.gov allows each federal agency to select the type of fees it will charge to the public for each type of inventory it lists, as well as how much it will charge for each fee.  As set out in the Contract, federal agencies using the Recreation.gov reservation system will collect "a variety of fees associated with all types of transactions including but not limited to: use, transaction, reservation, convenience, service, change, cancellation, deposition, shipping and handling, point of sale, penalty, no show, etc."  Ex. A at 172; *see also id.* at 148–149 (referencing the website's ability to "collect[] all types of fees including taxes," and listing, *e.g.*, "reservations, lottery registration fees, annual permit sales, shipping fees, etc.").  The Contract also contemplates each federal agency's desire to set fees specific to each site or facility available for reservation on Recreation.gov, and further, that each site or other inventory listed "may contain one or more fee

type." *Id*. at 172.  Thus, the Contract requires that Booz Allen develop Recreation.gov to "be configurable" by those agencies "to allow flexibility in the labeling and layering of fees . . . in the transaction and reporting process." *Id.*  The Contract further requires Booz Allen to "allow for the incorporation of various fees [by each federal agency] to each type of product." *Id.*; *see also id.* at 118 (Business Rules requiring Booz Allen to "[p]rovide for configurable and variable fees for all types of inventory").

Significantly, at no time are fees assigned by Booz Allen.  To the contrary, all the fees charged on Recreation.gov are "assigned [by the federal agencies] at all levels of the program hierarchy from the program level down to the product level." *Id*. at 172; *see also id.* at 101-103 (depicting program hierarchy, at the agency and field level).  Leaving no room for doubt, the Contract plainly states, under the "Fees" heading: "*The Government has the sole discretion at applying fees and the Contractor shall not add any additional fees to any transaction without approval from the* [*Contracting Officer*]," who is the government official at USDA with authority to enter into, administer, and/or terminate the Contract. *Id.* at 172 (emphasis added); *see also* Ex. B at 103 (solicitation including the same language).  All of the fees charged by the federal agencies to the public users are paid to the U.S. Government and collected in a U.S. Treasury account. *See* 16 U.S.C. § 6806 (requiring fees collected by federal agencies to be deposited into a U.S. Treasury account).

Booz Allen is paid by the USDA for its reservation services, in accordance with its Contract.  Specifically, Booz Allen is paid a unit price per reservation transaction that takes place online, telephonically, or in-person.  This payment structure was *not* designed or proposed by Booz Allen—it was mandated by the USDA.  As the solicitation explained:

> The contractor will be reimbursed on a per reservation transaction basis.  A reservation transaction shall include all subsequent transactions related to the

original reservation including changes, cancellations, and no shows. Reservations include camping, ticketing, lotteries, permitting, day use and group facilities, special events, equipment rentals, pass sales, non-fee facilities, and low-fee facilities.

Ex. B at 3. With the solicitation, the USDA listed by Contract Line Item Number ("CLIN") each type of transaction for which the contractor would be paid for each year of the Contract, an estimated quantity for each type of transaction, and blank columns for the offerors to complete with their proposed per-transaction pricing. *Id.*; *see also* Ex. A at 107 (defining "Contract Line Item Number (CLIN)" as "[a] specific unit of work to be performed by the Contractor as a payment item"). Booz Allen, like other offerors, submitted proposed unit prices for each type of reservation, and is now paid on that basis. *See* Ex. B at 3 ("Unit price to be bid on a per reservation basis. . . . Offerors shall only enter data in the 'Unit Price' column of the spreadsheet.").[5]

Each month, Booz Allen submits an invoice to the USDA that lists the quantities of each type of transaction that took place multiplied by the per-transaction unit price set forth in its Contract. USDA pays Booz Allen on this basis. Although the USDA ultimately makes payment to Booz Allen pursuant to the Contract, the USDA has entered into an arrangement with the other federal agencies that use Recreation.gov to ensure that, *inter alia*, those agencies contribute to the government's costs of operating the R1S program. *See* ECF 1-10 at 6 (describing Memorandum of Understanding among the federal agencies).

Some of the government's costs for the R1S program, including the per-transaction

---

[5]     The USDA paid the predecessor contractor in precisely the same manner. *See* Ex. A at 27 (Reserve America contract used "Fixed Price per-transaction pricing such that the Contractor earn[ed] a fixed fee for each transaction processed via the www.recreation.gov website, the telephone customer support line, or in-person at participating Federal recreation locations"); ECF 1-3 at 7–8 (Reserve America contract used a "Contract Line Item Number (CLIN) commission/payment structure, where the contractor earns a payment based on each reservation transaction" that "varies based on what is reserved and which sales channel is used").

payments owing to Booz Allen, are funded through the fees that the federal agencies charge to the public to use Recreation.gov. *Id.* at 21 ("The [Contract] is awarded and managed by the Forest Service (FS) and contract funding is derived directly through reservation sales. The R1S finance operations center withholds [fee] revenue in an amount that equals the commissions owed to [Booz Allen]."); Travers Decl., Ex. C at 3 (Booz Allen Contract "is funded through reservation fees paid by customers making reservation transactions" and "revenue derived from reservation fees is remitted to [Booz Allen]").[6] Some federal agencies (like the Forest Service and Bureau of Land Management) cover their share of these costs "by charging a nonrefundable reservation fee separate from the actual site fee," while other agencies "have built the cost of the [Booz Allen] reservation contract CLIN into their nightly fees for camping and ticket prices." ECF 1-3 at 8. For its part, the USDA's financial management office "set[s] aside funds collected for each reservation to pay a monthly invoice for the Contract Line Item CLINs," *i.e.*, the per-transaction payments owing to Booz Allen. *Id.* In all events, whether broken out or embedded within other fees, the U.S. Government is the one charging fees to the users, determining the amount of such fees, and collecting them in a U.S. Treasury account; the USDA then pays Booz Allen on a per-transaction basis per the terms of its Contract.

## C. Plaintiffs' Complaint

Plaintiffs are seven individuals in five states who allegedly used Recreation.gov to make federal lands reservations and were charged fees to do so. Compl. ¶¶ 26-32. Plaintiffs allege that those fees violate various federal and state laws, including for failure to comply with the Federal

---

[6] The Court may consider the declaration of Joshua M. Travers, a Bureau of Land Management official, in resolving this motion because Plaintiffs rely on direct quotations from the declaration in multiple places in the Complaint. *See, e.g.*, Compl. ¶¶ 6, 48 (quoting *Kotab* decision that is, in turn, quoting the Travers declaration). The declaration is thus integral to the Complaint and incorporated by reference therein. *See Goines*, 822 F.3d at 166.

Lands Recreation Enhancement Act's ("FLREA") procedural requirements. *Id.* ¶¶ 18, 78-90. Plaintiffs have also filed suit against Booz Allen and unnamed individuals or entities that operate Recreation.gov as "Does 1-20." Plaintiffs assert claims under the Declaratory Judgment Act, as well as claims alleging violations of various state consumer protection statutes and for unjust enrichment. *Id.* ¶¶ 277-452. Plaintiffs assert certain of their claims on behalf of a putative nationwide and state specific classes. *Id.* ¶¶ 260-65. Plaintiffs seek numerous forms of relief, including a declaration that charging the complained-of fees is unlawful, damages in the amount of the fees charged to date, an injunction prohibiting the future charging of fees, and an order that certain disclosures be displayed on Recreation.gov. *Id*. at 101.

