**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| ROBYN WILSON, TAMERA STREETER, DANA OLIVER, KIRSTEN JONES, NATALIA LOGINOVA, JOSH BERGER, and NICK LAURITZEN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> BOOZ ALLEN HAMILTON, INC. and DOES 1-20, <br><br> Defendants. | Case No: 1:23-cv-00043-PTG-IDD |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

SUMMARY OF FACTUAL ALLEGATIONS ...................................................................3

    A.    Plaintiffs Challenge Booz Allen's Deceptive and Unlawful Operation of Recreation.gov. ......................................................................................................3

    B.    Booz Allen's Request for Dismissal. ....................................................................5

          1.    The Incomplete Contract..........................................................................5

          2.    The Incomplete RFP. ...............................................................................6

          3.    The Travers Declaration. ..........................................................................7

ARGUMENT .......................................................................................................................7

    A.    Booz Allen Is Not Entitled to Derivative Sovereign Immunity.............................7

          1.    Legal Standard. ........................................................................................7

          2.    Plaintiffs' Allegations Challenge Booz Allen's Discretionary Acts, Defeating Derivate Sovereign Immunity. ...................................................8

               a.    Booz Allen Operates Recreation.gov with Broad Discretion. ..................................................................................8

               b.    The Exhibits to Booz Allen's Motion Support Plaintiffs' Detailed Factual Allegations, Not Booz Allen's Attacks. .............10

                    i.    The Contract Confirms Plaintiffs' Allegations that Booz Allen Operates Recreation.gov with Broad Discretion. .......................................................................11

                    ii.    Contrary to Booz Allen's Claims, the Contract Confirms that Booz Allen Charges the Fees on Recreation.gov. ...............................................................12

                    iii.    The Primary Sections of the Contract Governing Fees Are Not in the Record Before this Court..................13

          3.    The Authority to Charge Junk Fees Was Not Validly Conferred to Booz Allen. .........................................................................................15

               a.    Under FLREA's Express Terms, Only the Secretary of the Department of Agriculture and the Secretary of the Department of the Interior Could Award a Fee Management Contract. ..................................................................15

               b.    FLREA Only Authorized a Contract Through September 30, 2019.....................................................................................17

               c.    The Federal Land Management Agencies Could Not Authorize Booz Allen to Charge Fees that Violate Federal Law. ..........................................................................................18

| | 4. | Booz Allen Cannot Invoke Derivative Sovereign Immunity Over Claims for Prospective Relief because the United States Has Waived Immunity. | 19 |
|---|---|---|---|
| | 5. | Plaintiffs Were Not Required to Allege that Booz Allen Exceeded Its Authority Under the Contract. | 20 |
| | 6. | Derivative Sovereign Immunity Turns on Factual Questions, and Dismissal at the Pleading Stage Is Not Appropriate. | 21 |
| B. | | Booz Allen's Arguments Under 12(b)(7), which Seek "Drastic Remedies," Also Fail. | 22 |
| | 1. | Legal Standard. | 22 |
| | 2. | The "Various Federal Agencies" Are Not Necessary Parties Under Rule 19(a). | 23 |
| | | a. Plaintiffs Do Not Seek Any Relief Against the Government. | 23 |
| | | b. Booz Allen Has Failed to Introduce Any Evidence that Any Government Agency Claims Any Interest in this Action. | 25 |
| | 3. | The "Various Federal Agencies" Can be Added as Parties. | 25 |
| | | a. Booz Allen Could Add the Agencies as a Third-Party Defendant. | 25 |
| | | b. Plaintiffs Could Add the Agencies in an Amended Pleading. | 26 |
| | | c. The Agencies Could Intervene Under Rule 24. | 26 |
| C. | | Plaintiffs' Allegations Establish Standing. | 27 |
| D. | | The "Doe" Allegations Are Properly Alleged. | 28 |
| E. | | Plaintiffs' Specific Causes of Action Are Adequately Alleged. | 28 |
| | 1. | Plaintiffs' Allegations Are Subject to Rule 8 because Plaintiffs' Claims Sound in Deception, Not Fraud. | 28 |
| | 2. | Plaintiffs' Allegations Explicitly Allege the "Who, What, When, Where, and How," Easily Satisfying Rule 9. | 29 |
| | 3. | Booz Allen Cannot Escape Liability Under State Safe Harbor Provisions. | 30 |
| | 4. | Plaintiffs Adequately Allege Materiality, Reliance, and Causation. | 31 |
| | 5. | Plaintiffs Properly Allege Liability Based on Material Omissions. | 32 |
| | 6. | Plaintiffs Also Allege Unfair and Unconscionable Conduct. | 33 |
| | 7. | Booz Allen's Additional Attacks on Plaintiffs' Virginia UDAP Claims Fail. | 34 |

8.      Booz Allen's Additional Attack on Plaintiff's Utah UDAP Claims
        Fail. .................................................................................................................35

9.      Plaintiffs Have Adequately Alleged a Claim for Unjust
        Enrichment. .....................................................................................................35

F.      Plaintiffs Can Amend to Cure Any Supposed Deficiencies. ..................................36

CONCLUSION .......................................................................................................................36

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*ACT, Inc. v. Worldwide Interactive Network, Inc.*,
    46 F.4th 489 (6th Cir. 2022) ........................................................................................ 8

*Adams v. Alliant Techsystems, Inc.*,
    201 F. Supp. 2d 700 (W.D. Va. 2002) ...................................................................... 8

*Agnew v. United Leasing Corp.*,
    2015 WL 13388299 (E.D. Va. May 20, 2015) ...................................................... 14

*Al Shimari v. CACI Int'l, Inc.*,
    679 F.3d 205 (4th Cir. 2012) .................................................................................... 24

*Al Shimari v. CACI Premier Tech., Inc.*,
    368 F. Supp. 3d 935 (E.D. Va. 2019) ...................................................................... 19

*Al Shimari v. CACI Premier Tech., Inc.*,
    775 F. App'x 758 (4th Cir. 2019) .............................................................................. 8

*Am. Gen. Life & Accident Ins. Co. v. Wood*,
    429 F.3d 83 (4th Cir. 2005) .............................................................................. 22, 25

*Anchorage v. Integrated Concepts & Rsch. Corp.*,
    1 F. Supp. 3d 1001 (D. Alaska 2014) .............................................................. 20, 24

*Ancient Coin Collectors Guild v. U.S. Customs & Border Prot., Dep't of Homeland Sec.*,
    698 F.3d 171 (4th Cir. 2012) .................................................................................... 18

*Badilla v. Midwest Air Traffic Control Serv., Inc.*,
    8 F.4th 105 (2d Cir. 2021) .......................................................................................... 8

*Ballaugh v. Faubert Enters., Inc.*,
    290 Va. 120 (2015) .................................................................................................... 34

*Brinkman v. John Crane, Inc.*,
    2015 WL 13427697 (E.D. Va. June 11, 2015) ...................................................... 15

*Bruton v. Gerber Prods. Co.*,
    703 F. App'x 468 (9th Cir. 2017) ............................................................................ 35

*Butters v. Vance Int'l, Inc.*,
    225 F.3d 462 (4th Cir. 2000) .................................................................................... 24

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,
    797 F.3d 720 (9th Cir. 2015) ...................................................................................... 8

*Campbell-Ewald Co. v. Gomez*,
    577 U.S. 153 (2016) .................................................................................................... 9

*Cap. One Consumer Data Sec. Breach Litig.*,
    488 F. Supp. 3d 374 (E.D. Va. 2020) ................................................................ 33

*Carolina Trucks & Equipment, Inc. v. Volvo Trucks of N. Am., Inc.*,
    492 F.3d 484 (4th Cir. 2007) .......................................................................... 35

*Catalano v. BMW of N. Am., LLC*,
    167 F. Supp. 3d 540 (S.D.N.Y. 2016) ........................................................... 33

*Childs v. San Diego Fam. Hous. LLC*,
    22 F.4th 1092 (9th Cir. 2022) .......................................................................... 7

*Clarendon Regency IV, LLC v. Equinox Clarendon, Inc.*,
    2021 WL 4477276 (E.D. Va. Sept. 30, 2021) ................................................ 24

*Cobell v. Norton*,
    240 F.3d 1081 (D.C. Cir. 2001) ....................................................................... 19

*Cohen v. JP Morgan Chase & Co.*,
    498 F.3d 111 (2d Cir. 2007) ........................................................................... 32

*Commonwealth of Puerto Rico v. United States*,
    490 F.3d 50 (1st Cir. 2007) ............................................................................ 19

*Corcoran v. Peleus Ins. Co.*,
    2021 WL 3472664 (D. Md. Aug. 6, 2021) ..................................................... 25

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
    888 F.3d 640 (4th Cir. 2018) ..................................................................... 9, 23

*D.R. Horton, Inc. v. Landbank Fund VIII, LLC*,
    2009 WL 10678196 (D.S.C. June 4, 2009) ................................................... 24

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012) ................................................................ 30, 32

*DeBrew v. Atwood*,
    792 F.3d 118 (D.C. Cir. 2015) ....................................................................... 20

*Delano Farms Co. v. Cal. Table Grape Com'n*,
    655 F.3d 1337 (Fed. Cir. 2011) ...................................................................... 19

*Dreher v. Budget Rent-A-Car Sys., Inc.*,
    272 Va. 390 (2006) ........................................................................................ 35

*E.E.O.C. v. Peabody W. Coal Co.*,
    610 F.3d 1070 (9th Cir. 2010) ........................................................................ 26

*Fitzpatrick v. Gen. Mills, Inc.*,
    635 F.3d 1279 (11th Cir. 2011) ...................................................................... 31

*Florian v. Sequa Corp.*,
    2002 WL 31844985 (N.D. Ill. Dec. 18, 2002) .............................................. 27

*FMW/MJH at 2604 Hillsborough LLC v. WSA Constr., LLC*,
   2014 WL 6476187 (W.D.N.C. Nov. 19, 2014) ..................................................... 36

*Gavron v. Weather Shield Mfg., Inc.*,
   819 F. Supp. 2d 1297 (S.D. Fla. 2011) ............................................................ 32

*Gentry v. Hyundai Motor Am., Inc.*,
   2017 WL 354251 (W.D. Va. Jan. 23, 2017) ..................................................... 11

*Gordon v. Impulse Marketing Group, Inc.*,
   375 F.Supp.2d 1040 (E.D. Wash. 2005) ........................................................... 29

*Grays Harbor Adventist Christian School v. Carrier Corp.*,
   242 F.R.D. 568 (W.D. Wash. 2007) ................................................................. 33

*Hoye v. Lt. Gilmore*,
   2016 WL 3512275 (W.D. Va. June 20, 2016) .................................................. 15

*In re Cap. One Consumer Data Sec. Breach Litig.*,
   488 F. Supp. 3d 374 (E.D. Va. 2020) ............................................................... 29

*In re KBR, Inc., Burn Pit Litig.*,
   744 F.3d 326 (4th Cir. 2014), *cert. denied*, 574 U.S. 1120 (2015) ............... 7, 8, 21

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*,
   928 F.3d 42 (D.C. Cir. 2019) ............................................................................ 7

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*,
   928 F.3d at 70 ................................................................................................... 19

*Johnson v. Blendtec, Inc.*,
   500 F. Supp. 3d 1271 (D. Utah 2020) ............................................................... 31

*Johnson v. Lendlease (US) Pub. Partnerships LLC*,
   2022 WL 2447091 (E.D.N.C. July 5, 2022) .................................................. 20, 22