## LEGAL STANDARD

When a Rule 12(b)(1) challenge is raised, "[t]he burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "[W]hen a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." *Kerns v. United States*, 585 F.3d 187, 193 (2009). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Courts "must" also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007), as well as documents "attached to the complaint as exhibits," *Goines*, 822 F.3d at 166. Courts may also consider other documents "integral to the complaint" where there is "no dispute about the document's authenticity." *Id*. Courts need not "accept as true allegations that

contradict matters properly subject to judicial notice or by exhibit." *Veney*, 293 F.3d at 730; *see also Goines*, 822 F.3d at 166–67 (discussing the "exhibit-prevails rule").

## ARGUMENT

I.    **The Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction Because Booz Allen is Entitled to Derivative Sovereign Immunity**

As the Fourth Circuit has recognized, "[t]he government cannot perform all necessary and proper services itself and must therefore contract out some services for performance by the private sector." *Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1448 (4th Cir. 1996). It is thus "well-settled law that contractors and common law agents acting within the scope of their employment for the United States have derivative sovereign immunity." *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000). The concept of derivative sovereign immunity stems from the Supreme Court's decision in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), which extends the U.S. Government's sovereign immunity to a contractor's acts in performance of a federal contract when (1) the United States has not expressly waived its sovereign immunity from the claims asserted, (2) "the government authorized the contractor's actions," and (3) "the government 'validly conferred' that authorization, meaning it acted within its constitutional power." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 643 (4th Cir. 2018) (citing *Yearsley*, 309 U.S. at 20–21) ("*GDIT II*"). When derivative sovereign immunity applies, the court lacks subject matter jurisdiction over the claims. *Id.* at 649.

Courts routinely dismiss claims against government contractors on the basis of derivative sovereign immunity. *See, e.g.*, *GDIT II*, 888 F.3d at 651 (affirming dismissal of complaint because contractor is entitled to derivative sovereign immunity for alleged violations of federal law for placing automated calls pursuant to government contract); *Cunningham v. Lester*, 990 F.3d 361, 368 (4th Cir. 2021) (same as to employees of government contractor). Here, Plaintiffs' claims

11

should be dismissed outright because the Complaint contains no allegations even attempting to overcome the *Yearsley* doctrine. *See Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009) (affirming dismissal of class action claims based on derivative sovereign immunity because the complaint did not allege the contractor exceeded its authority under the contract). Moreover, the Contract itself, as well as the exhibits attached to the Complaint and other judicially-noticeable materials, all confirm that each element of the *Yearsley* doctrine is satisfied. Consequently, this Court lacks subject matter jurisdiction over Plaintiffs' claims.

## A.  Congress Did Not Waive the Government's Sovereign Immunity

The *Yearsley* doctrine begins with the long-standing principle that "the United States is immune from all suits against it absent an express waiver of its immunity." *Welch, Jr. v. United States*, 409 F.3d 646, 650 (4th Cir. 2005). Any waiver "must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Accordingly, application of the *Yearsley* doctrine begins with an analysis of whether the U.S. Government has waived its sovereign immunity for the types of claims asserted. Here, Plaintiffs assert claims against Booz Allen under the Declaratory Judgment Act, various state consumer protection statutes, and for unjust enrichment. The United States has not waived its sovereign immunity for any such claims.[7]

---

[7]    Declaratory Judgment Act—*See, e.g.*, *Cir. City Stores, Inc. v. E.E.O.C.*, 75 F. Supp. 2d 491, 504 (E.D. Va. 1999) (Declaratory Judgment Act does not "constitute a waiver of sovereign immunity"), *aff'd*, 232 F.3d 887 (4th Cir. 2000); *Johnson v. Quin Rivers Agency for Cmty. Action, Inc.*, 128 F. Supp. 2d 332, 337–38 (E.D. Va. 2001) (same).

State Consumer Protection Statutes—*See, e.g.*, *Blunt v. U.S. Dep't of Educ.*, 2019 WL 13214054, at *2 (D. Colo. Apr. 19, 2019) ("[T]o the extent Plaintiff seeks relief under 'State Consumer Protection Statu[t]es,' such claim [must] be dismissed because Plaintiff has not identified a waiver of sovereign immunity for a federal entity to be sued under state consumer protection laws."), *report and rec. adopted*, 2019 WL 13214055 (D. Colo. May 24, 2019).

Unjust Enrichment—*See, e.g.*, *Jordan v. Def. Fin. & Acct. Servs.*, 744 F. App'x 692, 696 (11th Cir. 2018) ("[T]he government has not specifically waived sovereign immunity in state law unjust enrichment suits . . . ."); *United States v. 30,006.25 in U.S. Currency*, 236 F.3d 610, 614 (10th Cir. 2000) ("nor are we aware, of any general waiver of sovereign immunity for unjust

12

**B.      The Government Authorized Booz Allen to Operate Recreation.gov**

Second, the Court assesses whether the government authorized Booz Allen's actions.  *See Butters*, 225 F.3d at 466 (explaining that the government authorized the contractor's actions where the contractor has "not exceeded [its] authority under [its] valid contract with the United States"); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 167 (2016) (noting that the contractor must have "simply performed as the Government directed").  Here, the government authorized all of Booz Allen's actions in connection with Recreation.gov.

Plaintiffs allege that, in providing reservation services for USDA, Booz Allen "gets to decide the amount that it charges in [so-called] Junk Fees, and Booz Allen also gets to keep all of the associated [so-called] Junk Fee revenue for itself."  Compl. ¶ 7.  That is incorrect.  As detailed above, Booz Allen does *not* charge any fees to the users of Recreation.gov.  Rather, Booz Allen operates Recreation.gov on behalf of various federal agencies, and it is those agencies that decide whether and for how much to charge fees to the users of Recreation.gov.  It is also those agencies that choose how to spend the revenue raised by charging such fees, including to cover the costs of Recreation.gov.  But that is the government's prerogative, as the Contract plainly states that "*[t]he Government* has the sole discretion at applying fees."  Att. 10 at 25 (emphasis added).  And it in no way substantiates Plaintiffs' erroneous allegation that *Booz Allen* decides whether and for how much to charge fees to the users of Recreation.gov.

But whatever role Plaintiffs allege that Booz Allen plays as it relates to Recreation.gov and the fees charged on that website, Plaintiffs do *not* allege that Booz Allen exceeded the terms of its Contract with USDA and thus, the inquiry should end there.  *See Ackerson*, 589 F.3d at 207

---

enrichment claims"); *Greenbelt Ventures, LLC v. Washington Metro. Area Transit Auth.*, 2010 WL 3469957, at *7 (D. Md. Sept. 1, 2010) (holding government has not waived sovereign immunity for unjust enrichment claims), *aff'd*, 481 F. App'x 833 (4th Cir. 2012).

(upholding dismissal based on derivative sovereign immunity where Plaintiffs did not "allege that [the contractor] exceeded [its] authority or in any way deviated from [the government's] direction or expectations"). Indeed, even if the Court were to assume the truth of Plaintiffs' allegations that Booz Allen played some role in connection with the charging of fees to the users of Recreation.gov, Booz Allen's immunity would remain intact. For starters, the Complaint concedes that Booz Allen acted with authority from the government. *See* Compl. ¶ 48 (alleging, albeit incorrectly, that "Booz Allen . . . had exclusive authority to determine the amount of fees to charge recreation.gov users"). Further, the Contract as well as the documents attached and incorporated by reference into the Complaint confirm that Booz Allen's conduct was authorized by the government. That Contract required Booz Allen to develop and maintain the online reservation system at Recreation.gov, through which federal agencies can charge fees to the users of Recreation.gov, and that is precisely what Booz Allen did.[8]

On this point, the Fourth Circuit's holding in *GDIT II* is instructive. In that case, this Court held and the Fourth Circuit affirmed that GDIT was entitled to derivative sovereign immunity for

---

[8]     The Contract provides exhaustive direction to Booz Allen as to other features of Recreation.gov, too, including features discussed in the Complaint. For instance, the Contract states that "*[t]he Government* employs lotteries to award access or admission to a number of high demand activities where participation is limited" and requires that Booz Allen "provide a means of administering" those lotteries. Ex. A at 155 (emphasis added); Ex. B at 83. This directly refutes Plaintiffs' assertion that "Booz Allen . . . conducts 'lotteries.'" Compl. ¶ 119.