*Jones v. Shooshan*,
   855 F. Supp. 2d 594 (E.D. Va. 2012) ............................................................... 16

*Koch v. Acker, Merrall & Condit Co.*,
   944 N.Y.S. 2d 452 (2012) ................................................................................. 31

*Kotab v. Bureau of Land Mgmt.*,
   546 F. Supp. 3d 1012 (D. Nev. 2021) ............................................................... 26

*Kotab v. Bureau of Land Mgmt.*,
   595 F. Supp. 3d 947 (D. Nev. 2022) ............................................................ *passim*

*Laber v. Harvey*,
   438 F.3d 404 (4th Cir. 2006) ............................................................................ 36

*Latman v. Costa Cruise Lines*,
   758 So. 2d 699 (Fla. Dist. Ct. App. 2000) ........................................................ 33

vi

*Lewis v. Mercedes-Benz USA, LLC,*
  530 F. Supp. 3d 1183 (S.D. Fla. 2021) ............................................................ 29

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ......................................................................................... 27

*Marina One, Inc. v. Jones,*
  29 F. Supp. 3d 669 (E.D. Va. 2014) ................................................................. 25

*Medina v. United States,*
  259 F.3d 220 (4th Cir. 2001) ............................................................................ 18

*Menocal v. GEO Grp., Inc.,*
  2022 WL 17038977 (D. Colo. Oct. 18, 2022) ................................................. 20

*Michigan v. U.S. Army Corps of Engineers,*
  667 F.3d 765 (7th Cir. 2011) ............................................................................ 19

*Miller v. Brown,*
  462 F.3d 312 (4th Cir. 2006) ............................................................................ 27

*Monarch Assurance, P.L.C. v. United States,*
  244 F.3d 1356 (Fed. Cir. 2001) ........................................................................ 17

*Muniz-Muniz v. U.S. Border Patrol,*
  741 F.3d 668 (6th Cir. 2013) ............................................................................ 19

*Nahigian v. Juno Loudoun, LLC,*
  684 F. Supp. 2d 731 (E.D. Va. 2010) ............................................................... 30

*Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.,*
  210 F.3d 246 (4th Cir. 2000) ............................................................................ 23

*Navajo Nation v. Dep't of the Interior,*
  876 F.3d 1144 (9th Cir. 2017) .......................................................................... 19

*Nigh v. Koons Buick Pontiac GMC, Inc.,*
  143 F. Supp. 2d 535 (E.D. Va. 2001) ............................................................... 29

*Owens-Illinois, Inc. v. Meade,*
  186 F.3d 435 (4th Cir. 1999) ............................................................................ 22

*Panag v. Farmers Ins. Co. of Washington,*
  166 Wash. 2d 27 (2009) .................................................................................... 32

*Pelman ex rel. Pelman v. McDonald's Corp.,*
  396 F.3d 508 (2d Cir. 2005) ............................................................................. 29

*Perry Capital LLC v. Mnuchin,*
  864 F.3d 591 (D.C. Cir. 2017) .......................................................................... 19

*Peterson Builders, Inc. v. A.C. Hoyle Co.,*
  163 F.R.D. 550 (E.D. Wis. 1995) ..................................................................... 27

*Pitts v. Volkswagen Grp. of Am., Inc.*,
  2021 WL 503710 (E.D. Va. Feb. 10, 2021) ............................................ 35

*Poole v. Pass*,
  351 F. Supp. 2d 473 (E.D. Va. 2005) .................................................... 28

*Ravensburger Interactive Media GmbH v. Bethesda Softworks LLC*,
  2006 WL 8457055 (D. Md. Oct. 6, 2006) .............................................. 24

*Red Lake Band of Chippewa Indians v. Barlow*,
  846 F.2d 474 (8th Cir. 1988) .............................................................. 19

*Rock the Vote v. Trump*,
  2020 WL 6342927 (N.D. Cal. Oct. 29, 2020) ........................................ 16

*Salim v. Mitchell*,
  183 F. Supp. 3d 1121 (E.D. Wash. 2016) ............................................. 10

*Schism v. United States*,
  316 F.3d 1259 (Fed. Cir. 2002) ........................................................... 17

*Scott v. J.P. Morgan Chase & Co.*,
  296 F. Supp. 3d 98 (D.D.C. 2017) ....................................................... 21

*Shore v. Charlotte-Mecklenburg Hosp. Auth.*,
  412 F. Supp. 3d 568 (M.D.N.C. 2019) ................................................. 12

*Sierra Club v. United States Dep't of the Interior*,
  899 F.3d 260 (4th Cir. 2018) .............................................................. 28

*Simmat v. U.S. Bureau of Prisons*,
  413 F.3d 1225 (10th Cir. 2005) ........................................................... 19

*Thompson v. U.S. Dep't of Hous. & Urban Dev.*,
  2006 WL 581260 (D. Md. Jan. 10, 2006) ............................................. 19

*Treasurer of New Jersey v. U.S. Dept. of Treasury*,
  684 F.3d 382 (3d Cir. 2012) ............................................................... 19

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
  525 F.3d 370 (4th Cir. 2008) .............................................................. 29

*United States v. Cecil*,
  836 F.2d 1431 (4th Cir. 1988) ............................................................ 15

*Valley Acceptance Corp. v. Glasby*,
  230 Va. 422 (1985) ........................................................................... 34

*Vangjeli v. Banks*,
  2020 WL 5880131 (E.D. Pa. Oct. 2, 2020) ........................................... 15

*Vernon v. Qwest Commc'ns Int'l, Inc.*,
  643 F. Supp. 2d 1256 (W.D. Wash. 2009) ............................................ 31

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ............................................................... 29

*Zak v. Chelsea Therapeutics Int'l, Ltd.,*
    780 F.3d 597 (4th Cir. 2015) ............................................................... 11

*Zaycer v. Sturm Foods, Inc.,*
    896 F. Supp. 2d 399 (D. Md. 2012) ...................................................... 35

**STATUTES**

16 U.S.C. §§ 6801 *et seq. ("FLREA")* .................................................. *passim*

5 U.S.C. §§ 701 *et seq (the "APA").* ......................................................... 19

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ............................................ *passim*

Cal. Bus. & Prof. Code §§ 17500 *et seq.* ............................................ *passim*

Cal. Civ. Code §§ 1750 *et seq.* ............................................................. *passim*

Fla. Stat. §§ 501.201 *et seq.* ................................................................ *passim*

N.Y. Gen. Bus. Law §§ 349-350d ......................................................... *passim*

Utah Code Ann. §§ 13-11-1 *et seq* ........................................................ *passim*

Va. Code §§ 59.1-196 *et seq* ................................................................ *passim*

Wash. Rev. Code Ann. §§ 19.86.020 *et seq.* ........................................ *passim*

**RULES**

Fed. R. Civ. P. 8 .................................................................................... *passim*

Fed. R. Civ. P. 9 .................................................................................... 29, 30

Fed. R. Civ. P. 12 .................................................................................. *passim*

Fed. R. Civ. P 14 ................................................................................... 26

Fed. R. Civ. P. 19 .................................................................................. 23, 25

Fed. R. Civ. P. 24 .................................................................................. 27

## **INTRODUCTION**

The Recreation.gov "website is a total scam," it's "sinister," and a "Congressional subpoena is in order" to determine "exactly how much are DC consultants making" from its operation.[1]  These are bold, powerful statements.  And their importance is amplified by their source:  The United States Secretary of the Interior who was in office when the Recreation.gov contract was awarded to Booz Allen Hamilton, Inc. ("Booz Allen").  Critically, the Secretary's statements also directly refute Booz Allen's primary defense in its Motion to Dismiss—"the government made me do it."

Booz Allen's arguments are premised on its fundamental and self-serving mischaracterization of Plaintiffs' Complaint.  As Plaintiffs' detailed allegations make abundantly clear, this is a case about Booz Allen's independent conduct—conduct that it chose to undertake in the exercise of its contractual discretion—not its mere execution of the government's specific marching orders.  Indeed, Booz Allen's own Motion and the exhibits on file confirm that:

- ***Booz Allen*** designed, "reinvent[ed]," and "***built [Recreation.gov] from scratch.***"  ECF No. 1 ("Complaint" or "Compl.") Ex. D (emphasis added).

- "***Booz Allen operates*** Recreation.gov."  ECF No. 23 ( "Mot.") at 11 (emphasis added).

- ***Booz Allen sets*** Junk Fee rates on Recreation.gov:  "the Government should note several key aspects of ***our fee structure*** . . . ."  Griffith Decl. Ex. 4 at 207 (emphasis added).

- ***Booz Allen charges*** consumers the Junk Fees:  "[t]he Contractor shall provide . . . payment processing [and] collection of all types of fees."  Mot. Ex. A. at 148-49.

- ***Booz Allen keeps*** the Junk Fee revenue for itself:  the "revenue derived from reservation fees is remitted to BAH".   Mot. Ex. C ¶ 10; *see also id.* (The Recreation.gov "contract

---

[1] Declaration of Wesley M. Griffith ("Griffith Decl.") at Exs. 6, 7; *see also id.* at Exs. 8, 9.

with BAH is funded through reservation fees paid by customers making reservation transactions via the online Recreation.gov web portal . . . .").

- **And "[n]o part of the processing fee charged by Recreation.gov for the platform provided is remitted to the [Federal Agencies]."** Compl. Ex. J (emphasis added).

Critically, these actions *by Booz Allen*, and not the government, are what deceived Plaintiffs and the putative classes, and it is also these actions by Booz Allen that caused Plaintiffs to pay Junk Fees via Recreation.gov to Booz Allen. While Booz Allen insists that the government directed its conduct, tellingly, it fails to identify a single contractual provision that required these deceptive practices and unlawful acts. In fact, the government's instruction was directly to the contrary: Booz Allen "must comply in all material respects with the requirements of law [and] regulation" in operating Recreation.gov. Mot. Ex. B at 64.

As further detailed in the Argument Section below, Booz Allen's Motion also fails for numerous additional reasons. **Section A** details that Booz Allen is not entitled to derivative sovereign immunity because it operates Recreation.gov with broad discretion, because the Recreation.gov contract was not lawfully authorized, and because the government itself has waived its own immunity under the Administrative Procedures Act. **Section B** refutes Booz Allen's claims that dismissal under Rule 12(b)(7) is required, including because if the government believes its interests are implicated in this action, it can simply seek to intervene. **Sections C and D** show that Plaintiffs have standing and that at this early stage of the litigation, the "Doe" defendants are properly alleged. **Section E** addresses Booz Allen's attacks on Plaintiffs' state law claims and shows that, under either Rule 8 or Rule 9(b), each has been sufficiently pled. Finally, **Section F** concludes by noting that any supposed deficiencies can easily be cured in an amended pleading, which Plaintiffs are certainly entitled to file under controlling Fourth Circuit precedent.

Put simply, Booz Allen's arguments are without merit, and for the reasons set forth in this Opposition, those arguments should be rejected in their entirety.

**SUMMARY OF FACTUAL ALLEGATIONS**

**A.   Plaintiffs Challenge Booz Allen's Deceptive and Unlawful Operation of Recreation.gov.**

Plaintiffs' Complaint is clear, "[t]his case is about holding Booz Allen—a multibillion dollar for profit federal contractor—responsible for forcing American consumers to pay Ticketmaster-style Junk Fees to access National Parks and other federal recreational lands." Compl. ¶ 1.  The crux of Plaintiffs' claims challenge Booz Allen's operation of Recreation.gov "to deceptively create the appearance that it is run by the Federal Agencies" and to "lead[] consumers to believe that they are paying the Junk Fees to the Federal Agencies that administer those lands, and not Booz Allen."  Compl. ¶¶ 49, 16.