The Contract also directs Booz Allen to undertake various marketing efforts "to raise awareness for recreation across all federal lands and waters." Ex. A at 50. For instance, the Contract requires that Booz Allen develop a plan for achieving the various goals listed, including to "[i]ncrease visitation to public lands and waters" and specifically instructs Booz Allen to "employ[] a wide variety of traditional and new media" to target the public with its marketing. This directly refutes Plaintiffs' assertion that "*Booz Allen* engages in deceptive marketing to extract additional [so-called] Junk Fees from consumers" by "[u]sing the contact information provided by consumers during account creation." Compl. ¶ 150. To the contrary, the USDA specifically states that Booz Allen "*shall continuously analyze end user data*" for marketing purposes. Ex. A at 51 (emphasis added).

14

its work placing autodialed phone calls under a contract with the U.S. Government. *GDIT II*, 888 F.3d at 647. The Fourth Circuit observed that the government had provided GDIT with a list of some 680,000 phone numbers and instructed GDIT to place the calls and leave a prerecorded message. *Id.* The court found that GDIT "performed exactly as [the government] directed," and held that, because it had "adhered to the terms of its contract with [the government]," "the government authorized [GDIT's] actions," satisfying this step of the *Yearsley* analysis and thus immunizing GDIT from suit. *Id.* at 648. The same is true here.

To the extent Plaintiffs take issue with how Booz Allen is paid by the government for its work on Recreation.gov, that too is expressly authorized by the Contract. Under the Contract, as dictated by the U.S. Government, USDA pays Booz Allen a fixed price for each listed transaction conducted by the users of Recreation.gov. Booz Allen is *not* paid by charging any of its own fees to the users of Recreation.gov; all of the fees on Recreation.gov are charged to users by the federal agencies, and collected in a U.S. Treasury account. The per-transaction manner in which Booz Allen is paid for its reservation services is directed by its Contract with USDA.

### C.     The Government Validly Conferred the Authorization to Booz Allen

Booz Allen also satisfies the third and final prong of the *Yearsley* immunity analysis. According to the Supreme Court, the "validly conferred" requirement is met if the "authority to carry out the project was . . . within the constitutional power of Congress." *Yearsley*, 309 U.S. at 20. The Fourth Circuit has held that this prong of *Yearsley* turns on the simple inquiry of whether "Congress had the authority to assign [the contractor] to complete [a particular] task." *GDIT II*, 888 F.3d at 648; *see also Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 2017 WL 1682534 (E.D. Va. May 1, 2017) ("*GDIT I*") (explaining that this "prong of *Yearsley* focuses on the constitutional power to delegate tasks to private contractors").

Here, with FLREA, Congress specifically authorized USDA to enter into a contract for

reservation services and further authorized USDA to pay for the contracted services through a "commission." *See* 16 U.S.C. § 6805(a)(1). The Act specifically directs that the "Secretary may enter into a fee management agreement, *including a contract,* which may provide for a reasonable commission, reimbursement, or discount, with . . . any governmental *or nongovernmental entity . . . for the purpose of obtaining* fee collection and processing services, including *visitor reservation services.*" *Id.* § 6805(a)(1) (emphases added).

By entering into the Contract, the USDA was acting pursuant to this specific congressional authorization. Pursuant to the Contract, Booz Allen (a nongovernmental entity) provides reservation services, including "manag[ing]" the government's assessment of fees by virtue of operating Recreation.gov, and USDA's per-transaction payments to Booz Allen are a "commission" for that work. Further, this specific authorization is consistent with federal agencies' broad authority to delegate tasks to private contractors (like Booz Allen). *See generally* 41 U.S.C. Div. C (provisions governing contracting by civilian agencies, such as USDA); *see also, e.g.*, *Butters*, 225 F.3d at 466 ("All sovereigns need flexibility to hire private agents to aid them in conducting their governmental functions."); *Mangold*, 77 F.3d at 1448 (recognizing "the government's unquestioned need to delegate governmental functions"; "[t]he government cannot perform all necessary and proper services itself and must therefore contract out some services for performance by the private sector"). Accordingly, upon entering into the Contract with Booz Allen, the government "validly conferred" authorization for Booz Allen to perform those reservation services, including through Recreation.gov. Plaintiffs do not even allege, nor could they, that Congress acted unconstitutionally when it passed the FLREA and therein authorized USDA to enter into such contract (or to pay for the contractor through a "commission"), or USDA's broader authority to use contractors to carry out its functions or perform its duties.

Moreover, regardless of who charged the complained-of fees, the alleged unlawfulness of those fees has no impact on whether the government "validly" conferred authorization to Booz Allen under the *Yearsley* doctrine, thus entitling it to immunity. *See GDIT II*, 888 F.3d at 648. Because the government validly conferred authorization to Booz Allen to operate Recreation.gov, the third *Yearsley* requirement is satisfied, and Booz Allen is entitled to derivative sovereign immunity for Plaintiffs' claims.

## II. The Complaint Should Be Dismissed for Failure to Join USDA and the Federal Agencies as Necessary and Indispensable Parties

The Complaint should also be dismissed pursuant to Rule 12(b)(7) because Plaintiffs have failed to join the USDA, *i.e.,* the federal agency directing Booz Allen's reservation services pursuant to the Contract, and any of the federal agencies charging fees to users on Recreation.gov. Rule 12(b)(7) provides that an action may be dismissed for failure to join a necessary and indispensable party pursuant to Rule 19. Rule 19 in turn sets forth a "two-step inquiry," in which the court must determine "whether a party is necessary, and then, if the necessary party cannot be joined, determine whether the party is indispensable." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999). Here, these federal agencies are necessary and indispensable parties and must be joined under Rule 19. Because they are immune from suit, this case should be dismissed.

### A. Various Federal Agencies Are Necessary Parties

Rule 19 establishes when a party is "necessary" and therefore must be joined, including if that party has interests in the subject of the action and "disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a). Here, permitting this action to proceed without the USDA and the various federal agencies charging fees on Recreation.gov would both "impair

or impede" the government's ability to protect its interests, and also subject Booz Allen to a "substantial risk of incurring" conflicting legal obligations.

Setting aside that Plaintiffs' claims lack merit, the relief sought by Plaintiffs—including a declaration that charging the complained-of fees is unlawful, damages in the amount of the fees charged to date, an injunction prohibiting the future charging of fees, and an order that certain disclosures be displayed on Recreation.gov, *see* Compl. at 101—cannot be satisfied by Booz Allen. As detailed above, Booz Allen does not set or charge or collect (or have the authority to set or charge or collect) any fees charged to the users of Recreation.gov. Thus, Booz Allen has no such fees in its possession to refund. Nor can Booz Allen take unilateral action regarding the contents or broader operation of the government website through which federal agencies charge the fees at issue. Any relief regarding those fees needs to be directed to the federal agencies charging them.