Among other things, the Complaint contains detailed factual allegations (supported by evidence) about how Recreation.gov was designed, "reinvent[ed]," and "built . . . from scratch" by Booz Allen.  *E.g.*, Compl. ¶¶ 49, 159, 349; *id.* at Ex. D at 3.  And further explains how in "reinventing" Recreation.gov, Booz Allen made website design decisions, such as predominantly featuring the official insignias of 13 federal land management agencies on each page of the website (¶¶ 49-58), to create the appearance that the website was run by the government, while obscuring its own involvement:

> 59.   In fact, when "Booz Allen" or "Booz Allen Hamilton" is typed in to the recreation.gov search menu, it reflects "[n]o matching results found":



3

Compl. ¶ 59.

Plaintiffs' allegations also highlight how Booz Allen's operation of Recreation.gov systemically violates the Federal Lands Recreation Enhancement Action, 16 U.S.C. §§ 6801, *et seq.* ("FLREA"), which was passed by Congress to dramatically reduce the circumstances in which recreation fees could be charged on federal land. *See, e.g.*, Compl. ¶¶ 72-90; *id.* at Ex. A (attaching *Kotab v. Bureau of Land Mgmt.,* 595 F. Supp. 3d 947 (D. Nev. 2022), which found on a full evidentiary record that certain Junk Fees on Recreation.gov violate FLREA).

Plaintiffs' robust factual allegations span over 100 pages and are supported by dozens of images and excerpts from the Recreation.gov website (*e.g.*, Compl. ¶¶ 49-71; *id.* at Exs. E-I), transaction records from each of the named Plaintiffs' Recreation.gov accounts (*e.g.*, Compl. ¶¶ 169-259), party admissions made by Booz Allen (Compl. Ex. D), congressional testimony (Compl. Ex. C), a National Park Service declaration (Compl. Ex. J), and a federal court opinion holding that certain Junk Fees charged to consumers on Recreation.gov were unlawful (Compl. Ex. A).

Plaintiffs bring causes of action on behalf of themselves and the putative classes: (1) under the Declaratory Judgment Act (Compl. ¶¶ 277-286); (2) for unjust enrichment (¶¶ 287-294); and (3) under the consumer protection laws of Virginia (where Booz Allen is based) and California, Florida, New York, Utah, and Washington (where the named Plaintiffs, respectively, reside). *Id.* ¶¶ 295-452. Based on these causes of action, Plaintiffs and the putative classes seek declaratory, injunctive, and monetary relief against Booz Allen. *Id.* at Prayer for Relief ¶¶ a-o.

Plaintiffs are explicit that they do ***not challenge government action***—"[t]his lawsuit does not challenge the ability of the Federal Agencies to charge and keep lawful use fees. It only challenges the Junk Fees paid to Booz Allen" by consumers. Compl. ¶ 8 n.5. Instead, they only challenge Booz Allen's actions in deceptively designing, developing, and operating a pseudo-

government website to extract hefty Junk Fees from consumers who reasonably believe the fees are used to support precious public lands:  "Booz Allen operate[s] with **broad discretion and autonomy independent from the Federal Agencies** to make decisions about what content, information, and disclosures to include (or not include) on [R]ecreation.gov."  *Id.*  ¶ 47.  "Unsurprisingly, Booz Allen has elected to abuse that discretion."  *Id.* at ¶ 8.

**B.      Booz Allen's Request for Dismissal.**

On March 10, 2023, Booz Allen filed a Motion to Dismiss asking this Court to find as a matter of law that Plaintiffs' claims cannot proceed.  ECF No. 23.  Booz Allen's Motion is based primarily on an argument that the government, rather than Booz Allen, is responsible for the content and operation of Recreation.gov.  Booz Allen claims that its deceptive and unlawful actions were required under the terms its contract with the government or that the government itself engaged in the at-issue conduct.  In support of its Motion, Booz Allen attached three exhibits, the Incomplete Contract (Mot. Ex. A), the Incomplete RFP (Mot. Ex. B),[2] and the Travers Declaration (Mot. Ex. C) that it argues support its factual contentions.

**1.      The Incomplete Contract.**

Booz Allen contends that on or about May 8, 2017 it was awarded a contract (the "Contract") to operate the Recreation.gov website and associated reservation services by the United States Forest Service.  While Booz Allen relies heavily on apparent **excerpts** from that Contract (Mot. Exhibit A, hereafter the "Incomplete Contract"), Booz Allen has not provided a complete copy of the Contract to Plaintiffs and has also not filed a complete copy of the Contract with the Court.  *See* Griffith Decl. ¶¶ 3-10.  Based on a heavily redacted copy of the Contract that Plaintiffs recently received in response to a Freedom of Information Act request to the Forest

---

[2] Plaintiffs do not believe that Exhibits A and B are properly before the Court for the reasons set forth in Plaintiffs' concurrently-filed Motion to Strike.

Service, ***it appears that, in creating the Incomplete Contract, Booz Allen removed at least 255 pages of material from the Contract.*** *Compare* Mot. Ex. A, *with* Griffith Decl. Ex. 4.

However, even the Incomplete Contract reveals that Booz Allen has broad discretion in designing, developing, and operating Recreation.gov. For example, while the Incomplete Contract requires Booz Allen to provide "users [] access . . . to . . . fee information" and to "provide reservation processes, including but not limited to . . . payment processing [and] collection of all types of fees," the government does not direct Booz Allen as to *how* it must carry out those broad directives. Mot. Ex. A at 148-49. Similarly, the Incomplete Contract provides that "[Booz Allen]'s proposed reservation system will be developed, deployed and maintained by the Contractor" (*id.* at 71), that Booz Allen will "design, develop, document, implement, administer, maintain and support an enterprise system, including data hosting, hardware, and software, capable of providing the solution" (*id.* at 31), and that with regard to the online user interface, that Booz Allen should develop "simple, timely, and flexible deployment of new web content," but in each instance leaves the details of *how* to operationalize these provisions to Booz Allen (*id.* at 41). Plaintiffs challenge *how* Booz Allen—and not the government—deceptively and unlawfully carried out its work.

### 2.    The Incomplete RFP.

Booz Allen also includes as Exhibit B what it claims is a copy of the request for proposal from the Forest Service that led to issuance of the Contract (the "RFP"). From the face of the RFP, it appears that at least 31 of the 32 attachments have been removed by Booz Allen ("Incomplete RFP"). Mot. Ex. B at 25. However, even from the incomplete records put forward by Booz Allen, it appears that the ***complete*** RFP is incorporated into the ***complete*** Contract, *see* Mot. Ex. A at 4,

which means, among other things, that Booz Allen "must comply in all material respects with the requirements of law [and] regulation" in operating Recreation.gov.  Mot. Ex. B at 64.

### 3.      The Travers Declaration.

Finally, Exhibit C to Booz Allen's Motion is the Declaration of Joshua Travers that was submitted in the *Kotab* litigation.  Among other things, the Travers Declaration confirms that the federal land management agencies have "no involvement in deciding the amount of processing fee charged" on Recreation.gov and that "revenue derived from reservation fees [on Recreation.gov] is remitted to BAH."  Mot. Ex. C ¶¶ 11, 10.

## ARGUMENT

### A.      Booz Allen Is Not Entitled to Derivative Sovereign Immunity.

### 1.      Legal Standard.

Derivative sovereign immunity applies only "in narrow circumstances" where three specific criteria are met.  *Childs v. San Diego Fam. Hous. LLC,* 22 F.4th 1092, 1097 (9th Cir. 2022).  *First,* the "contractor 'had no discretion in the design process and completely followed government specifications.'"  *Id.*  "[S]taying within the thematic umbrella of the work that the government authorized is not enough to render the contractor's activities 'the acts of the government'" and "simply being the government's common law agent [also] does not entitle a contractor to derivative sovereign immunity."  *In re KBR, Inc., Burn Pit Litig.,* 744 F.3d 326, 345, 345 n.8 (4th Cir. 2014), *cert. denied*, 574 U.S. 1120 (2015).  *Second,* the delegation of authority from the government to the contractor must be "performed pursuant to the Act of Congress," *i.e.*, it must have been lawfully authorized.  *See Campbell-Ewald Co. v Gomez*, 577 U.S. 153, 166-67 (2016).  *Third,* the government itself must be entitled to immunity.  *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.,* 928 F.3d 42, 70 (D.C. Cir. 2019).

Resolution of a derivative sovereign immunity defense is generally not appropriate at the pleading stage because at "this point in the litigation, the record does not contain enough evidence to determine whether [the contractor] acted in conformity with [its contract] . . . and any laws and regulations that the contract incorporates." *In re KBR,* 744 F.3d at 345.[3]

### 2. Plaintiffs' Allegations Challenge Booz Allen's Discretionary Acts, Defeating Derivate Sovereign Immunity.

#### a. Booz Allen Operates Recreation.gov with Broad Discretion.

Booz Allen cannot escape liability based on the doctrine of derivative sovereign immunity because Plaintiffs' legal theories are expressly based on Booz Allen's ***discretionary*** acts in designing, developing, and operating Recreation.gov.  "[D]erivative sovereign immunity . . . is limited to cases in which a contractor 'had no discretion in the design process and completely followed government specifications.'" *Cabalce v. Thomas E. Blanchard & Assocs., Inc.,* 797 F.3d 720, 732 (9th Cir. 2015).  Said differently, where "defendants have not demonstrated that plaintiffs' injury occurred solely by reason of carrying out the sovereign's will, the court will deny their claim of governmental immunity." *Adams v. Alliant Techsystems, Inc.*, 201 F. Supp. 2d 700, 708 (W.D. Va. 2002); *see also ACT, Inc. v. Worldwide Interactive Network, Inc.,* 46 F.4th 489, 497 n.2 (6th Cir. 2022) ("the contractor must show that it was following the government's precise specifications or directions when it engaged in the conduct alleged to give rise to liability"); *Badilla v. Midwest Air Traffic Control Serv., Inc.,* 8 F.4th 105, 124 (2d Cir. 2021) (where contractor "could comply with both its contractual obligations and the state-prescribed duty of care, no one suggests that state law would generally be pre-empted").

---

[3] Consistent with this principle, an order denying a motion to dismiss based on derivative sovereign immunity is not immediately appealable.  *Al Shimari v. CACI Premier Tech., Inc.,* 775 F. App'x 758, 760 (4th Cir. 2019).

The United States Supreme Court's and Fourth Circuit's recent statements on derivative sovereign immunity, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) and *Cunningham v. Gen. Dynamics Info. Tech., Inc.,* 888 F.3d 640 (4th Cir. 2018), are instructive.  In *Gomez*, a consumer brought a putative Telephone Consumer Protection Act ("TCPA") class action against an advertiser who had been retained by the Navy to send recruiting text messages.  *Gomez*, 577 U.S. at 157.  The contractor asserted derivative sovereign immunity as a defense, contending that because the Navy could not be liable under the TCPA, it also could not be liable for sending messages on the Navy's behalf.  *Id.* at 166.  The United States Supreme Court rejected the contractor's argument and found that immunity did not apply because it was the contractor, and not the Navy, that determined the list of individuals to be contacted.  *Id.* at 168.  Two years later in *Cunningham*, the Fourth Circuit considered *Gomez* in another putative TCPA class action involving a government contractor.  The facts of *Cunningham* were substantially similar to *Gomez*, except for one critical difference—in *Cunningham*, the government agency had specifically provided and directed the phone numbers that were to be contacted under the terms of the contract. *Cunningham*, 888 F.3d at 647-48.  In other words, the contractor had no discretion about who to contact, and it could not comply with both the contractual terms and the legal requirements of the TCPA.  *Id.*  Taken together, *Gomez* and *Cunningham* make clear that in the Fourth Circuit, derivative sovereign immunity only immunizes contractor conduct in the narrow circumstances where the contractor is acting without discretion based on a very precise and narrow instruction from the government.