Thus, if this case proceeds without the federal agencies, the government would be unable to protect its unique interests in the issues before this Court. These interests include USDA's authority to enter into a contract with a nongovernmental entity (like Booz Allen) to support the R1S program. *See ADI Constr. of Va. LLC v. Bordewick*, 2013 WL 3730084, at *3 (E.D. Va. July 12, 2013) ("In applying Rule 19, the Fourth Circuit has found that 'all parties to a contract, and others having a substantial interest in it, are necessary parties.'"). The various federal agencies that use Recreation.gov also have a significant interest in their ability to charge fees to users of Recreation.gov, including defending the lawfulness of the fees they charge, as only the government can redress any decision declaring those fees unlawful and ordering that they be halted. On this point, Plaintiffs allege that "*the Federal Agencies* have failed to comply with the procedural requirements" of FLREA as a basis for claiming the fees charged are unlawful. Compl. ¶ 78 (emphasis added). Plaintiffs' own allegations thus tie the alleged unlawfulness of the fees to

actions taken or not taken *by the federal agencies*. And any prospective remedy to cure the alleged failures by those agencies would have to be directed to those agencies—not to Booz Allen.

The *Kotab* decision cited in the Complaint confirms the necessity of the federal agencies' participation in this case. *See Kotab v. Bureau of Land Management*, 595 F. Supp. 3d 947 (D. Nev. 2022). There, the plaintiff sued the Bureau of Land Management under the Administrative Procedure Act, alleging that the fees the agency charged on Recreation.gov for a visit to the Red Rock Canyon Conservation Area violated the FLREA because *that federal agency* had not complied with the FLREA's public-participation requirements before imposing the fee. *Id.* at 956. Here, however, Plaintiffs have *not* sued any federal agencies, even though it is those agencies who Plaintiffs allege must take "specific administrative steps" before charging certain fees to the public. Compl. ¶ 88; *see also id.* ¶ 78. Each of those agencies are plainly necessary here.

Likewise, an order requiring that Booz Allen somehow modify or altogether cease the charging of fees on Recreation.gov or post a disclosure on that government website or in any way alter the way in which it performs its recreation services would directly conflict with Booz Allen's express contractual obligations to the USDA, including to operate Recreation.gov in a manner that allows for the various federal agencies to charge fees to the public.

On these points, the Fourth Circuit's holding in *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541 (4th Cir. 2006) is instructive. There, a Native American tribe (the "Tribe") entered into a contract with the defendant pursuant to which the defendant managed the Tribe's casino. *Id.* at 544. The defendant was responsible for hiring, training, and discharging all casino employees. *Id.* The plaintiff, a former casino employee, brought discrimination claims against the defendant, alleging that he was discharged due to the casino's Native American hiring preference, which was a policy in the Tribe's contract with the defendant. *Id.* at 545. The Fourth Circuit held that the

Tribe was a necessary party to the action because "a judgment in the plaintiff's favor would only bind him and the private employer, and would not prevent the tribe from continuing to enforce its tribal preference policy on its own property." *See id.* at 553.

So too here: Booz Allen acted at the direction and with the authorization of the USDA, pursuant to its Contract, by operating Recreation.gov in a manner that allows federal agencies to charge fees. As such, a judgment against Booz Allen would necessarily "threaten to impair [USDA's] contractual interests, and thus, its fundamental economic relationship with [Booz Allen], as well as its sovereign capacity to negotiate contracts." *Id.*

Booz Allen cannot be expected to adequately represent the various federal agencies on these issues. *See Nat'l Union Fire Ins. Co. of Pitt., PA v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 249 (4th Cir. 2000) ("A court should hesitate to conclude . . . that a litigant can serve as a proxy for an absent party unless the interests of the two are identical."). Because Booz Allen had no role in developing the scope and payment structure of the Contract, and has no role in setting or charging fees, only the federal agencies involved have the necessary knowledge and capability to fully defend them. Booz Allen also cannot be expected to defend the USDA's interests in retaining its procurement authority or the government's broader, interagency interests in operating and paying for the R1S program. Adjudication of this case without those federal agencies present would necessarily leave Booz Allen "facing intractable, mutually exclusive alternatives" between complying with a court order or its contractual obligations to the U.S. Government, and thus subjects Booz Allen to "the substantial risk of facing multiple, inconsistent obligations." *Dawavendawa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1158 (9th Cir. 2002).

**B.    The Various Federal Agencies Cannot Feasibly Be Joined**

Although the various federal agencies involved are necessary parties, they cannot be made parties because each is entitled to sovereign immunity from Plaintiffs' claims. As discussed above,

*see supra* Section I.A., the U.S. Government has not waived its sovereign immunity against suit on the claims asserted in the Complaint. Because the various federal agencies are immune from suit, they cannot "feasibly be joined as a party" to this action. *See Yashenko*, 446 F.3d at 553.

### C. Because the Various Federal Agencies Are Indispensable, This Action Must Be Dismissed

When "a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Dismissal is warranted "when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Owens-Illinois, Inc.*, 186 F.3d at 441. In determining whether a party is "indispensable" under Rule 19(b), "the Court must consider several factors, including whether a judgment rendered in the party's absence would be prejudicial, the extent to which prejudice can be lessened or avoided by shaping relief, whether a judgment rendered in the party's absence would be adequate, and whether the plaintiff will have an adequate remedy if the action is dismissed." *ADI Constr.*, 2013 WL 3730084, at *4.

The Supreme Court has held that, "where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign." *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008). Moreover, if the necessary party is immune, there may be "very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor." *Kescoli v. Babbitt*, 101 F.3d 1304, 1311 (9th Cir. 1996). Here, both the U.S. Government's immunity and the Rule 19(b) factors compel dismissal.

First, both the federal agencies and Booz Allen would be prejudiced by a judgment rendered in the government's absence. Booz Allen would be forced to defend against its actions taken pursuant to its Contract with the USDA, and to defend the lawfulness of fees charged by

various federal agencies. Booz Allen has no control over whether and for how much those fees are charged or, for that matter, how each agency understands and complies with federal and state laws, including FLREA, in charging those fees. And, as detailed above, a judgment would necessarily compel Booz Allen to breach its contractual obligations to the USDA. *See Yashenko*, 446 F.3d at 553 ("[A]ny such judgment rendered in the absence of the Tribe would prejudice Harrah's because it would hinder its ability to resolve its contractual obligations with the Tribe.").

Second, the Court could not "tailor[] a remedy to lessen or avoid the potential for prejudice." *Owens-Illinois, Inc.*, 186 F.3d at 442. When the true nature of the Recreation.gov fees is accounted for, no viable remedy as to Booz Allen remains. Moreover, because Booz Allen has at all times acted at the USDA's direction, pursuant to the parties' Contract, any relief in this case would necessarily result in the aforementioned prejudice.

Third, any judgment rendered in the absence of the various federal agencies involved would be inadequate, including because Booz Allen could not alone fulfill it. As in *Yashenko*, a judgment here "would bind only [Booz Allen]." 446 F.3d at 553. The USDA would "remain free to" direct Booz Allen's performance under the Contract—or award another contract to another contractor to operate Recreation.gov in precisely the same way—and the various federal agencies actually charging the complained-of fees would "remain free to" charge them. *Id.* Further, even if a ruling against Booz Allen alone would somehow preclude the various federal agencies from charging fees going forward, that would only highlight the prejudice to those agencies and confirm they are both necessary and indispensable to this case.