This action is analogous to *Gomez*, not *Cunningham*.  As alleged in the Complaint, "Booz Allen operate[s] with ***broad discretion and autonomy independent from the Federal Agencies*** to make decisions about what content, information, and disclosures to include (or not include) on

[R]ecreation.gov." Compl. ¶ 47 (emphasis added); *see also id.* ¶ 8 ("[u]nsurprisingly, Booz Allen has elected to abuse that discretion"); *id.* ¶ 132 ("Booz Allen exercises significant discretion in running the [R]ecreation.gov lotteries"). The crux of Plaintiffs' claims challenge Booz Allen's operation of Recreation.gov "to deceptively create the appearance that it is run by the Federal Agencies" and to "lead[] consumers to believe that they are paying the Junk Fees to the Federal Agencies that administer those lands, and not Booz Allen." Compl. ¶¶ 49, 16. The Complaint contains detailed factual allegations about how Recreation.gov was designed, "reinvent[ed]," and "built . . . from scratch" by Booz Allen to create these deceptive interfaces. *E.g.*, Compl. ¶¶ 49, 159, 349; *id.* at Ex. D at 3. Indeed, Booz Allen's reinvention of Recreation.gov is not just Plaintiffs' "allegation," it is based on quotes from Booz Allen's corporate website, which are attached to the Complaint as Exhibit D.

The Complaint further details how Booz Allen predominantly features the official insignias of 13 federal land management agencies on each page of the website yet obscures its own involvement: Compl. ¶¶ 49-58 (providing specific examples of how Booz Allen creates the impression the website is run by the federal land management agencies including by displaying their insignias); *id.* ¶ 59 (screenshot reflecting "Booz Allen" not found in website search results).

Given "the allegations of the Complaint, which must be accepted as true at this stage in the litigation, the court cannot conclude Defendants [] merely acted at the direction of the Government." *Salim v. Mitchell,* 183 F. Supp. 3d 1121, 1131 (E.D. Wash. 2016).

### b. The Exhibits to Booz Allen's Motion Support Plaintiffs' Detailed Factual Allegations, Not Booz Allen's Attacks.

Booz Allen does not directly address Plaintiffs' robust factual allegations and has not pointed to a single provision of the Contract showing that it lacked discretion. Contrary to Booz Allen's arguments, the three attachments to Booz Allen's Motion, the Incomplete Contract (Mot.

Ex. A), the Incomplete RFP incorporated by reference into the Contract (Mot. Ex. B), and the Travers Declaration (Mot. Ex. C), actually reinforce Plaintiffs' allegations.

### i. The Contract Confirms Plaintiffs' Allegations that Booz Allen Operates Recreation.gov with Broad Discretion.

The Incomplete Contract and Incomplete RFP (which is incorporated into the Contract by reference) reinforce Plaintiffs' detailed factual allegations, particularly when all interferences are drawn in Plaintiffs' favor, as they must be on a motion to dismiss.  *See Zak v. Chelsea Therapeutics Int'l, Ltd.,* 780 F.3d 597, 607 (4th Cir. 2015) ("when a court considers relevant facts from the public record at the pleading stage, the court must construe such facts in the light most favorable to the plaintiffs"); *Gentry v. Hyundai Motor Am., Inc.,* 2017 WL 354251, at *4 (W.D. Va. Jan. 23, 2017) (inferences from judicially noticed materials to be made in plaintiffs favor).[4]

Critically, while the Incomplete Contract requires Booz Allen to provide "users [] access . . . to . . . fee information" (Mot. Ex. A at 149), it is silent as to the details on how Booz Allen must carry out that broad directive—and it is Booz Allen's failure to make adequate disclosures regarding the Junk Fees that are at the center of this case.  *E.g.*, Compl. ¶¶ 45-71. Moreover, the Incomplete Contract provides a multitude of additional examples of Booz Allen's discretion.

For example, the Incomplete Contract provides that "[Booz Allen]'s proposed reservation system will be developed, deployed and maintained by the Contractor," but leaves the details on precisely how to develop this system to Booz Allen.  Mot. Ex. A at 71 (emphasis added).  It provides that Booz Allen will "design, develop, document, implement, administer, maintain and support an enterprise system, including data hosting, hardware, and software, capable of providing

---

[4] As separately detailed in Plaintiffs' concurrently filed Motion to Strike, Plaintiffs do not believe that the Incomplete Contract or the Incomplete RFP are properly before the Court.

the solution," but, again, leaves the details to Booz Allen. Mot. Ex. A at 31.  In fact, with regard

to the online user interface, the Contract is explicit that Booz Allen should develop "simple, timely,

and flexible deployment of new web content," but again leaves the details to Booz Allen.  *Id.* at

41.

Indeed, the Department of the Interior is so far removed for any type of involvement with

the Recreation.gov Contract that the National Park Service has expressly confirmed that it does

not even have a copy:

> This letter is in response to your Freedom of Information Act (FOIA) request
> . . . in which you requested:  A copy of **the contract** between the United States
> Government, the United States Forest Service, the National Park Service,
> and/or the Recreation One Stop Program with Booz Allen Hamilton **related
> to the operation of the Recreation.gov website**. . . .
>
> We are writing today to respond to your request on behalf of the National
> Park Service. ***After a thorough and comprehensive search, it has been
> determined that National Park Service does not have records responsive to
> your request.***

Griffith Decl. Ex. 3 (emphasis added).[5]

In short, drawing all interferences in Plaintiffs' favor, it is clear that the Incomplete

Contract and the Incomplete RFP support Plaintiffs' allegations, or, at a bare minimum, do not

make Plaintiffs' allegations so "implausible" as a matter of law as to warrant dismissal.

### ii.   Contrary to Booz Allen's Claims, the Contract Confirms that Booz Allen Charges the Fees on Recreation.gov.

The Contract not only supports Plaintiffs' allegations that Booz Allen designs, develops,

and operates Recreation.gov with broad discretion, it also refutes Booz Allen's unsupported

contentions that it "does *not* charge any fees to the users of Recreation.gov," and that it is instead

---

[5] As a **complete** and official government record, this letter is judicially noticeable.  *See Shore v. Charlotte-Mecklenburg Hosp. Auth.*, 412 F. Supp. 3d 568, 573 (M.D.N.C. 2019) (letters from government agency are judicially noticeable).

the "government" that charges these fees.  *E.g.*, Mot. at 23 (emphasis in original).  However, this argument is directly refuted by the terms of the Incomplete Contract that has been put forward by Booz Allen:  "[t]he ***Contractor shall provide*** reservation processes, including but not limited to . . . ***payment processing*** [and] ***collection of all types of fees***."  Mot. Ex. A. at 148-49 (emphasis added).

Consistent with this contractual provision, Richard DeLappe, the National Park Service Interagency Program manager, has confirmed under oath that "processing fees [are] charged ***by the contractor*** for each transaction" on Recreation.gov.  Compl. Ex. J ¶ 6 (emphasis added).  Indeed, if Booz Allen were correct that the government, and not Booz Allen, charges the fees on Recreation.gov, Booz Allen would appear to be in violation of the explicit terms of the Contract.[6]

### iii.   The Primary Sections of the Contract Governing Fees Are Not in the Record Before this Court.

Booz Allen also relies on several excerpts of the Incomplete Contract to string together a claim that the individual government agencies (and not Booz Allen) decide the ***amount*** of fees to charge consumers on Recreation.gov, and that as a result, Booz Allen had no discretion in charging those fee amounts.  Mot. at 23.  Not only is this point contrary to Plaintiffs' detailed factual allegations, it is also contrary to Booz Allen's own's Exhibits.  Exhibit C, the Declaration of Joshua Travers, is explicit that the Bureau of Land Management—one of the federal agencies that allows reservations for its lands to be made through Recreation.gov—"has no involvement in deciding the amount of processing fee charged."  Mot. Ex. C ¶ 11.  And this is precisely the same conclusion

---

[6] As Booz Allen recognizes in its Motion, such a violation of would be sufficient to defeat sovereign immunity.  *See* Mot. at 23 (citing *Gomez* and recognizing that derivative immunity is only available where the contractor performed as directed under the contract).

that the *Kotab* court reached on a full evidentiary record: "BLM 'has no involvement in deciding the amount of processing fee charged per reservation.'"  *Kotab,* 595 F. Supp. 3d at 951.[7]

Moreover, Booz Allen is mistaken that the sections of the Incomplete Contract it cites control.  Specifically, Attachment 10 contains the language discussing Junk Fees that Booz Allen relies on (Mot. at 23), but Section B of the Contract is explicit that charges and payment will occur "in accordance ***with pricing as submitted by Booz Allen Hamilton in Attachment 13***," not Attachment 10.  Mot. Ex. A at 3 (emphasis added).  The Contract further mandates that "Sections C & B take precedence over [all other Attachments]," including Attachment 10.  *Id.* at 20.

Based on the face of the Incomplete Contract, it appears that Attachment 13, and not Attachment 10, controls.  However, ***Attachment 13 is among the over 250 pages that Booz Allen unilaterally removed from the Incomplete Contract***.  As a result, it is impossible for Plaintiffs or this Court to determine precisely how Junk Fees are set under the terms of the complete Contract, and, therefore, Plaintiffs' detailed factual allegations that are supported by the *Kotab* decision, the Travers Declaration, and the Delappe Declaration, control, not the Incomplete Contract.  *See, e.g.*, *Agnew v. United Leasing Corp.*, 2015 WL 13388299, at *8 n.5 (E.D. Va. May 20, 2015) (refusing to judicially notice "heavily redacted" document).

Moreover, even if Booz Allen were ultimately able to prove that the government and not Booz Allen sets the fee amounts at trial, it would not change the result.  The crux of Plaintiffs' allegations is not how the fee rates are set, but rather a claim that Booz Allen has failed to adequately disclose the nature of the Junk Fees to consumers on the Recreation.gov website, which

---

[7] Additionally, the copy of the Contract received by Plaintiffs in response to their FOIA includes highly redacted portions of Booz Allen's bid proposal, but in the non-redacted sections, Booz Allen admits that it sets the fee amounts.  Griffith Decl. Ex. 4 at 205 (In "***setting our fees***, we planned in staffing and other direct costs . . . ." (emphasis added)); *id.* ("We have designed and ***priced our solution***  . . . ." (emphasis added)); *id.* at 207 ("When evaluating ***our pricing***, the Government should note several key aspects of ***our fee structure*** . . . ." (emphasis added)).

was "reinvent[ed]" and "built . . . from scratch" by Booz Allen.  Compl. ¶ 46; *id.* at Ex. D at 3.

***Contractual provisions about how fee rates are set have nothing to do with how those fees are disclosed—or more accurately, not disclosed—to consumers,*** and Booz Allen has not identified any contractual provisions addressing how Booz Allen should (or should not) make disclosures about fees or other material representations on Recreation.gov.  *Brinkman v. John Crane, Inc.,* 2015 WL 13427697, at *4 (E.D. Va. June 11, 2015) (finding that legal claims arising from defendant's failure to disclose were not barred by derivative sovereign immunity).