Finally, any prejudice to Plaintiffs "is outweighed by prejudice to [USDA and the federal agencies using Recreation.gov, which are] invoking sovereign immunity." *See Pimentel*, 553 U.S. at 872; *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1025 (9th Cir. 2022) (holding as to

the fourth factor that "the tribes' interest in maintaining their sovereign immunity outweighs the plaintiffs' interest in litigating their claims," even where there is "no adequate remedy available to [the plaintiffs] if this case is dismissed for lack of joinder of indispensable parties").

Plaintiffs' claims, misguided as they are, relate to Booz Allen's actions pursuant to a Contract awarded by the USDA and the decision of various federal agencies to charge fees to public users of the reservation services on Recreation.gov, thus making these federal agencies necessary and indispensable parties to this proceeding. Because those agencies are immune from suit, this case must be dismissed.

## III. Plaintiffs Lack Article III Standing Because They Cannot Establish Causation or Redressability

To establish Article III standing, a plaintiff must establish (1) an injury-in-fact, (2) causation, and (3) redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). For causation, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action *of the defendant*, and not the result of the independent action of some third party not before the court." *Id.* (emphasis added). For redressability, the plaintiff must show that it is "likely, as opposed to merely speculative," that a favorable decision will redress the alleged injury. *Id.* at 561.

Here, Plaintiffs have failed to plead plausible facts that would establish Article III causation or redressability. Plaintiffs cannot plausibly allege that their purported injury—the payment of fees—is traceable to Booz Allen's conduct. As discussed above, Booz Allen does not charge any fees to the users of Recreation.gov; rather, Booz Allen operates a website at the USDA's direction that allows federal agencies to charge—in their "sole discretion"—a variety of fees. Accordingly, the complained-of fees "depend[] on the unfettered choices made by independent actors not before the courts"—namely, the federal agencies—"and whose exercise of broad and legitimate

discretion the courts cannot presume either to control or to predict." *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 324 (4th Cir. 2002). Because Plaintiffs cannot fairly trace their alleged injuries to Booz Allen's conduct, they lack standing.

Nor can Plaintiffs plausibly allege that this Court could enter any order *against Booz Allen* that would redress their purported injuries. As detailed above, Plaintiffs seek an order enjoining Booz Allen from continuing to charge fees, Compl. at 101, but Booz Allen does not charge any fees to the users of Recreation.gov. Thus, a ruling in Plaintiffs' favor—including an injunction against Booz Allen—would not result in the cessation of fees that Plaintiffs demand. *See GBA Assocs. v. Gen. Servs. Admin.*, 32 F.3d 898, 901 (4th Cir. 1994) (finding no causation or redressability because no indication that favorable ruling would result in relief sought).

Plaintiffs also seek a declaration that the fees charged are "unlawful" because they allegedly violate the FLREA. Compl. ¶¶ 17–18, 77–79, 101. But the Complaint itself acknowledges that it is the federal agencies—not Booz Allen—that must comply with FLREA's procedural requirements with respect to the charging of fees. *See id.* ¶ 78 (alleging "*the Federal Agencies* have failed to comply with the procedural requirements" of FLREA (emphasis added)). Accordingly, a declaration *against Booz Allen* about the alleged unlawfulness of the fees charged *by the federal agencies* based on alleged procedural failings *by the federal agencies* would not redress Plaintiffs' alleged injuries, since that declaration would bind only the parties before the Court—not the federal agencies.

Plaintiffs also seek refunds and restitution from Booz Allen, *see, e.g.*, *id.* ¶ 22; *id.* at 101, based on the fees Booz Allen allegedly charged users of Recreation.gov and "kept in full," *see, e.g.*, *id.* ¶¶ 103, 112, 117, 141, 147. Again, however, Booz Allen neither charges nor "keeps" any fees. Rather, federal agencies charge fees, which are deposited into a U.S. Treasury account, and

the USDA pays Booz Allen per the terms of the Contract.  Because Booz Allen cannot refund or restore to Plaintiffs fees that are charged by and paid to the government, a favorable decision here would not redress their alleged injuries.  Plaintiffs lack standing.

## IV.  Because the Complaint's Core Allegation is Demonstrably False, the Complaint Fails to State a Claim

Even if this Court had subject matter jurisdiction over the claims—and it does not— dismissal would still be appropriate because the Complaint fails to state a claim.  Where, as here, a complaint's allegations are contradicted by documents attached or incorporated into the Complaint, the documents "prevail[]" and the Court need not accept the allegations as true.  *See Goines*, 822 F.3d at 166–67; *Veney*, 293 F.3d at 730.  Thus, properly considered materials can render claims implausible where those materials conflict with the key allegations of the Complaint.  *See, e.g.*, *Write Start Early Christian Educ. Ctr., LLC v. Nat'l Fire & Marine Ins.*, 836 F. App'x 362, 365 (6th Cir. 2020) ("The letters . . . incorporated into the amended complaint by reference render [plaintiff's] waiver allegations implausible."); *La Cuna De Aztlan Sacred Sites Prot. Circle Advisory Comm. v. U.S. Dep't of Interior*, 642 F. App'x 690, 693 (9th Cir. 2016) (claim "rendered implausible by the NEPA documents—incorporated into the pleading by reference").

Here, each claim asserted in the Complaint is premised on the allegation that Booz Allen charges the users of Recreation.gov, including Plaintiffs, various fees that allegedly violate federal and state law.  *See, e.g.*, Compl. ¶ 1 (Booz Allen "forc[es] American Consumers to pay Ticketmaster-style Junk Fees"); *id.* ¶ 5 (Booz Allen "charg[es] consumer Junk Fees . . . designed to line its own pockets"); *id.* ¶ 7 ("Booz Allen gets to decide the amount that it charges in Junk Fees, and Booz Allen also gets to keep all of the associated Junk Fee revenue for itself"); *id.* ¶ 62 ("Booz Allen charges consumers Junk Fees on recreation.gov").  However, that allegation is directly refuted by the Contract, the documents attached to the Complaint, and other judicially-

noticeable documents describing how Recreation.gov actually works. These documents control the analysis and render Plaintiffs' claims implausible. As discussed above, Booz Allen does *not* charge any fees to the users of Recreation.gov. Rather, Booz Allen operates Recreation.gov on behalf of various federal agencies, and it is those agencies that decide whether and for how much to charge fees to the users of Recreation.gov. It is also those agencies that choose how to spend the revenue raised by charging such fees.[9] The Complaint thus should be dismissed as implausible under Rule 12(b)(6).

## V. Plaintiffs' Statutory Consumer Protection Claims Fail on Multiple Grounds

### A. Plaintiffs' State Consumer Protection Claims Fail Because the Government Validly Authorized the Alleged Conduct

As a threshold matter, Plaintiffs' claims of unlawful and deceptive conduct under various state consumer protection statutes[10] cannot proceed because the alleged misconduct is expressly exempted from liability under the relevant statutes, each of which contains a safe harbor for government-authorized conduct.[11] As detailed above, *see supra* Section I.C., the U.S. Government validly authorized Booz Allen's conduct in operating Recreation.gov. Thus, any alleged misconduct is expressly excluded from the scope of the relevant statue statutes, and the claims

---

[9] This fact reveals the misguided nature of Plaintiffs' assertion that Recreation.gov "falsely leads consumers to believe they are paying the [so-called] Junk Fees to the Federal Agencies that administer those lands," Compl. ¶ 16—all of the fees that consumers pay on Recreation.gov *do* go to the federal agencies, *not* to Booz Allen.

[10] Plaintiffs assert claims under the Virginia Consumer Protection Act ("VCPA"); California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL"); Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"); the New York consumer protection law ("GBL § 349"); the New York false advertising law ("GBL § 350"); Utah's Consumer Sales Practices Act ("UCSPA"); and Washington's Consumer Protection Act ("WCPA").