As the Forest Service succinctly put it, "[i]t is essential to understand that [Recreation.gov] is ***developed, owned, hosted, operated and maintained by Booz Allen Hamilton . . . . The federal Government is simply procuring the services provided by this SaaS*** [software as a service] ***solution.***"  Griffith Decl. Ex. 5 at 4 (emphasis added).[8]  And "[b]ecause Defendants offer no reason why it was impossible for them to carry out their duties in this instance without arguably violating [state] law, derivative sovereign immunity is inapplicable."  *Vangjeli v. Banks,* 2020 WL 5880131, at *6 (E.D. Pa. Oct. 2, 2020).

### 3.   The Authority to Charge Junk Fees Was Not Validly Conferred to Booz Allen.

#### a.   Under FLREA's Express Terms, Only the Secretary of the Department of Agriculture and the Secretary of the Department of the Interior Could Award a Fee Management Contract.

Booz Allen contends that the Contract was validly authorized by Section 6805(a)(1) of FLREA, which in relevant part provides that "the ***Secretary*** may enter into [] fee management

---

[8] This document is also available at: https://www.usda.gov/sites/default/files/documents/nre-fs-r1s-pia.pdf. Judicial notice of this document is proper because it is a ***complete*** government report. *See, e.g.*, *See United States v. Cecil*, 836 F.2d 1431, 1452 (4th Cir. 1988) ("courts may take judicial notice of official governmental reports and statistics").  And consideration of its contents is appropriate because it is submitted in response to Booz Allen's 12(b)(1) arguments, for which it has sought to introduce evidence. *See, e.g.*, *Hoye v. Lt. Gilmore*, 2016 WL 3512275, at *2 (W.D. Va. June 20, 2016) (considering plaintiffs' exhibits in deciding motion to dismiss).

agreement[s]" in certain circumstances.  16 U.S.C. § 6805(a) (emphasis added).[9]  While it is true that Section 6805 permits the engagement of a contractor in certain circumstances, Booz Allen has not shown that the Contract was validly issued pursuant to this section, and as a result, Booz Allen's argument fails for at least three reasons.

*First,* by FLREA's express terms, the Secretary of Agriculture only has authority to enter into fee management contracts on behalf of the Forest Service (16 U.S.C. § 6801(10)(B)), yet it is undisputed that the fees charged under the Recreation.gov contract are also charged for lands administered by the Department of the Interior, such as those charged at National Parks.  *Second,* Booz Allen has not introduced any evidence that the Contract (as opposed to the interagency MOU) was authorized by anyone within the Department of the Interior, let alone the Secretary of the Interior.  *See* 16 U.S.C. § 6801(10)(A).  Critically, recent statements from the former Secretary of the Interior Ryan Zinke, who was in office at the time the Contract was executed, strongly suggest that the Contract was not entered into with his approval, stating that the Recreation.gov "website is a total scam" and "sinister" and suggesting that a "Congressional subpoena is in order" to determine "[e]xactly how much are DC consultants making" from the website.  Griffith Decl. Exs. 6-7.[10]  *Third,* Booz Allen has not introduced any evidence that the Secretary of the Department of Agriculture authorized the Contract, and from the face of the Incomplete Contract,

---

[9] "Secretary" is a defined term within FRLEA, and means "the Secretary of the Interior, with respect to a Federal land management agency (other than the Forest Service)" and the "Secretary of Agriculture, with respect to the Forest Service."  16 U.S.C. § 6801(10)(A)-(B).

[10] At this time, Plaintiffs put forward Mr. Zinke's statements for the limited purpose of showing the types of facts that could be added in an amended pleading if the Court were to otherwise grant the Motion (which it should not) and to show the types of information that could be learned in admissible forms through jurisdictional discovery.  The existence of these statements is properly subject to judicial notice.  *Rock the Vote v. Trump*, 2020 WL 6342927, at *9 (N.D. Cal. Oct. 29, 2020) (relying on "judicially noticeable tweets");  *Jones v. Shooshan*, 855 F. Supp. 2d 594, 604 (E.D. Va. 2012) (taking judicial notice of press releases).

the only government official who appears to have purportedly authorized the Contract is a career bureaucrat with the Forest Service.  Mot. Ex. A at 2.  This is not what FLREA requires.

### b.   FLREA Only Authorized a Contract Through September 30, 2019.

Further, even if the Secretaries had validly issued the Contract in 2017, they did not have authority under FLREA to approve a Contract that extended beyond September 30, 2019.[11] Specifically, Section 6809 of FLREA, titled "[s]unset provision," states that "[t]he authority of the Secretary to carry out this chapter shall terminate September 30, 2019."   While Congress did eventually amend Section 6809 to extend the sunset provision, it did not do so until December 29, 2022,[12] meaning that:  (1) when the Contract was executed, its duration was longer than what the Secretaries could lawfully authorize making the Contract's purported delegation of authority to Booz Allen invalid *ab initio*; and (2) at a minimum, between October 1, 2019 and December 29, 2022, the Secretaries (and agencies) lacked any authority to authorize any Contractor to charge fees, making the Contract invalid between those dates.  *See Monarch Assurance, P.L.C. v. United States*, 244 F.3d 1356, 1360 (Fed. Cir. 2001) ("[A]ny party entering into an agreement with the [g]overnment accepts the risk of correctly ascertaining the authority of the agents who purport to act for the [g]overnment."); *Schism v. United States*, 316 F.3d 1259, 1262-64 (Fed. Cir. 2002) (binding contract not formed where government lacked statutory authority to enter into agreement).  Accordingly, for this additional reason, Booz Allen's contention that its Contract was lawfully authorized fails.

---

[11] At the time the Contract was executed, an even earlier sunset provision was in place.  *See* Pub.L. 114-223, Div. C, § 133, Sept. 29, 2016, 130 Stat. 914.

[12] Specifically, the Consolidated Appropriations Act, 2023, PL 117-328, December 29, 2022, 136 Stat 4459, provided that Section 8609 "of the Federal Lands Recreation Enhancement Act (16 U.S.C. 6809) shall be applied by substituting 'October 1, 2024' for 'September 30, 2019'."

### c.   The Federal Land Management Agencies Could Not Authorize Booz Allen to Charge Fees that Violate Federal Law.

Finally, even if the Contract was otherwise lawfully authorized (it was not), Booz Allen's challenged conduct would still not be validly authorized.  Specifically, while FLREA authorizes the federal land management agencies to pay a contractor a "reasonable commission," it "does not authorize an agency to pass off that commission to the public as a separate, non-recreation fee." *Kotab,* 595 F. Supp. 3d at 952-53.  It is black letter law that "federal officials do not possess the discretion to violate . . . federal statutes," and consistent with this principle, a government official cannot authorize a third-party to violate a federal statute by issuing a government contract.  *Medina v. United States,* 259 F.3d 220, 225 (4th Cir. 2001); *Ancient Coin Collectors Guild v. U.S. Customs & Border Prot., Dep't of Homeland Sec.,* 698 F.3d 171, 179 (4th Cir. 2012) ("Government action is *ultra vires* if the agency or other government entity 'is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden'"), *cert. denied*, 568 U.S. 1251 (2013).

Here, the Complaint is explicit that the Junk Fees at issue are the separate fees charged on Recreation.gov that "appear[] as a separate item from the Federal Agency use fees"—the precise fees that the *Kotab* court found could not be charged under FLREA.  Compl. ¶ 97; s*ee also id.* ¶¶ 202-03 (distinguishing between transactions with single fee amount and transactions with Junk Fees separately broken out).  Accordingly, the authority to charge the separate Junk Fees was not lawfully authorized or validly conferred to Booz Allen.[13]

---

[13] While Booz Allen will undoubtedly attack this contention based on *Cunningham*, the analysis in *Cunningham* does not apply here.  Specifically, *Cunningham* dealt with a situation where one statute authorized a delegation of authority to the contractor, and a violation of a separate unrelated statute (the TCPA) was alleged.  Here, FLREA was explicit about what could be contracted for, and the Contract that was issued exceeded that authority.  Plaintiffs' Complaint contains additional examples of how Booz Allen's actions violate FLREA.  Compl. ¶¶ 72-168.

**4.     Booz Allen Cannot Invoke Derivative Sovereign Immunity Over Claims for Prospective Relief because the United States Has Waived Immunity.**

Even if there had been a valid delegation of authority to Booz Allen, Booz Allen's attempt to dismiss this action in its entirety based on the doctrine of derivative sovereign immunity is a non-starter—a federal contractor "cannot derive an immunity that [the government] itself does not have." *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d at 70; *Al Shimari v. CACI Premier Tech., Inc.*, 368 F. Supp. 3d 935, 970 (E.D. Va. 2019).

Here, the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.* (the "APA"), was specifically amended by Congress in 1976 to waive sovereign immunity for any "[a]n action in a court of the United States seeking relief other than money damages." *Id.* at § 702.  Since that time, nine Circuits have "'***expressly' held in the broadest terms [that] the 'APA's waiver of sovereign immunity applies to any suit*** whether under the APA or not.'"  *See Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017) (emphasis added), *cert. denied*, 138 S. Ct. 978 (2018).[14]

As detailed in the Complaint, Plaintiffs seek (among other remedies) injunctive and declaratory relief against Booz Allen—claims for which the government  has expressly waived its own immunity.  *See, e.g.*, *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 2006 WL 581260, at *8 (D. Md. Jan. 10, 2006) ( "the remedy Plaintiffs seek is injunctive and sovereign immunity does not bar their claim" pursuant to the APA); *Cobell v. Norton*, 240 F.3d 1081, 1094-95 (D.C. Cir. 2001) ("Insofar as the plaintiffs seek specific injunctive and declaratory relief . . . the government

---

[14] *See also Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 57-58 (1st Cir. 2007); *Treasurer of New Jersey v. U.S. Dept. of Treasury,* 684 F.3d 382, 397 (3d Cir. 2012); *Muniz-Muniz v. U.S. Border Patrol,* 741 F.3d 668, 672 (6th Cir. 2013); *Michigan v. U.S. Army Corps of Engineers,* 667 F.3d 765, 774-75 (7th Cir. 2011); *Red Lake Band of Chippewa Indians v. Barlow,* 846 F.2d 474, 476 (8th Cir. 1988); *Navajo Nation v. Dep't of the Interior,* 876 F.3d 1144, 1168, 1171 (9th Cir. 2017); *Simmat v. U.S. Bureau of Prisons,* 413 F.3d 1225, 1233 (10th Cir. 2005); *Delano Farms Co. v. Cal. Table Grape Com'n,* 655 F.3d 1337, 1344 (Fed. Cir. 2011).

has waived its sovereign immunity[.]").  Accordingly, at a minimum, it is beyond debate that Booz

Allen cannot claim immunity over non-monetary remedies.[15]

> **5.      Plaintiffs Were Not Required to Allege that Booz Allen Exceeded Its Authority Under the Contract.**

The fact that Plaintiffs did not explicitly contend that Booz Allen exceeds its authority

under the terms of the Contract does not defeat Plaintiffs' claims[16] because such allegations are

not required at the pleading stage.  As a sister-court in this Circuit recently explained:

> . . . even if defendants are correct that the [plaintiffs'] allegations are insufficient, the court [sh]ould still deny defendants' Rule 12(b)(1) motion to dismiss.

> In In re KBR, the Fourth Circuit held that the district court erred by finding the defendant was entitled to derivative sovereign immunity when "the record [did] not contain enough evidence to determine whether [the defendant] acted in conformity with [its contract], its appended task orders, and any laws and regulations that the contract incorporates."