[11] *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (safe harbor doctrine applies to CLRA, UCL, and FAL claims); Va. Code Ann. § 59.1-199(A); Fla. Stat. Ann. § 501.212(1)(a); N.Y. Gen. Bus. Law § 349(d); N.Y. Gen. Bus. Law § 350-d; Utah Code Ann. § 13-11-22(1)(a); Wash. Rev. Code Ann. § 19.86.170.

should be dismissed. *See, e.g.*, *Angiano v. Anheuser-Busch InBev Worldwide, Inc.*, 532 F. Supp. 3d 911, 917 (C.D. Cal. 2021) (dismissing CLRA, UCL, and FAL claims because "Defendants' judicially noticeable documents demonstrate[d] . . . that [the Treasury Department] approved the [disputed] label").

## B.     Plaintiffs Fail to Plausibly Allege Any State Consumer Fraud Claim

Where state consumer protection claims "sound in fraud" because they are premised on allegations of false misrepresentations or omissions, such claims must be pleaded with particularity under Rule 9(b). *See Myers v. Lee*, 2010 WL 2757115, at *2 (E.D. Va. July 12, 2010). Here, Plaintiffs' consumer protection claims involve myriad allegations that Booz Allen "deceptive[ly]" created "false misrepresentation[s]" and "omissions" to "create the appearance that [Recreation.gov is] run by the Federal Agencies, and not Booz Allen" and "trick[ed] consumers into paying Junk Fees by causing consumers to believe that the Junk Fees were being paid to the Federal Agencies." *See* Compl. ¶¶ 312–15, 332–34, 341–43, 351, 364–67, 394–96, 409–11, 432–33, 448–49. Accordingly, Rule 9(b) applies and requires Plaintiffs "to plead with particularity the circumstances constituting fraud," "includ[ing] the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013). Plaintiffs have failed to do so, and their claims fail on that basis alone. Moreover, the Complaint fails to plausibly allege the basic elements of any of their state statutory consumer protection claims—whether under Rule 9(b) or otherwise.

### 1.     Plaintiffs Fail to Plausibly Allege a Material Misrepresentation or Omission by Booz Allen that Would Deceive a Reasonable Consumer

To plead a plausible claim based on deceptive or misleading conduct, Plaintiffs must allege

misconduct that would deceive the "reasonable consumer"[12] and be material to the reasonable consumer.[13]  For materiality, Plaintiffs must allege that "a reasonable consumer would deem [the misrepresentation or omission] important in determining how to act in the transaction at issue." *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1113 (N.D. Cal. 2016); *see also In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 360 (S.D.N.Y. 2016) ("[A] material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.").  That means alleging that the statement is material to a "significant portion" of consumers, *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (Cal. Ct. App. 2003); "'isolated examples' of actual deception are insufficient," *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008).

Here, Plaintiffs allege that they "have been deceived by Defendants' acts," Compl. ¶ 316, of allegedly "[o]perating the recreation.gov website and App to create the appearance that they are run by the Federal Agencies, and not Booz Allen," *see, e.g., id.* ¶ 334(a), and "falsely lead[ing] consumers to believe that they are paying the [so-called] Junk Fees to the Federal Agencies that administer those lands, and not Booz Allen," *id.* ¶¶ 15–16, 181, 198, 213, 225, 236, 247, 259.

Yet, Plaintiffs do not allege whether or how these facts, even if true, would impact the

---

[12]    *See, e.g., Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (NY and CA claims must show conduct "likely to mislead a reasonable consumer acting reasonably under the circumstances"); *State v. Living Essentials, LLC*, 436 P.3d 857, 866 (Wash. App. Div. 1 2019) ("An act is deceptive [under the WCPA] if it is likely to mislead a reasonable consumer"); *State v. Beach Blvd Auto. Inc.*, 139 So. 3d 380, 387 (Fla. Dist. Ct. App. 2014) (FL claims must show conduct "likely to mislead consumers acting reasonably in the circumstances").

[13]    *See, e.g., Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018) (omission must be "material"); *Suero v. NFL*, 2022 WL 17985657, at *9 (S.D.N.Y. Dec. 16, 2022) (explaining "materially misleading" requirement); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 695 (S.D. Fla. 2014) (FL claims must show conduct "likely to mislead the consumer . . . that is, a probability, not simply a mere possibility, of deception"); *Padin v. Oyster Point Dodge*, 397 F. Supp. 2d 712, 722 (E.D. Va. 2005) (VA claims must show material fact); *Lisson v. Wells Fargo Bank, N.A.*, 2019 WL 3577859, at *7 (Wash. Ct. App. 2019) (addressing WCPA claims).

reasonable consumer's choice to use Recreation.gov. Moreover, any such allegation would be implausible because, as Plaintiffs themselves acknowledge, the "park access reservations" they were seeking were "exclusively available through recreation.gov," so the only way for a user to make those reservations and avoid paying such fees would be to forego making the reservation altogether. *See id.* ¶¶ 198, 213, 225 (acknowledging it would have been "futile" to contact the federal agencies directly).

Further, Plaintiffs must plead facts supporting a "*probability* that a *significant portion* of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019) (emphases added). But Plaintiffs have pled no facts that render it probable that a "significant portion" of reasonable consumers were supposedly misled into believing that no part the fees being charged by the federal agencies on Recreation.gov would be used to raise revenue for covering the costs of operating Recreation.gov. Indeed, the Complaint alleges no facts that reasonable consumers would have had any understanding at all about who charges, collects, or otherwise retains the fees.

### 2. Plaintiffs Fail to Plausibly Allege Reliance on Any Deceptive Conduct or that Any Deception Caused Their Alleged Harm

Each of Plaintiffs' consumer fraud claims also require them to plead reliance or causation. That is, in addition to pleading, on an objective basis, that the reasonable consumer would have been misled, Plaintiffs must also plausibly allege that they were personally and subjectively deceived.[14] Courts in each of the relevant jurisdictions routinely dismiss consumer fraud claims

---

[14]     *See Gurwell v. Sea World Parks & Ent. LLC*, 2021 WL 4168503, at *7 (E.D. Va. Aug. 11, 2021) (VCPA plaintiff must "plead actual reliance on a false statement or nondisclosure" that is "justified and reasonable"); *In re Sony Grand*, 758 F. Supp. 2d 1077, 1093 (S.D. Cal. 2010) (CA FAL claim "must allege actual reliance"); *Caribbean Cruise Line, Inc. v. Better Bus. Bureau*, 169 So. 3d 164, 166–67 (Fla. Dist. Ct. App. 2015) (FDUTPA plaintiff must be "aggrieved" by the

for failure to plausibly plead reliance or causation.[15]

But here, Plaintiffs each include only rote, formulaic recitations that, "[h]ad [they] known the true nature of Booz Allen's operation of recreation.gov and that the [so-called] Junk Fees were paid to Booz Allen and not the Federal Agencies, [they] would have instead contacted the relevant Federal Agencies directly to make [their] reservations to avoid paying the Junk Fees to Booz Allen." Compl. ¶¶ 181, 198, 213, 225, 236, 247, 259. These conclusory reliance and causation allegations, however, cannot sustain their consumer fraud claims. First, as discussed above, the fees about which Plaintiffs complain *were charged by, and paid to, the U.S. Government*, not Booz Allen. Second, Plaintiffs could not have "avoid[ed] paying" the fees if they wished to make their reservations because, as Plaintiffs themselves assert, "park access reservations" for the sites Plaintiffs wanted to visit "were exclusively available through recreation.gov." Compl. ¶¶ 198, 213, 225 (acknowledging it would have been "futile" to contact the federal agencies directly).