> Without having the ground lease, operating agreement, any subsequent amendments or addenda, or related contracts in the record, the court would make the same error if it were to find at this early stage of the case that defendants have derivative sovereign immunity.

*Johnson v. Lendlease (US) Pub. Partnerships LLC,* 2022 WL 2447091, at *9 (E.D.N.C. July 5,

2022) (paragraph breaks added) (internal citations removed); *see also Anchorage v. Integrated*

*Concepts & Rsch. Corp.*, 1 F. Supp. 3d 1001, 1011-12 (D. Alaska 2014) ("[T]o dismiss for failure

---

[15] The fact that Plaintiffs also seek damages against Booz Allen does not defeat application of Section 702's waiver of immunity as to the declaratory and injunctive relief sought.  *See DeBrew v. Atwood,* 792 F.3d 118, 124-25 (D.C. Cir. 2015) (allowing case to proceed where plaintiff also originally sought damages in addition to equitable remedies).

[16] To the extent Booz Allen contends that Plaintiffs were also required to allege that a "violation" of the Contract occurred, that is simply not the law.  "At no point does the Fourth Circuit in *Cunningham*—much less the Supreme Court—suggest an injured party must prove a contractual violation as a prerequisite to overcoming a government contractor's derivative sovereign immunity."  *Menocal v. GEO Grp., Inc.,* 2022 WL 17038977, at *17 (D. Colo. Oct. 18, 2022).

to allege those precise words would elevate form over substance. . . . [T]he Complaint does not, on its face, demonstrate [defendant's] entitlement to dismissal of this action based on derivative sovereign immunity.").

Here, as detailed above, Plaintiffs have plausibly alleged in great detail that Booz Allen operated with substantial discretion under the terms of its Contract.  That is all that is required.[17]

### 6.     Derivative Sovereign Immunity Turns on Factual Questions, and Dismissal at the Pleading Stage Is Not Appropriate.

Finally, resolution of a derivative sovereign immunity defense is not appropriate at the pleading stage.  As the Fourth Circuit has explained, at this early "point in the litigation, the record does not contain enough evidence to determine whether [the contractor] acted in conformity with [its contract] . . . and any laws and regulations that the contract incorporates." *In re KBR,* 744 F.3d at 345.  And that is certainly the case here, as Booz Allen has failed to place a complete copy of the Contract in the record. *See, e.g.*, *Scott v. J.P. Morgan Chase & Co.,* 296 F. Supp. 3d 98, 107-08 (D.D.C. 2017) (denying in part motion to dismiss where defendant failed to attach complete

---

[17] To the extent this Court concludes that allegations that Booz Allen exceeded its authority or breached its Contract are required (it should not), Plaintiffs could readily add such allegations in an amended pleading.  For example, according to Booz Allen, "the Contract requires that Booz Allen develop Recreation.gov to 'be configurable' by those agencies 'to allow flexibility in the labeling and layering of fees'" and that "Recreation.gov allows each federal agency to select the type of fees it will charge . . . as well as how much it will charge for each fee." Mot. at 16-17. However, if Booz Allen is correct that the Contract imposes these requirements, according to its own Exhibit C, Booz Allen is in violation of these terms because the Bureau of Land Management—one of the agencies—"has no involvement in deciding the amount of processing fee charged." Mot. Ex. C ¶ 11; *see also Kotab,* 595 F. Supp. 3d at 951.  Similarly, the Contract appears to explicitly require that "[t]he Contractor shall provide reservation processes, including but not limited to . . . payment processing [and] collection of all types of fees." Mot. Ex. A. at 148-49 (emphasis added).  But if Booz Allen is correct that the government, and not Booz Allen charges the fees on Recreation.gov, Booz Allen would appear to be in violation of this explicit contractual requirement.  Finally, and critically, the Contract expressly requires that Booz Allen "must comply in all material respects with the requirements of law [and] regulation." Mot. Ex. B at 64.  Plaintiffs' existing allegations in the Complaint detail over two-dozen violations of state and federal law. *See generally* Compl.

copies of the relevant contracts to its motion); *Johnson v. Lendlease (US) Pub. P'ships LLC,* 2022 WL 2447091, at *9 (E.D.N.C. July 5, 2022) (denying motion to dismiss where court did not have the relevant agreements); Griffith Decl. ¶¶ 2-11 (Plaintiffs' counsel requested a complete copy of the Contract from opposing counsel on at least six occasions since January).

**B.      Booz Allen's Arguments Under 12(b)(7), which Seek "Drastic Remedies," Also Fail.**

Booz Allen also claims that this case should be dismissed under Rule 12(b)(7) for failure to join "various federal agencies," contending that these supposedly critical—but unspecified—additional parties are essential.  However, Plaintiffs' claims do not challenge government action, but instead challenge Booz Allen's unlawful acts in operating Recreation.gov.  Further, even if this Court were to conclude that these unspecified "various federal agencies" are necessary parties, those agencies can be added as third-party defendants by Booz Allen, added in an amended pleading by Plaintiffs (if identified by Booz Allen and so directed by the Court), or added via intervention under Rule 24.

**1.      Legal Standard.**

The party asserting a Rule 12(b)(7) defense bears the burden of showing that a person or entity not joined is necessary and indispensable under Federal Rule 19.  *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005).  In general, "[c]ourts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result."  *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999).

When a Rule 12(b)(7) motion is filed, the Court must determine whether the moving party has shown that the absent party is "necessary" under Rule 19(a), and, if so, add it.  A party is "necessary" where:

> (A) in that person's absence, the court cannot accord complete relief among existing parties, or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect that interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

If an absent third-party is "necessary" but cannot be joined, the Court must analyze "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Id.* at 19(b). Rule 19 dismissal "is a drastic remedy . . . which should be employed only sparingly." *Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 250 (4th Cir. 2000).

### 2. The "Various Federal Agencies" Are Not Necessary Parties Under Rule 19(a).

#### a. Plaintiffs Do Not Seek Any Relief Against the Government.

In seeking dismissal under Rule 12(b)(7), Booz Allen effectively asks this Court to hold that any action involving a government contractor cannot proceed without the government's involvement because there is a contract involved. This is not the law. Indeed, government contracting cases frequently reach the Fourth Circuit without the government as a party, including some of the cases relied upon by Booz Allen in its Motion. *See, e.g.*, *Cunningham,* 888 F.3d at 643 (not identifying any government agency as a party); *Butters v. Vance Int'l, Inc.*, 225 F.3d 462,

464 (4th Cir. 2000) (same); *Al Shimari v. CACI Int'l, Inc.*, 679 F.3d 205, 209 (4th Cir. 2012) (same).[18]

Here, Plaintiffs' allegations are explicit that they do not seek anything from the government—"[t]his lawsuit does not challenge the ability of the Federal Agencies to charge and keep lawful use fees. It only challenges the Junk Fees paid to Booz Allen" by consumers. Compl. ¶ 8 n.5. And contrary to Booz Allen's claims, nowhere in their Complaint do Plaintiffs challenge the ability of the government agencies to contract with third parties, such as Booz Allen. That the government might ultimately have its interests as against Booz Allen implicated by this litigation does not mean that the Court cannot resolve this dispute between Plaintiffs and the putative class without the government present. *See, e.g., Clarendon Regency IV, LLC v. Equinox Clarendon, Inc.*, 2021 WL 4477276, at *3 (E.D. Va. Sept. 30, 2021) ("[A]pplying the Fourth Circuit's Rule 19(a) standards, [] neither joint tortfeasors, nor guarantors, nor indemnitors are considered 'necessary' parties under Rule 19."); *Anchorage,* 1 F. Supp. 3d at 1014 ("[Defendant] has not demonstrated that the fact that [it] asserts a potential right to recover its litigation costs from the government makes the government's presence required in this litigation."); *Ravensburger Interactive Media GmbH v. Bethesda Softworks LLC*, 2006 WL 8457055, at *5 (D. Md. Oct. 6, 2006) ("Even if [defendant] has any claims for indemnification or contribution against [third-party], those claims do not prevent the Court from according complete relief in this action without [third-party's] presence.").

---

[18] Further, even if this were the law, only the Forest Service is a party to the Contract with Booz Allen, and as a result, Booz Allen's arguments based on the face of the Contract would be limited to that single entity. *See D.R. Horton, Inc. v. Landbank Fund VIII, LLC*, 2009 WL 10678196, at *2 (D.S.C. June 4, 2009) ("it is axiomatic that a third party beneficiary . . . would not be liable on the contract itself because the third party beneficiary has made no promises under the contract").

### b.  Booz Allen Has Failed to Introduce Any Evidence that Any Government Agency Claims Any Interest in this Action.

As to the second factor, here, the inquiry begins and ends with the question of whether the absent third-party "claims an interest relating to the subject of the action."  Fed. R. Civ. P. 19(a)(1)(B).  As the Eastern District has explained, "the precedent that exists interprets that requirement narrowly, usually requiring some sort of affirmative indication by the absent party in the court hearing the Rule 19 matter."  *Marina One, Inc. v. Jones*, 29 F. Supp. 3d 669, 678 (E.D. Va. 2014) (collecting cases); *see also Corcoran v. Peleus Ins. Co.*, 2021 WL 3472664, at *4 (D. Md. Aug. 6, 2021) (noting that a claimed interest is a "prerequisite" to evaluating joinder under Rule 19(a)(1)(B)).  Booz Allen has not even argued that any government agency has claimed such an interest.  Indeed, the Department of the Interior and National Park Service have expressly ***disclaimed*** any interest:  "It appears you may be requesting records as part of a lawsuit to which ***the Federal government will not be a party.***"  Griffith Decl. Ex. 10 at 2 (emphasis added).

As detailed above, on a 12(b)(7) Motion, the "burden of proof rests on the party raising the defense," *Am. Gen. Life & Accident Ins. Co.*, 429 F.3d at 92, and with no contention that any government agency actually claims an interest in this proceeding—let alone any evidence of such a claim—Booz Allen has not carried its burden here.[19]

### 3.  The "Various Federal Agencies" Can be Added as Parties.

### a.  Booz Allen Could Add the Agencies as a Third-Party Defendant.

Booz Allen's thesis of the case (incorrectly) assumes that Plaintiffs' detailed factual allegations challenge actions that originated with the government or for which the government

---

[19] At best, Booz Allen's argument suggests that to the extent the federal land management agencies are not presently aware of this litigation that they should receive notice and be provided an opportunity to notify this Court if they wish to claim an interest in these proceedings.  *See Marina One, Inc.*, 29 F. Supp. 3d at 679 (directing defendant to provide notice to third party).

itself is partially responsible.  As detailed above, Booz Allen is wrong.  However, even it was right, it has a simple remedy—it can add the "various federal agencies" as third-party defendants.  Fed. R. Civ. P 14(a)(1) ("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."); *see also E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1074 (9th Cir. 2010), *cert. denied*, 565 U.S. 814 (2011) ("Peabody and the Nation may bring a third-party claim against the Secretary for prospective relief under Rule 14(a).").

### b.     Plaintiffs Could Add the Agencies in an Amended Pleading.

If the Court determines that the "various federal agencies" are required parties (and it should not), Plaintiffs could amend to add claims against the government agencies pursuant to the Administrative Procedures Act and for declaratory and injunctive relief.  As discussed in Section A.4, above, the government has expressly waived immunity over such claims, and Booz Allen's claims that the government agencies cannot be added boarders on the incredulous as the *Kotab* case, which is attached to the Complaint and cited in Booz Allen's Motion, expressly found that claims under the APA related to fees charged on Recreation.gov could be adjudicated against the federal land management agencies.  595 F. Supp. 3d at 951; *see also Kotab v. Bureau of Land Mgmt.,* 546 F. Supp. 3d 1012, 1019 (D. Nev. 2021) ("In an APA suit . . . the relevant zone of interests is . . . the statutes under which [Plaintiff] seeks redress . . . [including] FLREA.").