> **3.**     **Plaintiffs Fail to Plausibly Allege a Duty to Disclose or that Booz Allen's Role in Connection With Recreation.gov is Not Already Publicly Known**

To state a claim for an alleged failure to disclose, Plaintiffs must first allege facts

---

deceptive act); *Hartman v. Nationwide Mut. Ins. Co.*, 2010 WL 1952868, at *3 (Wash. Ct. App. 2010) (addressing WCPA claim); *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 706 (S.D.N.Y. 2019) (GBL § 349 claim "must show that the defendant's material deceptive act caused the injury").

[15]     *See Curtis v. Propel Prop. Tax Funding, LLC*, 2018 WL 717006, at *3 (E.D. Va. Feb. 5, 2018) (dismissing VCPA claim for failure to allege reliance); *McClellon v. Wells Fargo Advisors Fin. Network, LLC*, 2018 WL 3727598, at *2 (W.D. Wash. Aug. 6, 2018) (dismissing WCPA claim for failure to plead causation); *Sloma v. Mercedes-Benz USA, LLC*, 2009 WL 10675023, at *1, *3 (C.D. Cal. July 14, 2009) (dismissing UCL claims for failure to plead causation and reliance); *Kurimski v. Shell Oil Co.*, No. 2022 WL 2913742, at *12 (S.D. Fla. June 30, 2022) (dismissing FDUTPA claims for failure to allege causation); *Herrick v. Grindr LLC*, 765 F. App'x 586, 592–93 (2d Cir. 2019) (dismissing GBL § 350 claim for failure to allege reasonable reliance); *Lin v. Can. Goose US, Inc.*, 2022 WL 16926312, at *5 (S.D.N.Y. Nov. 14, 2022) (dismissing GBL § 349 claim for failure to allege causation); *Martinez v. Best Buy Co.*, 2012 UT App 186, 283 P.3d 521, 526 (dismissing UCSPA claims due to failure to allege reliance).

establishing the existence of a special factual circumstance, such as "exclusive knowledge" by Booz Allen of the information purportedly omitted, giving rise to a cognizable duty to disclose that information. *See, e.g.*, *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (dismissing consumer fraud case where plaintiff could not "show the allegedly omitted information is within the exclusive knowledge of" defendant).

Here, the Complaint contains no such allegations, dooming Plaintiffs' claims based on an alleged failure to disclose. Plaintiffs' state consumer protection claims are also based on the allegation that Booz Allen failed to disclose to the public its role in connection with Recreation.gov, including its "operation of recreation.gov" and of the so-called "Junk Fees . . . paid to it," as opposed to the government. *See, e.g.*, Compl. ¶¶ 65, 271(m). Nowhere do Plaintiffs allege an implied representation that would trigger a duty to disclose. Nor do Plaintiffs allege a fiduciary or a special relationship with the public users of Recreation.gov. Plaintiffs also do not allege that any of the information allegedly omitted by Booz Allen was exclusively known by the company. Nor could they. Plaintiffs' claims predicated on Booz Allen's alleged failure to disclose its operation of Recreation.gov are contradicted by Plaintiffs' allegations that "Booz Allen predominantly features its 'reinvention' and operation of recreation.gov on its own corporate website," Compl. ¶ 49; *see also id.* ¶ 45 ("According to Booz Allen's corporate website, Booz Allen took over operation of recreation.gov in October 2018."), and Plaintiffs' reliance on publicly available, online newsletters and leading publications like *The Wall Street Journal* discussing Booz Allen's operation of Recreation.gov. *See* ECF 1-3; ECF 1-4 at 3. In addition, the *Kotab* decision itself discusses how "Booz Allen . . . manag[es] the recreation.gov reservation system." *Kotab*, 595 F. Supp. 3d at 951. There was accordingly nothing "exclusive" about Booz Allen's knowledge; it was publicized and available for all to see, including on the company's own website.

Second, Plaintiffs' claims premised on Booz Allen's alleged failure to disclose the manner in which it is paid for its reservation services fare no better. That certain agencies collect fees to cover the costs of using Recreation.gov is disclosed even in the materials attached to the Complaint, as well as other judicially noticeable and public materials detailed above, including the *Kotab* decision, which defies the notion that it was within the "exclusive" purview of Booz Allen. 595 F. Supp. 3d at 950 ("This fee-management contract permits third party Booz Allen to charge [the government] a commission for its services on a per-reservation basis . . . ."). In short, Plaintiffs "cannot plausibly allege that [Booz Allen] is liable for failing to disclose . . . information that was already public." *See Hauck v. Advanced Micro Devices, Inc.*, 2019 WL 1493356, at *13 (N.D. Cal. Apr. 4, 2019), *aff'd*, 816 F. App'x 39 (9th Cir. 2020).[16]

### 4. Plaintiffs Cannot Assert Claims Under the VCPA Because No Plaintiff Resides or Was Injured in Virginia

Plaintiffs cannot assert claims under the VCPA in Counts IV and V because Plaintiffs—residents of California, Florida, New York, Utah, and Washington—neither reside in Virginia nor suffered any alleged harm in Virginia. *See* Compl. ¶¶ 169–70, 185, 200, 215, 227, 238, 250. "[T]he Virginia Supreme Court has consistently held that it is the place of the wrong (lex loci delicti) that determines which State's substantive law applies in a tort action brought in Virginia." *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986). Accordingly, "[d]istrict courts within the Fourth Circuit have consistently held that plaintiffs do not have standing to bring claims

---

[16]    *See also, e.g.*, *Barrett v. Milwaukee Elec. Tool, Inc.*, 2016 WL 4595947, at *5 (S.D. Cal. Jan. 26, 2016) (relying on disclosures in "video posted on defendant's website" and cited in plaintiff's complaint to reject claim that plaintiff was deceived by defendant's ad); *Wolph v. Acer Am. Corp.*, 2009 WL 2969467, at *4 (N.D. Cal. Sept. 14, 2009) (dismissing failure-to-disclose claim where complaint's own allegations showed that the underlying information was published in an article in *Computer World* prior to purchase); *Selbe v. United States*, 899 F. Supp. 1524, 1526 (W.D. Va. 1995) (sale disclosed "in the public records . . . was hardly concealed").

under the statutes or laws of a state where they: (1) do not reside; and, (2) have not been harmed." *Knapp v. Zoetis Inc.*, 2021 WL 1225970, at *9 (E.D. Va. Mar. 31, 2021). "Otherwise, a plaintiff would be able to bring a class action complaint under the laws of nearly every state in the Union without having to allege concrete, particularized injuries relating to those states, thereby dragging defendants into expensive nationwide class discovery, potentially without a good-faith basis." *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *10 (D.N.J. Oct. 20, 2011).[17]

Because Plaintiffs allege *no facts*, plausible or otherwise, that they suffered any injury in Virginia, their VCPA claims should be dismissed. *See Pitts v. Volkswagen Grp. of Am., Inc.*, 2021 WL 503710, at *3 (E.D. Va. Feb. 10, 2021) (dismissing VCPA claim where no plaintiff resided, purchased a vehicle, or suffered any alleged injury in Virginia); *Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399, 409 (D. Md. 2012) (dismissing consumer protection claims asserted under the laws of five states "[b]ecause the injury to the named plaintiff occurred in Maryland, [and thus] she has no standing to sue under any state consumer protection law except for Maryland").