### c.     The Agencies Could Intervene Under Rule 24.

Finally, the government agencies themselves always have a third option—they could move to intervene under Rule 24 and argue for themselves why they should (or should not) be involved

in this litigation.[20]   *See* Fed. R. Civ. P. 24(b)(2) ("the court may permit a federal or state governmental officer or agency to intervene"); *see also see, e.g.*, *Peterson Builders, Inc. v. A.C. Hoyle Co.*, 163 F.R.D. 550, 553 (E.D. Wis. 1995) (affirming order allowing United States to permissively intervene in action).[21]

**C.      Plaintiffs' Allegations Establish Standing.**

Plaintiffs' allegations easily establish Article III standing because they show that:   (1) Plaintiffs suffered an injury in fact by paying unlawful fees on Recreation.gov; (2) there is "a causal connection between the injury and the conduct complained of" because Booz Allen charged and retained the unlawful fees; and (3) an order from this Court refunding the money and/or enjoining the unlawful practices prospectively would redress Plaintiffs' injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (same).

While Booz Allen attempts to recast Plaintiffs' allegations as challenging ***government*** action, the Complaint is explicit that Plaintiffs seek redress for injuries caused by ***Booz Allen***, not the federal agencies.   *E.g.*, Compl. ¶¶ 1, 47-48, 277-452.   Specifically, Plaintiffs challenge the actions of ***Booz Allen*** related to its operation of Recreation.gov.   Compl. ¶ 2 ("Plaintiffs . . . seek to recover hundreds of millions of dollars in illegal Junk Fees that have been charged by Booz Allen on recreation.gov since 2018 and to prevent Booz Allen from charging these Junk Fees in the future."); *id.* ¶ 8 n.5 ("This lawsuit does not challenge the ability of the Federal Agencies to charge and keep lawful use fees. It only challenges the Junk Fees paid to Booz Allen.").   Booz

---

[20] Intervention in such circumstances is "permissive" not "mandatory" and Plaintiffs expressly reserve all rights if such a motion is filed.

[21] Because it clear that the government agencies can be added as parties, the Court need not consider whether the equities would permit the action to proceed in their absence. *Florian v. Sequa Corp.,* 2002 WL 31844985, at *4 (N.D. Ill. Dec. 18, 2002) ("Rule 19(b), on its face, applies only to an absent party who satisfies [] Rule 19(a).").

Allen **charges** consumers Junk Fees on Recreation.gov.  Compl. Ex. J ¶ 6 ("processing fees [are] charged **by the contractor** for each transaction" on Recreation.gov).  Booz Allen **keeps** the Junk Fees.  *See* Booz Ex. C ¶ 10 ("revenue derived from reservation fees is remitted to BAH").  And "[n]o part of the processing fee is remitted to the [Federal Agencies]."  *Kotab*, 595 F. Supp. at 951.

As Plaintiffs' allegations and supporting materials make clear, this is a case about Booz Allen's actions, and through the remedies requested in the Complaint, "it is likely, as opposed to merely speculative, that [Plaintiffs'] injury will be redressed by a favorable decision."  *Sierra Club v. United States Dep't of the Interior*, 899 F.3d 260, 285 (4th Cir. 2018).  Nothing more is required.

**D.      The "Doe" Allegations Are Properly Alleged.**

Booz Allen's attack on the "Doe" allegations also fail.  "[I]t is settled in the Fourth Circuit that John Doe suits are permitted against 'real, but unidentified, defendants.'"  *Poole v. Pass*, 351 F. Supp. 2d 473, 477 n.8 (E.D. Va. 2005).  Here, Plaintiffs have alleged that the Doe defendants' "identities are not presently known to Plaintiffs" at this early stage of litigation.  Compl. ¶¶ 33-35.  Plaintiffs will add the Doe defendants once their identities are learned in discovery.  Nothing more is required at this time.

**E.      Plaintiffs' Specific Causes of Action Are Adequately Alleged.**

Booz Allen makes a series of scattershot attacks on Plaintiffs' state law specific causes of action, but each of these attacks fail.  Moreover, in attacking only the state law specific causes of action, Booz Allen has conceded that the declaratory relief causes of action are adequately pled.

**1.      Plaintiffs' Allegations Are Subject to Rule 8 because Plaintiffs' Claims Sound in Deception, Not Fraud.**

Plaintiffs' claims sound in deception, not fraud, and their allegations are subject to Rule 8's liberal pleading standard, which Plaintiffs' pleadings easily meet.  *See* Compl. ¶¶ 277-452. Indeed, numerous courts have held state consumer protection claims "need only meet the bare-

bones notice-pleading requirements of Rule 8(a)." *See In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 425 (E.D. Va. 2020).[22]   Accordingly, Rule 8's liberal standard—and not Rule 9—controls here.

>    **2.**    **Plaintiffs' Allegations Explicitly Allege the "Who, What, When, Where, and How," Easily Satisfying Rule 9.**

Further, even if this Court were to find that Rule 9 applies to some of Plaintiffs' claims (it should not), Plaintiffs' robust factual allegations establish the "who, what, when, where, and how" of Booz Allen's misconduct, easily satisfying Rule 9. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 379 (4th Cir. 2008).   Specifically:

- **Who:** Booz Allen.  *E.g.,* Compl. ¶¶ 1, 5, 33.  And each of the Plaintiffs and putative classes. *E.g.,* Compl. ¶¶ 26-32, ¶¶ 260-268.

- **What:** Junk Fees paid by Plaintiffs and the putative classes on Recreation.gov to Booz Allen as a result of Booz Allen's false, deceptive, unfair, unconscionable, and unlawful operation of Recreation.gov.  *E.g.,* Compl. ¶¶ 61-71, 98-148 (detailing Junk Fees); ¶¶ 169-259 (Plaintiff specific examples of Junk Fee charges); ¶¶ 49-71, 149-168 (examples of false and deceptive statements); ¶¶ 113 ("No disclosures regarding the allocation of fees are made to consumers on Recreation.gov or otherwise by Booz Allen.").

- **When:** The specific dates that each Plaintiff paid Junk Fees on Recreation.gov. Compl. ¶¶ 169-259.  For example, Plaintiff Wilson was charged a reservation Junk Fee on May 4, 2019.

---

[22] *See, e.g.*, *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (NY GBL claims not subject to Rule 9(b)); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003) (only claims sounding in fraud are subject to Rule 9); *Lewis v. Mercedes-Benz USA, LLC,* 530 F. Supp. 3d 1183, 1231-1232 (S.D. Fla. 2021) (Rule 9(b) does not apply to FDUTPA claims); *Gordon v. Impulse Marketing Group, Inc.,* 375 F.Supp.2d 1040, 1048 (E.D. Wash. 2005) (finding WCPA claim did not sound in fraud); *Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F. Supp. 2d 535, 553 (E.D. Va. 2001) (UDAP claims need not be pleaded with same level of particularity as fraud claims).

Compl. ¶ 172(b); Plaintiff Streeter was charged a reservation Junk Fee on May 17, 2021.   ¶

188(a); Dana Oliver was charged a cancellation Junk Fee on September 2, 2022.   ¶ 95.

- **Where:** On the Recreation.gov website, on the Recreation.gov App, in marketing emails, and in transactions with Plaintiffs.  *E.g.,* Compl. ¶¶ 49-71 (listing deceptive statements on different URLs of the Recreation.gov website); ¶¶ 50-53 ("About Us" page); ¶ 54 ("homepage"); ¶ 55 ("terms of service"); ¶ 56 ("Privacy Policy"); ¶ 59 ("search menu"); ¶¶ 164-168 (App); ¶¶ 149-156 ("marketing emails"); ¶¶ 169-259 (Plaintiffs' purchase details).

- **How:** Through Plaintiffs' respective Recreation.gov accounts.  *E.g.,* Compl. ¶¶ 169-259 (providing details on transactions made through each Plaintiffs' Recreation.gov accounts).

These detailed allegations are more than sufficient to satisfy Rule 9.  *See, e.g.*, *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731 (E.D. Va. 2010) (finding allegations sufficiently plead under Rule 9).

### 3.  Booz Allen Cannot Escape Liability Under State Safe Harbor Provisions.

Booz Allen also argues that Plaintiffs' state law claims cannot proceed because the alleged conduct is exempt from liability under safe harbor provisions contained in the respective state UDAP statutes.  Motion at p. 26.  Booz Allen is mistaken.  "Under the safe harbor doctrine, [t]o forestall an action under the unfair competition law, another provision must . . . clearly permit the conduct." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012).[23]  As detailed above and the in the Complaint, the crux of Plaintiffs' allegations is that Booz Allen's operation of

---

[23]  *See also* Florida Statute § 501.212(a) (safe harbor applies only to conduct "specifically permitted" by law); N.Y. Gen. Bus. Law § 350-d (safe harbor applies to conduct that "complies with" law and regulations); Utah Code Ann. § 13-11-22(1)(a) (safe harbor applies only applies to conduct "specifically permitted" by law); Wash. Rev. Code Ann. § 19.86.170 (safe harbor applies to conduct specifically "permitted" by law or regulation); Va. Code Ann. § 59.1-199(A) (safe harbor applies where conduct was  "authorized" by law or regulation).

Recreation.gov is deceptive and that FLREA expressly prohibits the type of Junk Fees that Booz Allen charged Plaintiffs.  *E.g.,* Compl. ¶¶ 49-71 (deceptive operation); ¶¶ 72-148 (violations of FLREA).  While Booz Allen may wish that Plaintiffs' allegations attack lawfully authorized conduct, they do not, and Booz Allen cannot invoke the safe harbor provisions.

### 4.      Plaintiffs Adequately Allege Materiality, Reliance, and Causation.

While Booz Allen claims that Plaintiffs have failed to allege "materiality," "reliance," and "causation," Booz Allen is mistaken—reliance is not even required element under many of the state UDAP statutes.[24]  However, even where such allegations are required, Plaintiffs have made robust and detailed factual allegations regarding how Booz Allen's operation of Recreation.gov was false and deceptive to Plaintiffs and other reasonable consumers—in other words, they have shown *materiality.*  *E.g.,* Compl. ¶¶ 45-168.  They have made detailed allegations about how Plaintiffs *relied* on those representations, which led each of them "to believe by the recreation.gov website's interface that the Junk Fees were being paid to the Federal Agencies, not Booz Allen." *E.g.,* Compl. ¶¶ 176, 208, 220, 232, 243, 255.  And they have made robust allegations about how if they had "known the true nature of Booz Allen's operation of Recreation.gov and that the Junk Fees were paid to Booz Allen and not the Federal Agencies, [they] would have instead contacted the relevant Federal Agencies directly to make [their] reservations to avoid paying the Junk Fees to Booz Allen"—in other words,  *causation.*  Compl. ¶ 198; *see also id.* ¶¶ 169-81 (detailing how

---

[24]  *See, e.g.*, *Fitzpatrick v. Gen. Mills, Inc.,* 635 F.3d 1279, 1283 (11th Cir. 2011) ("[a] plaintiff need not prove reliance on the allegedly false statement to recover damages under FDUTPA"); *Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S. 2d 452, 453 (2012) ("reliance by the plaintiff is not an element of [sections 349 and 350]"); *Vernon v. Qwest Commc'ns Int'l, Inc.,* 643 F. Supp. 2d 1256, 1268 (W.D. Wash. 2009) ("Washington courts do not require a plaintiff to allege individual reliance on Defendants' conduct, particularly where the non-disclosure of a material fact is alleged."); *Johnson v. Blendtec, Inc.*, 500 F. Supp. 3d 1271, 1294 (D. Utah 2020) ("[a]ctual reliance on the statement need not be shown").