> **5.    Plaintiff Lauritzen's Unlawful and Deceptive UCSPA Claims Fail to Allege Intentional or Knowing Behavior**

Plaintiff Lauritzen's UCSPA claims predicated on unlawful and deceptive conduct also fail because he does not allege that Booz Allen acted with the requisite scienter. "Utah courts and courts employing Utah law have consistently recognized intent as an element of a UCSPA claim." *Martinez*, 2012 UT App 186, ¶ 4, 283 P.3d at 523–24. Lauritzen's allegation that Booz Allen acted in violation of the UCSPA "fails as a matter of law because [he] has not sufficiently pled a

---

[17]    *Accord Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 489–90 (4th Cir. 2007) ("The principle that state laws may not generally operate extraterritorially is one of constitutional magnitude. One state may not project its legislation into another, as the Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State.").

required element of the statute, that [Booz Allen] committed a deceptive act or practice 'knowingly or intentionally.'" *Kee v. R-G Crown Bank*, 656 F. Supp. 2d 1348, 1356 (D. Utah 2009) (quoting Utah Code Ann. § 13-11-4(2)). Thus, his UCSPA claims should be dismissed.

### 6. Plaintiffs Fail to Plausibly Allege Unfair or Unconscionable Conduct

Finally, to the extent Plaintiffs purport to allege "unfairness" claims under the UCL, FDUTPA, or WCPA, or an "unconscionable" claim under the FDUTPA, they do not adequately allege such claims. The Complaint offers only conclusory legal allegations of an "unfair" or "unconscionable" practice, devoid of any facts or explanation of *what* about Booz Allen's practices is alleged to be unfair or unconscionable. *See, e.g.*, Compl. ¶¶ 292, 332–34, 342, 351, 364–65, 448–49. Courts routinely dismiss such conclusory, tagalong unfairness and unconscionability claims when they lack supporting factual contentions. *See, e.g.*, *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020) (dismissing UCL unfairness claims where "complaint left the district court to guess what conduct Plaintiffs alleged satisfied the 'unfair' prong of the UCL"); *Murphy v. Twitter, Inc.*, 274 Cal. Rptr. 3d 360, 378 (Cal. Ct. App. 2021) (dismissing "conclusory allegations of substantive unconscionability . . . [with] no specific factual allegations").

## VI. Plaintiffs' Claims for Unjust Enrichment Fail

Plaintiffs' unjust enrichment claims cannot proceed either. First, "California law does not recognize an independent cause of action for unjust enrichment." *Klaehn v. Cali Bamboo LLC*, 2022 WL 1830685, at *2 (9th Cir. June 3, 2022); *see also In re Interior Molded Doors Antitrust Litig.*, 2019 WL 4478734, at *22 (E.D. Va. Sept. 18, 2019) ("[T]he weight of authority in California state and federal court decisions is that unjust enrichment does not state an independent claim under California law."). Thus, at minimum, the California Class cannot assert such a claim. More importantly, Plaintiffs premise their unjust enrichment claims on the same allegations underlying their consumer fraud claims—*i.e.*, that Booz Allen "knowingly received and retained

34

wrongful benefits and funds from Plaintiffs . . . by charging them unlawful [so-called] Junk Fees," Compl. ¶ 288—they fail for the same reasons as the fraud claims. *See, e.g.*, *Gurwell*, 2021 WL 4168503, at *13 (dismissing unjust enrichment claims "based in fraud" for "fail[ure] to satisfy" Rule 9(b)).

Moreover, Plaintiffs' unjust enrichment claims are equitable in nature, and thus "available only where there is not [an] adequate remedy at law." *Garcia v. Volkswagen Grp. of Am., Inc.*, 2022 WL 2542291, at *11 (E.D. Va. July 7, 2022).[18] Where, as here, Plaintiffs allege that they are entitled to myriad legal remedies, their unjust enrichment claims are unavailable under state law. *See Corsello*, 967 N.E.2d at 1185 ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."). "[U]njust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* Courts dismiss unjust enrichment claims as duplicative even while simultaneously dismissing consumer fraud claims. *See, e.g.*, *Smith v. Apple, Inc.*, 583 F. Supp. 3d 554, 569 (S.D.N.Y. 2022) (dismissing unjust enrichment claim where it is not distinct from their other claims").

## VII. The Court Should Dismiss All Claims Against the Unnamed "Doe" Defendants

The Complaint names as additional defendants "Does 1-20," and alleges they "are individuals and/or entities who operate [R]ecreation.gov and/or the [R]ecreation.gov App with

---

[18]    *Accord BMF Advance, LLC v. Litiscape, LLC*, 2022 WL 1307830, at *5 (D. Utah May 2, 2022) (dismissing unjust enrichment claim because plaintiff failed to "affirmatively show a lack of an adequate remedy at law on the face of the pleading"); *William Insulation Co. Inc. v. JH Kelly LLC*, 2021 WL 1894092, at *7 (W.D. Wash. May 11, 2021) (dismissing unjust enrichment claim despite "inadequacy of its statutory remedy"); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007) ("no occasion for . . . unjust enrichment" given consumer fraud statutes); *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (similar).

Booz Allen whose identities are not presently known to Plaintiffs." Compl. ¶ 34. The Court should dismiss the Complaint as to these unnamed plaintiffs, too. "John Doe suits are permissible only against real, but unidentified, defendants." *Chidi Njoku v. Unknown Special Unit Staff*, 217 F.3d 840, 2000 WL 903896, at *1 (4th Cir. 2000). "The designation of a John Doe defendant is generally not favored in the federal courts." *Id.* When a plaintiff "name[s] parties by fictitious names," the complaint must "provide an adequate description of some kind which is sufficient to identify the person involved so that process can be served." *Williams v. Burgess*, 2010 WL 1957105, at *2 (E.D. Va. May 13, 2010).

Here, Plaintiffs fail to allege any specific facts regarding the Doe defendants and their alleged conduct that supposedly forms the basis of Plaintiffs' claims against them. This failure compels dismissal. *See Woodard v. Harrison*, 2011 WL 13209646, at *1 (E.D.N.C. Apr. 4, 2011) (dismissing Does for failure to plead specific acts by, or allegations against, them); *Williams*, 2010 WL 1957105, at *2 (similar). Further, the aforementioned grounds for dismissal as applied to Booz Allen would apply to any such Doe defendants—for instance, any individuals who operate Recreation.gov would be equally entitled to derivate sovereign immunity as employees of the contractor, and the claims against them would be dismissed on this basis as well. *See Cunningham*, 990 F.3d at 368 (employees of government contractor entitled to same derivative sovereign immunity as employer).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated:  March 10, 2023                 Respectfully submitted,

*/s/* Ian S. Hoffman
Ian S. Hoffman (VA Bar # 75002)
Sonia Tabriz (VA Bar # 85822)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, DC 20001-3743
Tel.: 202.942.5000
Fax: 202.942.5999
Ian.Hoffman@arnoldporter.com
Sonia.Tabriz@arnoldporter.com

Lori B. Leskin (*pro hac vice*)
Elie Salamon (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel.: 212.836.8000
Fax: 212.836.8689
Lori.Leskin@arnoldporter.com
Elie.Salamon@arnoldporter.com

*Counsel for Booz Allen Hamilton Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of March 2023, I caused the foregoing to be filed electronically using the Court's CM/ECF system, which automatically sent a notice of electronic filing to all counsel of record.

*/s/* Ian S. Hoffman
Ian S. Hoffman (VA Bar # 75002)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, DC 20001-3743
Tel.: 202.942.5000
Fax: 202.942.5999
Ian.Hoffman@arnoldporter.com

*Counsel for Booz Allen Hamilton Inc.*