Mrs. Wilson was deceived); ¶¶ 199-213 (same as to Mrs. Walden); ¶¶ 214-225 (same as to Mrs. Jones); ¶¶ 226-236 (same as to Mrs. Laginova); ¶¶ 237-248 (same as to Mr. Berger); ¶¶ 249-259 (same as to Mr. Lauritzen).[25]

Plaintiffs' robust factual allegations span over 100 pages and are supported by dozens of images and excerpts from the Recreation.gov website and Plaintiffs' Recreation.gov accounts (*e.g.,* Compl. ¶¶ 169-259; *id.* Exs. E-I), party admissions made by Booz Allen (Compl. Ex. D), Congressional testimony (Compl. Ex. C), a National Park Service declaration (Compl. Ex. J), and a published federal court opinion addressing Junk Fees on Recreation.gov (Compl. Ex. A). Plaintiffs have plainly established each of their causes of action.[26]

### 5.   Plaintiffs Properly Allege Liability Based on Material Omissions.

Booz Allen also claims that Plaintiffs fail to allege a material omission or a duty to disclose, but Plaintiffs' allegations are clear that the affirmative statements that Booz Allen makes on Recreation.gov ***combined*** with Booz Allen's failure to disclose its own role "create the appearance that the website continue[s] to be run by the Federal Agencies, and not by a for profit government contractor."   Compl. ¶ 60; ¶¶ 45-59 (detailing affirmative statements and omissions). As the

---

[25] Plaintiffs are hardly alone in being misled.  An article was published in *The Wall Street Journal* on April 6, 2023 highlighting the consumer confusion that Booz Allen has created on Recreation.gov.  *See* Griffith Decl. Ex. 8 (https://www.wsj.com/articles/national-park-fees-booz-allen-68d4d6d8).  Plaintiffs include the article with this Opposition for the limited purpose of showing the types of additional facts that could be added in an amended pleading, if needed.

[26] *See. e.g., Gavron v. Weather Shield Mfg., Inc.*, 819 F. Supp. 2d 1297, 1301 (S.D. Fla. 2011) (causation satisfied where defendant made misleading representations that would deceive "an objectively reasonable person"); *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 50 (2009) ("A plaintiff need not show the act in question was intended to deceive, only that it had the capacity to deceive a substantial portion of the public"); *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111 (2d Cir. 2007) (vacating dismissal where fee challenged "may" have violated a federal statute and rejecting defendant's argument that disclosure of the fee cured the "misleading" aspect of the fee under New York law); *Davis v. HSBC Bank*, 691 F.3d at 1162  ("a plaintiff need only "show that members of the public are likely to be deceived").

Eastern District has recognized, this is sufficient to allege a state UDAP claim. *Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 429 (E.D. Va. 2020) (holding "an omission can ground a consumer claim" and denying motion to dismiss); *see also Grays Harbor Adventist Christian School v. Carrier Corp.,* 242 F.R.D. 568, 573 (W.D. Wash. 2007) (presumption of reliance in omission-based UDAP claim); *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 562 (S.D.N.Y. 2016) (denying motion to dismiss where "plaintiff identifies specific representations made in the defendants' marketing materials . . . and an omission-based theory of deception"); *Latman v. Costa Cruise Lines*, 758 So. 2d 699, 703 (Fla. Dist. Ct. App. 2000) (FDUPTA claim stated where company billed private charges as if they were government fee).

### 6. Plaintiffs Also Allege Unfair and Unconscionable Conduct.

Further, with regard to California's, Florida's, and Washington's UDAP's, Booz Allen claims that Plaintiffs have failed to allege unfair or unconscionable acts. Yet, Plaintiffs provide dozens of concrete examples of Booz Allen's unfair and unconscionable conduct. *See, e.g.*, ¶¶ 45-168 (describing Booz Allen's practices); *id.* at ¶¶ 169-259 (detailing how those practices impacted each Plaintiff). These details are expressly incorporated into each of Plaintiffs' California, Florida, and Washington UDAP causes of action based on unfair and unconscionable conduct (*e.g.*, Compl. ¶¶ 338, 362, 445), and those causes of action go on to enumerate at least 16 specific actions of Booz Allen's that support their unfair and unconscionable claims, *see* Compl. ¶¶ 342, 365, 449. Plaintiffs have plainly established that "Defendants have . . . engaged in unfair [and unconscionable] business acts and practices by tricking consumers into paying Junk Fees [and] by

causing consumers to believe that the Junk Fees were being paid to the Federal Agencies, and not being kept by Defendants for their own profits." *Id.* ¶ 333.  Nothing more is required.[27]

### 7.    Booz Allen's Additional Attacks on Plaintiffs' Virginia UDAP Claims Fail.

Booz Allen also claims that Plaintiffs cannot assert claims under the VCPA because they do not reside in Virginia, but, again, Booz Allen is mistaken. Critically, unlike many other state UDAP statutes, the VCPA does not restrict its reach to intra-territorial transactions. Va. Code § 59.1-198 ("[c]onsumer transaction" includes "advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes").  And the Virginia Supreme Court has mandated that "remedial legislation," such as the VCPA, "must be liberally construed to avoid the mischief at which it is directed and to advance the remedy for which it was promulgated." *Valley Acceptance Corp. v. Glasby*, 230 Va. 422, 428 (1985); *Ballaugh v. Faubert Enters., Inc.*, 290 Va. 120, 125 (2015) ("We construe remedial legislation liberally, in favor of the injured party."); Va. Code § 59.1-197 (stating that VCPA is remedial).

Here, Plaintiffs allege (and Booz Allen does not dispute) that Booz Allen is a Virginia based company that directed the operation of Recreation.gov from its Virginia headquarters. Compl. ¶¶ 296, 309; *see also* Mot. Ex. A at 2 (identifying Booz Allen as based in Virginia on the face of the Contract).  The state of Virginia has a strong interest in regulating unfair and deceptive business acts that originate from within its territory, and consistent with the broad remedial nature

---

[27] *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1137 (N.D. Cal. 2014) (unfair claim under UCL where portion of fees paid to undisclosed recipient); *Am. Airlines, Inc. v. Despegar.com USA, Inc.*, 2013 WL 12064859, at *7 (S.D. Fla. Nov. 13, 2013) (unfair FDUTPA claim stated where inflated fees were added); *Panag*, 166 Wash. 2d at 51 ("Business practices that are 'deceptive' are, ipso facto, 'unfair.'").

of the VCPA, it plainly can be applied here to Booz Allen's conduct.  *See, e.g.*, *Dreher v. Budget Rent-A-Car Sys., Inc.*, 272 Va. 390, 400-01 (2006) (applying state law extraterritorially).[28]

### 8.      Booz Allen's Additional Attack on Plaintiff's Utah UDAP Claims Fail.

Booz Allen seeks dismissal of the Mr. Lauritzen's Utah consumer protection causes of action, claiming that he does not allege that it acted "knowingly or intentionally."  Mot. at 44.  Yet, Mr. Lauritzen alleges that "[i]n light of the *Kotab* decision, there can be no reasonable question that ***Booz Allen knowingly and intentionally violates the FLREA each time it charges a Junk Fee***."  Compl. ¶ 97 (emphasis added); *see id.* ¶¶ 419, 428 (expressly incorporating statement into each Utah UDAP cause of action).

### 9.      Plaintiffs Have Adequately Alleged a Claim for Unjust Enrichment.

Finally, Booz Allen seeks dismissal of the unjust enrichment cause of action, arguing, first, that unjust enrichment is not a stand-alone claim under California law.  Booz Allen is mistaken. *See Bruton v. Gerber Prods. Co.,* 703 F. App'x 468, 470 (9th Cir. 2017) (unjust enrichment is an independent claim under California law).   Booz Allen next contends that Plaintiffs' unjust enrichment claim fails "for the same reasons as the fraud claims," Mot. at 45, but, as detailed above, Plaintiffs' consumer claims do not sound in fraud, and, regardless, do not fail.  Finally, Booz Allen contends that Plaintiffs' unjust enrichment cause of action is duplicative of other legal causes of action, but Rule 8 is explicit that at the pleading stage such alternative theories are permissible.  *See* Fed. R. Civ. P. 8(a)(3); *see, e.g., FMW/MJH at 2604 Hillsborough LLC v. WSA*

---

[28] Booz Allen's authorities do not dictate a different result.  The plaintiffs in *Pitts v. Volkswagen Grp. of Am., Inc.*, 2021 WL 503710 (E.D. Va. Feb. 10, 2021) had not opposed the defendant's motion to dismiss their VCPA claim, and *Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399 (D. Md. 2012) did not even involve the VCPA.  Booz Allen also relies on *Carolina Trucks & Equipment, Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484 (4th Cir. 2007), but there the Fourth Circuit applied *South Carolina*'s rules of statutory construction and addressed a statute that explicitly applied to conduct "in this State."  Booz Allen's other authorities fail for similar reasons.

*Constr., LLC*, 2014 WL 6476187, at *2 (W.D.N.C. Nov. 19, 2014) (party can plead equitable unjust enrichment and legal breach of contract in the alternative).

## F.      Plaintiffs Can Amend to Cure Any Supposed Deficiencies.

Finally, while Booz Allen's Motion should be denied in its entirety, to the extent the Motion is granted, Plaintiffs respectfully request leave to amend.  As the Fourth Circuit has explained, "leave to amend shall be freely given when justice so requires" and "[t]his liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities."  *Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006) (en banc).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that Booz Allen's Motion be denied in its entirety, but that to the extent any portion is granted, that Plaintiffs be provided leave to file a First Amended Complaint.


DATED:                                                   Respectfully Submitted,


*/s/ Glenn E. Chappell*                          */s/ Wesley M. Griffith*
Glenn E. Chappell, State Bar No. 92153           Wesley M. Griffith (*admitted pro hac vice*)
Andrea R. Gold (*admitted pro hac vice*)         Cort T. Carlson (*admitted pro hac vice*)
Leora Friedman (*admitted pro hac vice*)         TYCKO & ZAVAREEI LLP
TYCKO & ZAVAREEI LLP                              1970 Broadway, Suite 1070
2000 Pennsylvania Avenue NW, Suite 1010          Oakland, CA 94612
Washington, DC 20006                             Telephone: (510) 254-6808
Telephone: (202) 973-0900                        Facsimile: (202) 973-0950
Facsimile: (202) 973-0950                        Email: wgriffith@tzlegal.com
Email: gchappell@tzlegal.com                             ccarlson@tzlegal.com
       agold@tzlegal.com
       lfriedman@tzlegal.com
                                                 *Attorneys for Plaintiffs and the Putative Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of April 2023, I caused the foregoing to be filed electronically using the Court's CM/ECF system, which automatically sent a notice of electronic filing to all counsel of record.

/s/ Glenn E. Chappell
Glenn E. Chappell, State Bar No. 92153
TYCKO & ZAVAREEI LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Tel.: 202.973.0900
Fax: 202.973.0950
gchappell@tzlegal.com

Counsel for Plaintiffs